Case 1:18-cv-00379-DKW-KSC   Document 1   Filed 10/03/18   Page 1 of 133   PageID #: 1

cc: JMS

ORIGINAL

**Timothy Chey, Esq - (CA State Bar License No. 172096) (In Pro Per)**
**Law Offices of Timothy Chey**
**SunAmerica Center**
**1999 Avenue of the Stars, Suite 1100**
**Century City, CA 90067**
**Tel: 310 882 0076**
**Fax: 310 882 0039; email: LawOfficesofTChey@Activist.com**

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

OCT 0 3 2018

at 2 o'clock and 0 0 min. P M
SUE BEITIA, CLERK

**IN THE UNITED STATES DISTRICT COURT**

**IN THE STATE OF HAWAII**

Case No. CV18 00379 JMSKSC

| | |
|---|---|
| Timothy Chey, | ) |
|       **Plaintiff** | ) |
| | ) |
| vs. | ) |
| | ) |
| HAWAII FILM OFFICE, BENITA | ) |
| BRAZIER, DONNE DAWSON, | ) |
| DOES 1-10, | ) |
|       **DEFENDANTS** | ) |

**COMPLAINT FOR DAMAGES**

1) **FRAUD AND DECEIT**
2) **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
3) **VIOLATION OF CIVIL RIGHTS**
      **42 U.S.C. § 1983 [Free Speech]**
      **42 U.S.C. §1983 [Equal Protection]**
4) **INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE**
5) **BREACH OF WRITTEN CONTRACT**
6) **INTENTIONAL MISRESPRESENTATION**
7) **NEGLIGENT MISREPRESENTATION**
8) **PROMISSORY FRAUD**
9) **BREACH OF IMPLIED CONTRACT**
10) **QUANTUM MERUIT**
11) **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
12) **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
13) **CIVIL CONSPIRACY**
14) **UNFAIR COMPETITION**
15) **PROMISSORY ESTOPPEL**
16) **BREACH OF ACCOUNTING**
17) **DECLARATORY RELIEF**
18) **UNJUST ENRICHMENT**
19) **PREMLINARY AND PERMANENT INJUNCTION**
20) **WRIT OF ATTACHMENT**

## DEMAND FOR A JURY TRIAL

Plaintiff (Filmmaker), an individual, as for his Complaint against DEFENDANTS **HAWAII FILM OFFICE, BENITA BRAZIER, DONNE DAWSON,** inclusive demands a jury trial and alleges as follows:

## JURISDICTION AND VENUE

1. The United States District Court for the District of Hawaii has jurisdiction over this matter pursuant to 28 U.S.C., Section 1332. The amount in controversy in this case, exclusive of interest and costs, exceeds $75,000. Venue is proper in this District pursuant to 28 U.S.C., Section 1391

2. The United States District Court for the District of Hawaii also has jurisdiction over this matter as Plaintiff's claim arises under diversity of citizenship. Plaintiff resides in California and Defendants reside in Hawaii.

## PARTIES

3. Plaintiff Tim Chey is a well-respected attorney, film producer, Harvard/USC alumnus. He has been on Fox Morning News, NBC News, and his work has been seen on MSNBC, the Wall Street Journal, LA Times, CNN, and Today Show.

4. Plaintiff has never filed a lawsuit against a governmental agency in any state.

5. Plaintiff is informed and believe that, and thereon alleges, that defendants are Hawaii residents.

6. Defendant Hawaii Film Office is a state government agency.

7. Defendant Benita Brazier is a state employee and, Plaintiff believes, acted outside the scope of her agency.

8. Defendant Donne Dawson is a state employee, and Plaintiff believes, acted outside the scope of her agency.

## **INTRODUCTION**

9. According to The Center for Public Integrity, the State of Hawaii received a D+ overall grade for integrity of government; NPR says the State of Hawaii is considered the most corrupt government of all 50 states; and finally, in a recent poll, people believe Hawaii is run like a 'Third-World country'.

10. Is it any wonder then that the Defendant Hawaii Film Office has committed overt and stark fraud by not honoring its 20% rebate that it advertised to faith-based filmmaker Tim Chey in inducing Filmmaker to film in Hawaii?

11. Filmmaker is a Harvard and USC alumnus, attorney, producer of 12 feature films and returned all the required papers with military precision. Anything less is a complete fraudulent and false narrative from of all the Defendants collectively.

12. Filming in Hawaii was the absolute worst experience Plaintiff (Filmmaker) ever dealt with in 22 years and 12 movies, including 'Freedom' (Cuba Gooding, Jr., Sharon Leal) for Showtime TV and 'Slamma Jamma' (Michael Irvin, Jose Canseco) for Sony Pictures.

13. Defendants, including the Hawaii Film Office, deceived Filmmaker multiple times, showing the most astonishing ineptness and behavior in giving out classified information to crew members, refusing to honor the 20% rebate by literally stating all the receipts, pay stubs of crew and cast are invalid. This reprehensible conduct is for no other reason than to 'teach' the Filmmaker a lesson for possibly making a faith-based film about Native Hawaiian history.

14. The Defendants blatantly lied, hid, conspired, slandered, and finally sabotaged Filmmaker in receiving the 20% rebate.

15. Filmmaker is asking the Honorable Court and the trial jury for $100 million in punitive damages from each of the Defendants collectively or separately.

16. Filmmaker intends through full and complete discovery - including interrogatories, depositions of each party and other film producers and possible motions to compel - to ascertain why they have mistreated the Filmmaker from day one and now refuse to issue the rebate which is very small and nominal compared with the big Hollywood movies.

17. Imagine the incredible audacity: The Defendants treated Filmmaker with complete contempt when his whole mission was to honor the memory of a brave Hawaiian queen, and in doing so, casted over 98% of Native Hawaiian/Polynesians in his cast.

18. Attorney and Filmmaker Tim Chey is a well-respected attorney, philanthropist, film producer, and director of 12 films with two Academy-Award winning actors.

19. Chey is one of the top faith-based writer/directors in the U.S. of 12 feature films, including 'David and Goliath' (Jerry Sokolosky) filmed in North Africa and London, 'The Genius Club' (Tom Sizemore, Stephen Baldwin, Tricia Helfer) 'Suing the Devil' (Malcolm McDowell, Tom Sizemore, Corbin Bernsen), 'Freedom' (Cuba Gooding, Jr., Sharon Leal, William Sadler), Fakin' Da Funk (Pam Grier, Bo Jackson, Ernie Hudson), "Slamma Jamma" (Michael Irvin, Jose Canseco), and 'The Islands' (John Savage, Mira Sorvino).

20. Chey has made guest appearances on Fox Morning News, NBC, TBN, and other national TV shows. His work has been disseminated in the Wall Street Journal, NY Times, LA Times, Roger Ebert, CNN, ABC Family, Lifetime, USA Networks, TRU, History Channel, and over 100 more media outlets.

21. Filmmaker declares, under the penalty of perjury, that he has never been sued or sued any government agency. He also declares again Defendants were the most incompetent governmental film employees he has ever worked with in his 22 years and 12 movies in the industry.

22. Plaintiff is also a Consumer Advocate who is filing this case to protect other innocent filmmakers, regardless of their beliefs or faith, from having to go through what he endured.

23. Filmmaker was left with no alternative but to file this action in the wake of the overt and
repeated acts of willful and malicious actions by Defendants.

24.     While Filmmaker loved working with the local crew, and thought the majority of them
were fantastic, he is exiting from making any further films in Hawaii. He believes he was
thoroughly sabotaged by a core group of bigoted, and quite vicious people, who disavow
Christianity in Hawaii.

25.     Filmmaker suffered death threats and physical abuse at the hands of this core group of
people that have actively smeared Filmmaker at every turn. Plaintiff Filmmaker needs to
ascertain who was involved and will expand the Defendant's class once he finds out.

26.     Defendants Benita Brazier and Donne Dawson clearly acted outside of their agency
capacity in denying the rebate and the Hawaii State AG should not defend them.

27.     Plaintiff is also filing a state whistle-blower lawsuit in the State of Hawaii that the Hawaii
Film Office has wasted the Hawaii taxpayer's dollars by letting Hollywood studios receive
possibly millions of dollars in unauthorized rebates.

28.     Plaintiff may file a complaint with the FBI to hold investigations into what occurred and
why Filmmaker was discriminated against in such blatant and malicious ways by Defendants
individually and collectively.

## STATEMENT OF FACTS

**29.** On or about April 2017, Filmmaker began pre-production of one of most ambitious
movies on Hawaii history ever - on the lives of Chiefess Kapiolani, King Kamehameha,
Captain Cook, and Queen Liliuokalani.

**30.** The film made news around the world, including US News and World Report, NBC,
ABC, and local Hawaiian media (Hawaii News Now, Star Advertiser, KHON, KITV, et
al).

31. As the Plaintiff/Filmmaker Tim Chey is a devout Christian, the first film he wanted to put into production was the compelling story of Chiefess Kapiolani who found Christ and went to the top of the volcano to proclaim her new-found faith in the Lord.

32. Filmmaker enlisted a Native Hawaiian professor at the University of Hawaii who teaches Native Hawaiian history to help research and co-write the script. Yet a core group of people who oppose Christianity in Hawaii conspired against the Filmmaker. Filmmaker has 'smoking-gun' evidence of this and will release this during discovery and at the trial.

33. Filmmaker is contemplating suing this group later in 2019 – he first wants to get this case moving forward to a 2019/2020 trial.

34. On or about March 2017, Filmmaker decided to film 'The Islands' after being assured that the Defendant Hawaii Film Office would give a 20% rebate on the budget that the Film Office gives to all filmmakers. This was extremely important to the Filmmaker as many production companies base their entire decision for where to film based on the movie tax credits of each state. This is common industry knowledge and practice.

35. Also, the 20% rebate is critically important for P&A (prints and advertising) for the film's exposure and marketing funds.

36. Had Filmmaker known that Defendants would even attempt not to reward the 20% rebate because they didn't like the content of the movie, the Filmmaker's beliefs, or his personality per se, Filmmaker would never have even launched such a huculean effort in making the film, including casting an Academy-Award winning actress, a legendary actor, and a 98% Native Polynesian cast. Filmmaker would simply have made another film in another state. Filmmaker has made 12 movies in 22 years. He did not need the horrific grief imposed by Defendants collectively.

37. It is very rare for any governmental agency to act as juvenile, vindictive, and incompetent as the Hawaii Film Office. It's astonishing as Filmmaker has worked with the Connecticut, Lousiana, Virginia, Fiji, California, Michigan, and North Carolina film offices with absolutely no issues or problems. In fact, the Connecticut Film Office gave

Filmmaker his 30% tax rebate for 'Freedom' (Cuba Gooding, Jr., Sharon Leal, William Sadler) within 30 days after the paperwork was turned in.

38. But Filmmaker again reminds the Court that the state agencies of Hawaii were given a D+ for integrity and Hawaii is considered the most corrupt government of any state in the U.S. This has to improve now or the $13 billion rail program will never be finished in our lifetime. This is not a slight on the hard-working Hawaii government employees, but to the small vocal minorities who pride themselves on laziness and ineptness as a way of life.

39. From the start of the movie until post-production, Filmmaker made the 20% rebate the number one priority as he realized how significant the rebate was. It was 20% of the entire budget and this was to put bread on the table of a faith-based filmmaker.

40. On or about April 2017, Filmmaker received a strange message from one of the employees of the Hawaii Film Office. She said she had 'concerns' about Filmmaker's movie and to call her. Filmmaker returned her call and assured her that one of his co-writers was a well-respected Native Hawaiian professor at the University of Hawaii who taught Native Hawaiian history.

41. Nevertheless, this is a complete violation of Filmmaker's 1st Amendment rights for a government agency to inquire about the content of a movie – it's almost unheard of. Imagine a California agency calling a Hollywood studio and 'inquiring' about the content of the horror movie 'The Nun'. The outrage would be worldwide. This is no different.

42. Having a Hawaii state agency calling to say there's a problem with Filmmaker's Christian movie reeks of 1st Amendment problems of free speech. This also further confirms the outrageous conduct of a state agency – simply put, no state agency in the other 49 states would do this.

43. The history of Chiefess Kapiolani's leadership brought Christianity to Hawaii. This is the issue of those who oppose it. Filmmaker gets it and totally understands the hatred as Jesus himself said "If they hated me, they will hate you." (John 15:18).

44. Nevertheless, Hawaii is officially part of the United States and must adhere to federal laws or there will be absolute chaos. The rejection of the rebate to Filmmaker is the beginning of the end.

45. Again, the film is based on a true story and anything done on the governmental level to oppose Filmmaker is complete and total discrimination against his religion and unequivocably violates the Filmmaker's First Amendment rights to free speech.

46. The events of the core group to oppose Filmmaker's telling of the history started the entire chain-of-events as Filmmaker would not back down from making the film.

47. Filmmaker received death threats before and during shooting. His staff had to file police reports to the incompetent Honolulu police who did absolutely nothing despite even having the name of the alleged perpetrator.

48. Filmmaker alleges that possible elements or people in the Hawaii Film Office have also been part of a smear campaign against many historical Hawaiian films, including Filmmaker's movie.

49. In addition to death threats, Filmmaker was up against many other deep hurdles, including union threats and Hawaiian activists who threatened to shut down the production on numerous instances.

50. In over 60 emails and phone calls, Filmmaker worked diligently to make sure every single receipt, GET tax id of every single crew member and cast member was obtained.

51. Filmmaker fulfilled each and every requirement methodically and precisely because he knew the Defendant Hawaii Film Office might try something sneaky. Filmmaker even has proof that one email mistakenly forwarded to Filmmaker showed the Defendants were already conspiring to 'get' Filmmaker' (See Exhibit H).

52. This process of getting all the requirements for the Hawaii Film Office took over 13 weeks and Filmmaker calculates over 240 hours of man time.

53. Filmmaker is also a Harvard-educated attorney and bills at $550 an hour. So by just multiplying 240 x $550 would come to $192,000. This is how important the rebate back

1    from the Hawaii Film Office was to the Filmmaker and the Filmmaker asks the Court to

2    consider the $192,000 as additional damages aside from the punitive damages.

3    **54.** Again, the Hawaii Film Office has blatantly lied in their refusal to credit the Filmmaker

4    with the 20% rebate. <u>There is no reason, outside of their wanting to teach Filmmaker a</u>

5    <u>lesson, to withhold the tax certificate.</u> Filmmaker fulfilled every requirement.

6    **55.** Filmmaker tries to show the love of Jesus to everyone he can. Should Defendants even

7    broach any issues that demean or slander Filmmaker, Filmmaker will amend this lawsuit

8    to include defamation and/or libel and slander. Filmmaker is very confident he would win

9    any Anti-Slapp Motion as he has been more than diligent in the entire application

10   process.

11   **56.** <u>The fact that Defendants did not alert Filmmaker that he was 'lacking' in further proof of</u>

12   <u>receipts for more than 9 months is further proof of fraud and deceit that would later rise</u>

13   <u>up again on much more serious levels.</u>

14   **57.** On or about September 2017, Filmmaker put in several calls to Defendant Brazier to

15   make sure every 'T' was crossed and every 'I' was dotted. Filmmaker wanted to make

16   sure there would be no problems with getting the 20% rebate back. This was critical as he

17   would not have filmed in Hawaii.

18   **58.** On or about September 2017, Defendant Brazier repeatedly told Filmmaker that he did

19   not need to get the GET Tax Ids for established businesses in Hawaii as they were

20   obviously paying tax to the Hawaii government.

21   **59.** This proved to be yet another misrepresentation.

22   **60.** On or about September 2018, <u>almost a year later</u>, Defendants Dawson and the Hawaii

23   Film Office suddenly demanded that all the GET tax IDs should be listed. <u>This is another</u>

24   <u>brazen and fraudulent attempt to deny Filmmaker his just rebate.</u> Filmmaker did, in fact,

25   list every single GET Tax ID. Somehow, they lost the paperwork or it was maliciously

26   destroyed.

27   **61.** In Defendant's one page sheet they sent to Filmmaker - that possibly took less than an

28   hour to do – not 9 months – they also said the GET Tax IDs were wrong when in fact

they were correct. Further proof that they were desperately trying anything to not give the Filmmaker his rebate.

62. The entire one-page sheet is filled with complete wrong assumptions, numbers, and math. It's like a third-grader put it together hoping this would pass and Filmmaker would go away.

63. On or about October 2017 and three weeks before shooting, Defendant Brazier contacted the production's UPM and gave the UPM the actual budget figures. This is a text-book case of conflict of interest. The UPM knew Defendant Brazier and was never given authorization to have any confidential numbers or should receive them as this person was only the UPM. The production ended up firing the UPM for gross incompetence and was later sued by the UPM in small claims.

64. Had Filmmaker known this conflict of interest and gross breach of privacy, he would have immediately requested another contact to work with at the Hawaii Film Office, because of the industry rule/code that key positions should not be filled by ANY partnership team because again if one is fired, the other will quit or have to be fired as well.

65. Filmmaker believes and alleges that the UPM's firing has contributed to the Hawaii Film Office defrauding Filmmaker out of his rightful 20% rebate as the UPM sent a letter to the office violating the confidentiality provision of her signed contract. No other true professional in the industry would do this.

66. This unprofessional, sneaky, and juvenile high school conduct is another reason why Filmmaker will never film in Hawaii again.

67. On or about November 2017, Filmmaker, to make sure every single requirement was met, personally emailed Defendant Brazier to have any Film Office employee or government legislator come to the set (see EXHIBIT B). This requirement is buried in the forms, but this email again proves how meticulous Filmmaker was in fulfilling every single requirement including this obscure provision.

**68.** On or about November 17, 2017, Filmmaker submitted the preliminary budget to the Film Office (see EXHIBIT C). As the Honorable Court can see, the preliminary requirements were met except for two items which were later fulfilled and never a subject of dispute.

**69.** At no time did the Hawaii Film Office ever contact the Filmmaker to alert him to anything that was not completed or out of the ordinary. In fact, they were silent for almost eight months.

**70.** On or about November 20, 2017, Filmmaker again inquired about the $1,000 contribution that was required to be made to the University of Hawaii Foundation (see EXHIBIT D). This again shows how astute and careful Filmmaker was to the requirements set forth by the Hawaii Film Office.[1]

**71.** Filmmaker then donated $1,000 to the University of Hawaii Foundation in accordance to the requirements (Filmmaker and his wife give 90% of their wealth away to charity or to their faith-based endeavors).

**72.** On or about December 2017, Filmmaker received the pre-qualification letter (See EXHIBIT E and F). At no point, did the Hawaii Film Office ever question or comment on any part of the film's production or requirements.

**73.** Multiple calls from March 2017 to February 2018 to Defendant Brazier again confirmed Filmmaker was on track to receive his rebate.

**74.** On or about December 11, 2017, the Hawaii Film Office submitted an email (See EXHIBIT G) which outline precisely the 7 remaining requirements left to get the tax certificate.

---

[1] The $1,000 requirement is yet another misprepresentation of the Hawaii Film Office's advertising and promotions as this falls beneath the 20% rebate back then, i.e., you have to pay an additional $1,000 to be considered for a rebate.

75. Filmmaker fulfilled every single requirement and more so and will testify, under the penalty of perjury (that carries a jail sentence), that every single requirement was fulfilled with complete honesty and integrity.

76. This will be proven with 'smoking-gun' evidence at trial and during the Motion for Summary Judgment.

77. To reiterate the point again, had Filmmaker not been deceived by Defendant's action, Filmmaker would not have filmed any movie in Hawaii. Period.

78. Nevertheless, it gets worse.

79. On or about December 11, 2017, Filmmaker sent an email simply re-confirming what constitutes a vendor by the Hawaii Film Office (see EXHIBIT H).

80. In the most juvenile and condescending response, Defendant Brazier replied to Defendant Dawson, "Should we use the definition of vendor in the dictionary???" She unwittingly copied herself in her reply to the Filmmaker.

81. As it turns out, this requirement is the exact same thing the Hawaii Film Office fraudulently used in their desperate attempts to sabotage, smear, and hurt Filmmaker by denying the rebate. They questioned what constitutes a vendor. It's the 'Confederacy of Dunces' all over again.

82. This also proves the immature lengths the Defendants, collectively, have gone to avoid giving the Filmmaker his earned rebate. It's run like a junior high school.

83. Again, Filmmaker has worked with the film departments of Connecticut, Louisiana, Georgia, Virginia, North Carolina, California, et al and has never encountered such an immature, hostile, mean-spirited, incompetent, sneaky, slow, sensitive, and maniupulative conduct ever. Filmmaker has been in the business for over 22 years again and has made 12 movies.

84. The Filmmaker again believes the Honorable U.S. District Court and jury will find sufficient evidence in the months, and possible years to come, of another corrupt Hawaiian government agency that needs Federal investigation.

**85.** Filmmaker will depose all of the parties at the Hawaii Film Office and past UPMs and line producer of every single past film to prove there is widespread and gross incompetence at every level.

**86.** Filmmaker also plans to file a whistleblower lawsuit against the Hawaii Film Office and the Hollywood studios for wasting the taxpayer's money. Filmmaker will file motions to compel the paperwork to see every single budget that the Film Office has given millions of dollars to the studios and yet denied a simple rebate to the Filmmaker.

**87.** On or about December 2017, Filmmaker finished the final paperwork and contacted the Defendant Hawaii Film Office to begin the tax rebate final process and was told the tax certificate would be sent within 3 to 6 months. – which is also stated on the Hawaii Film Office website and on their official forms. It is now October 2018 at the time of the filing of this suit. This is tragic in every respect.

**88.** Again, having the tax certificate was critical in both post-production money and for the investors. The Defendants were fully aware of this.

**89.** Despite numerous emails, Defendants repeatedly dragged their feet and returned emails sometimes a month later.

**90.** They then stated Filmmaker had to do other tasks that were never in the intital conversations.

**91.** Filmmaker shook his head in disbelief. Filmmaker immediately sensed something was terribly wrong.

**92.** Again, Defendants hid the relationships of those that created friction and their motives of 'teaching the filmmaker a lesson' by delaying the tax certificate to now 9 months. This a textbook case of fraud and deceit.

**93.** Again, Filmmaker would never have filmed a movie in Hawaii had he known of this fraud and deceit, mispresentation, civil conspiracy and other conduct the Hawaii Film Office would so brazenly do.

**94.** Furthermore, they even admitted themselves that the office has come under intense scrutiny by legislatures for previous blunders which will be part of the whistleblower lawsuit. <u>This again is total fraud and deceit and a total conflict of interest.</u>

**95.** <u>Defendants went beyond being crafty/sneaky to fraud and deceit as the Court will see throughout this Complaint. These are the most dishonorable actions that Filmmaker has ever worked with in 22 years.</u>  Here Filmmaker shot a movie that would honor a Hawaiian Chiefess, pay good-paying jobs to Hawaiian/Polynesians, and the Hawaii Film Office back-stabbed him by deceiving him and playing little juvenile high-school games no other film office of any state would dare to do.

**96.** If in fact, the Hollywood studios have not gone through this level of fraud, then the Hawaii Film Office, complete with starry, wide eyes, have discriminated against the Filmmaker either through his religious beliefs (a violation of the First Amendment) or against him as an independent filmmaker (a violation of the Hawaii Whistleblower Act) <u>This is a text-book case of self-dealing.</u>

97. On or about August 2018, Filmmaker sent several emails to the Attorney General's office and the Governor's office to attempt to understand why the Hawaii Film Office was taking so long. The Hawaii Film Office refused to answer any emails.

98. <u>Something was truly wrong here.</u>

99. Finally, after legal threats, the Hawaii Film Office, in the most overt fraud of perhaps any governmental agency in the state, then sent Filmmaker an astounding list of complete lies and fabrications.

100.     Defendants said because Filmmaker has not proved any of his receipts, he is not entitled to a 20% rebate. <u>Filmmaker immediately knew he was duped.</u>

101.     The Hawaii Film Office sent a list of requirements that are filled with complete fraud and lies. It's almost jaw-dropping how each remaining requirement had already been fulfilled.

102.     <u>*The Hawaii Film Office sent a one-page sheet that looked like it took ten minutes to do – not 9 months (see Exhibit A)*.</u> The Filmmaker will show this smacks of the

1   juvenile and utterly fraudulent way the Hawaii Film Office went to avoid paying the 20%

2   rebate.

3   103.   Among the several 'items' that Hawaii Film Office said the Filmmaker had to

4   prove was the actual shooting location of Kualoa Ranch (See Exhibit A). Filmmaker sent

5   the bill, the cancelled checks, and the Defendants still said Filmmaker could not prove

6   this expense. A simple phone call could verify this expenditure.

7   104.   The sheet again shows scores of names of crew that Filmmaker already gave the

8   Hawaii Film Office every single GET Tax ID that they required. Yet it ignores key

9   actor's salaries, key equipment rentals, hotels – it's an absolute fraudulent document.[2]

10  105.   Defendants Benita Brazier and Donne Dawson clearly acted outside the scope of

11  their agency in wanting to pay back Filmmaker in retribution for several reasons

12  Filmmaker will prove at trial.

13  106.   The State of Hawaii should not defend Ms. Brazier or Ms. Dawson.

14  107.   Filmmaker will call on several key witnesses in the cast, crew, and extras to prove

15  the Film Office is in disarray. He expects the trial to go for at least ten weeks and asks the

16  Honorable Court's patience as Filmmaker is bracing for extensive discovery (and

17  possible Motions to Compel with sanctions) to take place during this litigation.

18  108.   This case is very important as there must be freedom of speech in Hawaii and that

19  federal law still supercedes state law. Hawaii is part of America and most Hawaiians

20  want that.

21  109.   Filmmaker will subpeona every crew member for depositions to testify to the

22  events as true. And if Defendants lie during their sworn depositions, Filmmaker will file a

---

[2] The one-sheet contains over 50 crew and cast that have already been accounted for. The only way to explain the red marks is the Hawaii Film Office is doing everything possible to sabotage and not pay Filmmaker. This is indisputable evidence. Filmmaker will submit all of the evidence during discovery and will file a Motion to seal the documents.

criminal complaint with the D.A. for perjury and possible Federal intervention.
Filmmaker will begin depositions within 30 days of the service of the Complaint to get a
head start on all discovery.

110.   Filmmaker believes the damages to the movie are permanent and irrecoverable
due to Defendant's actions.

111.   It is paramount that the Honorable Court grant Filmmaker broad discretion in
ascertaining what is going on as Filmmaker expects to file multiple Motions to Compel as
the Defendants have proven themselves deftly good at avoiding or ignoring questions
pertaining to their conduct.

112.   Defendant's actions left the film in total chaos. The film went overbudget because
of their actions and the Filmmaker had to pay the overbudget out of his own pocket.

113.   Again, Filmmaker testifies, under penalty of perjury, that he has never sued any
governmental agency in his entire life.

114.   Filmmaker will depose Defendants Benita Brazier, Donne Dawson in November.
He will then depose other filmmakers who have shot movies in Hawaii.

**115.**   Filmmaker will file a Pre-Judgment Writ of Attachment on all of Defendant's
personal and corporate assets and believes he has been damaged by no less than $135
million in actual and punitive damages and will spend the next 5 years outlying the case
against the Defendants. They need to be punished severely for their contemptible
mistreatment of a filmmaker who tried to honor the people of Hawaii and their valiant
and courageous leader two hundred years ago.

116.   Filmmaker is exiting making the next films in Hawaii and the damages are stark
and real – due mostly because of Defendant's fraud and deceit. This will be calculated in
the damages against Defendants.

117.   Filmmaker also will depose crew members and others who Defendants devulged
confidential information.

118.   Filmmakers request the court to expedite discovery and set a trial date in the most
expeditious manner if possible

119.    Filmmaker also intends to file a Motion to Allow Public Cameras in the courtroom to prevent this type of behavior from happening again to other worthy filmmakers.

120.    Should Filmmaker prevail, he will garnish the wages of Defendants who acted outside the scope of their agency employment and who the State must not represent.

121.    Should Defendants Benita Brazer or Donne Dawson declare bankruptcy, Filmmaker will file an Adverse Proceeding with the U.S. Bankruptcy Court blocking any bankruptcy from going through.

## COUNT 1 – **FRAUD AND DECEIT**

**122.**    Filmmaker repeats and realleges each and every allegation contained in paragraphs 1 through 122 above as if fully set forth herein.

**123.**    Filmmaker is a champion of other artists and has fought for their rights and will fight against this scam run by Defendants.

**124.**    Furthermore, Defendants either negligently erred or intentionally defrauded Filmmaker.

**125.**    Filmmaker is informed, and believes and, based thereon alleges, that at the time Defendants made the above promises, inducements, and representations to Filmmaker to induce Filmmaker to film in Hawaii, they were false in that defendants did not intend to fulfill the promises, inducements and representations to Filmmaker.

**126.**    Filmmaker is further informed and believes and, based thereon alleges, that such promises, inducements and representations by Defendants were made with the intent to induce Filmmaker to enter into Agreement to receive a rebate back from shooting in Hawaii and to render performance thereunder.

**127.**    In strict and absolute reliance upon such false promises, inducements, and representations by Defendants, Filmmaker was induced to enter into the Agreement and

to sign off on 10 years of hard work to bring the history of Hawaii to fruition – only to be rejected by Defendants.

128.     At the time Filmmaker took such actions, it was ignorant of the falsity of Defendant's promises, inducements and representations and, in the exercise of reasonable diligence, could not have discovered its intentions: the financial straits due to the failure of their performance; and the outright deceit by Defendants. This conduct warrants punitive damages by this court and by the jury and this conduct 'pierces the corporate veil' so the Defendants are not able to stand behind their governmental employee contracts, but rather are personally liable for this fraud and deceit.

129.     The Defendants have essentially 'raped' the Filmmaker of the bread off his table and destroyed three future movies that took ten years to create. They must be held personally and corporately liable. Defendant's action falls completely outside the scope of a normal government interaction and the Hawaii AG should not defend them as this is a complete waste of taxpayer dollars. Filmmaker is confident the Court and the jury of the general public will understand it and rule in his favor.

130.     Had Filmmaker known the truth, and known of Defendants's intentions, he would never have filmed his movie in Hawaii. Filmmaker has 'smoking gun' evidence in the form of the rejection email and the fraudulent one-sheet filled with mistakes and deceit and of 60 phone calls and emails sent back and forth between Defendants and Filmmaker that should serve as clear and demonstrative evidence of true intent.

131.     Filmmaker's intention is very clear: He had high hopes for both films and it's the sole reason he would film in Hawaii. The language is crystal-clear in the Hawaii Production Report and thus the court should award a Motion for Summary Judgment in favor of the Filmmaker.

132.     As a direct and proximate result of the foregoing material breaches of the signed, written contract, Filmmakers have been damaged in an aggregate amount to be determined at trial, in excess of the jurisdictional minimum of this court, believed to be no less than $135 million.

## COUNT 2 – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

133.     Filmmaker repeats and realleges each and every allegation contained in paragraphs 1-133 through above as if fully set forth herein.

**134.**     Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." However, "[t]he implied covenant 'is designed to effectuate the intentions and reasonable expectations of parties reflected by mutual promises within the contract.'

**135.**     All of the following elements must exist to state a claim for breach of the duty of good faith and fair dealing in a contract action: (1) A contractual relationship between the parties; (2) Filmmaker's performance, or excuse from performance, of the obligations under the contract; (3) An allegation that the defendant unfairly prevented Filmmaker from receiving the benefits that Filmmaker was entitled to receive under the Hawaii Film Office 20% rebate to tall filmmakers; and (4) An allegation that defendant's conduct resulted in harm to the Filmmaker.

**136.**     <u>This is a text book case of breaching an implied covenant of good faith.</u>

**137.**     On or about April 2017, Filmmaker began pre-production of one of most ambitious movies on Hawaii history ever - on the lives of Chiefess Kapiolani, King Kamehameha, Captain Cook, and Queen Liliuokalani.

**138.**     The film made news around the world, including US News and World Report, NBC, ABC, and local Hawaiian media (Hawaii News Now, Star Advertiser, KHON, KITV, et al).

**139.**     As the Plaintiff/Filmmaker Tim Chey is a devout Christian, the first film he wanted to put into production was the compelling story of Chiefess Kapiolani who found Christ and went to the top of the volcano to proclaim her new-found faith in the Lord.

**140.** Filmmaker enlisted a Native Hawaiian professor at the University of Hawaii who teaches Native Hawaiian history to help research and co-write the script. Yet a core group of people who oppose Christianity in Hawaii conspired against the Filmmaker. Filmmaker has 'smoking-gun' evidence of this and will release this during discovery and at the trial.

**141.** Filmmaker is contemplating suing this group later in 2019 – he first wants to get this case moving forward to a 2019/2020 trial.

**142.** On or about March 2017, Filmmaker decided to film 'The Islands' after being assured that the Defendant Hawaii Film Office would give a 20% rebate on the budget that the Film Office gives to all filmmakers. This was extremely important to the Filmmaker as many production companies base their entire decision for where to film based on the movie tax credits of each state. This is common industry knowledge and practice.

**143.** Also, the 20% rebate is critically important for P&A (prints and advertising) for the film's exposure and marketing funds.

**144.** Had Filmmaker known that Defendants would even attempt not to reward the 20% rebate because they didn't like the content of the movie, the Filmmaker's beliefs, or his personality per se, Filmmaker would never have even launched such a huculean effort in making the film, including casting an Academy-Award winning actress, a legendary actor, and a 98% Native Polynesian cast. Filmmaker would simply have made another film in another state. Filmmaker has made 12 movies in 22 years. He did not need the horrific grief imposed by Defendants collectively.

**145.** It is very rare for any governmental agency to act as juvenile, vindictive, and incompetent as the Hawaii Film Office. It's astonishing as Filmmaker has worked with the Connecticut, Lousiana, Virginia, Fiji, California, Michigan, and North Carolina film offices with absolutely no issues or problems. In fact, the Connecticut Film Office gave Filmmaker his 30% tax rebate for 'Freedom' (Cuba Gooding, Jr., Sharon Leal, William Sadler) within 30 days after the paperwork was turned in.

**146.**     From the start of the movie until post-production, Filmmaker made the 20% rebate the number one priority as he realized how significant the rebate was. It was 20% of the entire budget and this was to put bread on the table of a faith-based filmmaker.

**147.**     On or about April 2017, Filmmaker received a strange message from one of the employees of the Hawaii Film Office. She said she had 'concerns' about Filmmaker's movie and to call her. Filmmaker returned her call and assured her that one of his co-writers was a well-respected Native Hawaiian professor at the University of Hawaii who taught Native Hawaiian history.

**148.**     Nevertheless, this is a complete violation of Filmmaker's 1st Amendment rights for a government agency to inquire about the content of a movie – it's almost unheard of. Imagine a California agency calling a Hollywood studio and 'inquiring' about the content of the horror movie 'The Nun'. The outrage would be worldwide. This is no different.

**149.**     Having a Hawaii state agency calling to say there's a problem with Filmmaker's Christian movie reeks of 1st Amendment problems of free speech.

**150.**     The history of Chiefess Kapiolani's leadership brought Christianity to Hawaii. This is the issue of those who oppose it. Filmmaker gets it and totally understands the hatred as Jesus himself said "If they hated me, they will hate you." (John 15:18).

**151.**     Nevertheless, Hawaii is officially part of the United States and must adhere to federal laws or there will be absolute chaos. The rejection of the rebate to Filmmaker is the beginning of the end and shows the Defendants collectively breached the implied covenant of good faith starkly and maliciously.

**152.**     Again, the film is based on a true story and anything done on the governmental level to oppose Filmmaker is complete and total discrimination against his religion and unequivocably violates the Filmmaker's First Amendment rights to free speech.

**153.**     The events of the core group to oppose Filmmaker's telling of the history started the entire chain-of-events as Filmmaker would not back down from making the film.

154. Filmmaker received death threats before and during shooting. His staff had to file police reports to the incompetent Honolulu police who did absolutely nothing despite even having the name of the alleged perpetrator.

155. Filmmaker alleges that possible elements or people in the Hawaii Film Office have also been part of a smear campaign against many historical Hawaiian films, including Filmmaker's movie.

156. In addition to death threats, Filmmaker was up against many other deep hurdles, including union threats and Hawaiian activists who threatened to shut down the production on numerous instances.

157. In over 60 emails and phone calls, Filmmaker worked diligently to make sure every single receipt, GET tax id of every single crew member and cast member was obtained.

158. Filmmaker fulfilled each and every requirement methodically and precisely because he knew the Defendant Hawaii Film Office might try something sneaky. Filmmaker even has proof that one email mistakenly forwarded to Filmmaker showed the Defendants were already conspiring to 'get' Filmmaker' (See Exhibit H).

159. This process of getting all the requirements for the Hawaii Film Office took over 13 weeks and Filmmaker calculates over 240 hours of man time.

160. Filmmaker is also a Harvard-educated attorney and bills at $550 an hour. So by just multiplying 240 x $550 would come to $192,000. This is how important the rebate back from the Hawaii Film Office was to the Filmmaker and the Filmmaker asks the Court to consider the $192,000 as additional damages aside from the punitive damages.

161. Again, the Hawaii Film Office has blatantly lied in their refusal to credit the Filmmaker with the 20% rebate. There is no reason, outside of their wanting to teach Filmmaker a lesson, to withhold the tax certificate. Filmmaker fulfilled every requirement.

162. Filmmaker tries to show the love of Jesus to everyone he can. However, should Defendants even broach any issues that demean or slander Filmmaker, Filmmaker will

amend this lawsuit to include defamation and/or libel and slander. Filmmaker is very confident he would win any Anti-Slapp Motion as he has been more than diligent in the entire application process.

163.    The fact that Defendants did not alert Filmmaker that he was 'lacking' in further proof of receipts for more than 9 months is further proof of fraud and deceit that would later rise up again on much more serious levels.

164.    On or about September 2017, Filmmaker put in several calls to Defendant Brazier to make sure every 'T' was crossed and every 'I' was dotted. Filmmaker wanted to make sure there would be no problems with getting the 20% rebate back. This was critical as he would not have filmed in Hawaii.

165.    On or about September 2017, Defendant Brazier repeatedly told Filmmaker that he did not need to get the GET Tax Ids for established businesses in Hawaii as they were obviously paying tax to the Hawaii government.

166.    This proved to be yet another misrepresentation.

167.    On or about September 2018, almost a year later, Defendants Dawson and the Hawaii Film Office suddenly demanded that all the GET tax IDs should be listed. This is another brazen and fraudulent attempt to deny Filmmaker his just rebate. Filmmaker did, in fact, list every single GET Tax ID. Somehow, they lost the paperwork or it was malicously destroyed.

168.    In Defendant's one page sheet they sent to Filmmaker - that possibly took less than an hour to do – not 9 months – they also said the GET Tax IDs were wrong when in fact they were correct. Further proof that they were desperately trying anything to not give the Filmmaker his rebate.

169.    The entire one-page sheet is filled with complete wrong assumptions, numbers, and math. It's like a third-grader put it together hoping this would pass and Filmmaker would go away.

170.    On or about October 2017 and three weeks before shooting, Defendant Brazier contacted the production's UPM and gave the UPM the actual budget figures. This is a

text-book case of conflict of interest. The UPM knew Defendant Brazier and was never given authorization to have any confidential numbers or should receive them as this person was only the UPM. The production ended up firing the UPM for gross incompetence and was later sued by the UPM in small claims.

171.     Had Filmmaker known this conflict of interest and gross breach of privacy, he would have immediately requested another contact to work with at the Hawaii Film Office, because of the industry rule/code that key positions should not be filled by ANY partnership team because again if one is fired, the other will quit or have to be fired as well.

172.     Again, this is a textbook case of breaching an implied good covenant in dealings.

173.     Filmmaker believes and alleges that the UPM's firing has contributed to the Hawaii Film Office defrauding Filmmaker out of his rightful 20% rebate as the UPM sent a letter to the office violating the confidentiality provision of her signed contract. No other true professional in the industry would do this.

174.     This unprofessional, sneaky, and juvenile high school conduct is another reason why Filmmaker will never film in Hawaii again.

175.     On or about November 2017, Filmmaker, to make sure every single requirement was met, personally emailed Defendant Brazier to have any Film Office employee or government legislator come to the set (see EXHIBIT B). This requirement is buried in the forms, but this email again proves how meticulous Filmmaker was in fulfilling every single requirement including this obscure provision.

176.     On or about November 17, 2017, Filmmaker submitted the preliminary budget to the Film Office (see EXHIBIT C). As the Honorable Court can see, the preliminary requirements were met except for two items which were later fulfilled and never a subject of dispute.

177.     At no time did the Hawaii Film Office ever contact the Filmmaker to alert him to anything that was not completed or out of the ordinary. In fact, they were silent for almost eight months.

**178.**     On or about November 20, 2017, Filmmaker again inquired about the $1,000 contribution that was required to be made to the University of Hawaii Foundation (see EXHIBIT D). This again shows how astute and careful Filmmaker was to the requirements set forth by the Hawaii Film Office.[3]

**179.**     Filmmaker then donated $1,000 to the University of Hawaii Foundation in accordance to the requirements (Filmmaker and his wife give 90% of their wealth away to charity or to their faith-based endeavors).

**180.**     On or about December 2017, Filmmaker received the pre-qualification letter (See EXHIBIT E and F). At no point, did the Hawaii Film Office ever question or comment on any part of the film's production or requirements.

**181.**     Multiple calls from March 2017 to February 2018 to Defendant Brazier again confirmed Filmmaker was on track to receive his rebate.

**182.**     On or about December 11, 2017, the Hawaii Film Office submitted an email (See EXHIBIT G) which outline precisely the 7 remaining requirements left to get the tax certificate.

**183.**     Filmmaker fulfilled every single requirement and more so and will testify, under the penalty of perjury (that carries a jail sentence), that every single requirement was fulfilled with complete honesty and integrity.

**184.**     This will be proven with 'smoking-gun' evidence at trial and during the Motion for Summary Judgment.

**185.**     To reiterate the point again, had Filmmaker not been deceived by Defendant's action, Filmmaker would not have filmed any movie in Hawaii. Period.

**186.**     Nevertheless, it still gets worse.

---

[3] The $1,000 requirement is yet another misprepresentation of the Hawaii Film Office's advertising and promotions as this falls beneath the 20% rebate back then, i.e., you have to pay an additional $1,000 to be considered for a rebate.

**187.** On or about December 11, 2017, Filmmaker sent an email simply re-confirming what constitutes a vendor by the Hawaii Film Office (see EXHIBIT H).

**188.** In the most juvenile, condescending, and vicious response, Defendant Brazier replied to Defendant Dawson, "Should we use the definition of vendor in the dictionary???" She unwittingly copied herself in her reply to the Filmmaker.

**189.** As it turns out, this requirement is the exact same thing the Hawaii Film Office fraudulently used in their desperate attempts to sabotage, smear, and hurt Filmmaker by denying the rebate. They questioned what constitutes a vendor. It's the 'Confederacy of Dunces' all over again.

**190.** This also proves the immature lengths the Defendants, collectively, have gone to avoid giving the Filmmaker his earned rebate. It's run like a junior high school.

**191.** Again, Filmmaker has worked with the film departments of Connecticut, Louisiana, Georgia, Virginia, North Carolina, California, et al and has never encountered such an immature, hostile, mean-spirited, incompetent, sneaky, slow, sensitive, and maniupulative conduct ever. Filmmaker has been in the business for over 22 years again and has made 12 movies.

**192.** The Filmmaker again believes the Honorable U.S. District Court and jury will find sufficient evidence in the months, and possible years to come, of another corrupt Hawaiian government agency that needs Federal investigation.

**193.** Filmmaker will depose all of the parties at the Hawaii Film Office and past UPMs and line producer of every single past film to prove there is widespread and gross incompetence at every level.

**194.** Filmmaker also plans to file a whistleblower lawsuit against the Hawaii Film Office and the Hollywood studios for wasting the taxpayer's money. Filmmaker will file motions to compel the paperwork to see every single budget that the Film Office has given millions of dollars to the studios and yet denied a simple rebate to the Filmmaker.

**195.** On or about December 2017, Filmmaker finished the final paperwork and contacted the Defendant Hawaii Film Office to begin the tax rebate final process and was

told the tax certificate would be sent within 3 to 6 months. – which is also stated on the Hawaii Film Office website and on their official forms. It is now October 2018 at the time of the filing of this suit. This is tragic in every respect.

196.    Again, having the tax certificate was critical in both post-production money and for the investors. The Defendants were fully aware of this.

197.    Despite numerous emails, Defendants repeatedly dragged their feet and returned emails sometimes a month later.

198.    They then stated Filmmaker had to do other tasks that were never in the intital conversations.

199.    Filmmaker shook his head in disbelief. Filmmaker immediately sensed something was terribly wrong.

200.    Again, Defendants hid the relationships of those that created friction and their motives of 'teaching the filmmaker a lesson' by delaying the tax certificate to now 9 months. This a textbook fraud and deceit.

201.    Again, Filmmaker would never have filmed a movie in Hawaii had he known of this fraud and deceit, mispresentation, civil conspiracy and other conduct the Hawaii Film Office would so brazenly do.

202.    Furthermore, they even admitted themselves that the office has come under intense scrutiny by legislatures for previous blunders which will be part of the whistleblower lawsuit. This again is total fraud and deceit and a total conflict of interest.

203.    Defendants went beyond being crafty/sneaky to fraud and deceit as the Court will see throughout this Complaint. These are the most dishonorable actions that Filmmaker has ever worked with in 22 years.  Here Filmmaker shot a movie that would honor a Hawaiian Chiefess, pay good-paying jobs to Hawaiian/Polynesians, and the Hawaii Film Office back-stabbed him by deceiving him and playing little juvenile high-school games no other film office of any state would dare to do.

204.    If in fact, the Hollywood studios have not gone through this level of fraud, then the Hawaii Film Office, complete with starry, wide eyes, have discriminated against the

Filmmaker either through his religious beliefs (a violation of the First Amendment) or against him as an independent filmmaker (a violation of the Hawaii Whistleblower Act) <u>This is a text-book case of self-dealing.</u>

205.     On or about August 2018, Filmmaker sent several emails to the Attorney General's office and the Governor's office to attempt to understand why the Hawaii Film Office was taking so long. The Hawaii Film Office refused to answer any emails.

206.     <u>Something was truly wrong here.</u>

207.     Finally, after legal threats, the Hawaii Film Office, in the most overt fraud of perhaps any governmental agency in the state, then sent Filmmaker an astounding list of complete lies and fabrications.

208.     Defendants said because Filmmaker has not proved any of his receipts, he is not entitled to a 20% rebate. <u>Filmmaker immediately knew he was duped.</u>

209.     The Hawaii Film Office sent a list of requirements that are filled with complete fraud and lies. It's almost jaw-dropping how each remaining requirement had already been fulfilled.

210.     <u>*The Hawaii Film Office sent a one-page sheet that looked like it took ten minutes to do – not 9 months (see Exhibit A).*</u> The Filmmaker will show this smacks of the juvenile and utterly fraudulent way the Hawaii Film Office went to avoid paying the 20% rebate.

211.     Among the several 'items' that Hawaii Film Office said the Filmmaker had to prove was the actual shooting location of Kualoa Ranch (See Exhibit A). Filmmaker sent the bill, the cancelled checks, and the Defendants still said Filmmaker could not prove this expense. A simple phone call could verify this expenditure.

212. <u>The sheet again shows scores of names of crew that Filmmaker already gave the Hawaii Film Office every single GET Tax ID that they required. Yet it ignores key actor's salaries, key equipment rentals, hotels – it's an absolute fraudulent document.[4]</u>

213. Defendants Benita Brazier and Donne Dawson clearly acted outside the scope of their agency in wanting to pay back Filmmaker in retribution for several reasons Filmmaker will prove at trial.

214. The State of Hawaii should not defend Ms. Brazier or Ms. Dawson.

215. Filmmaker will call on several key witnesses in the cast, crew, and extras to prove the Film Office is in disarray. He expects the trial to go for at least ten weeks and asks the Honorable Court's patience as Filmmaker is bracing for extensive discovery (and possible Motions to Compel with sanctions) to take place during this litigation.

216. This case is very important as there must be freedom of speech in Hawaii and that federal law still supercedes state law. Hawaii is part of America and most Hawaiians want that.

217. Filmmaker will subpeona every crew member for depositions to testify to the events as true. And if Defendants lie during their sworn depositions, Filmmaker will file a criminal complaint with the D.A. for perjury and possible Federal intervention. Filmmaker will begin depositions within 30 days of the service of the Complaint to get a head start on all discovery.

218. Filmmaker believes the damages to the movie are permanent and irrecoverable due to Defendant's actions.

---

[4] The one-sheet contains over 50 crew and cast that have already been accounted for. The only way to explain the red marks is the Hawaii Film Office is doing everything possible to sabotage and not pay Filmmaker. This is indisputable evidence. Filmmaker will submit all of the evidence during discovery and will file a Motion to seal the documents.

219.    It is paramount that the Honorable Court grant Filmmaker broad discretion in ascertaining what is going on as Filmmaker expects to file multiple Motions to Compel as the Defendants have proven themselves deftly good at avoiding or ignoring questions pertaining to their conduct.

220.    Defendant's actions left the film in total chaos. The film went overbudget because of their actions and the Filmmaker had to pay the overbudget out of his own pocket.

221.    Again, Filmmaker testifies, under penalty of perjury, that he has never sued any governmental agency in his entire life.

222.    Filmmaker will depose Defendants Benita Brazier, Donne Dawson in November. He will then depose other filmmakers who have shot movies in Hawaii.

**223.**    Filmmaker will file a Pre-Judgment Writ of Attachment on all of Defendant's personal and corporate assets and believes he has been damaged by no less than $135 million in actual and punitive damages and will spend the next 5 years outlying the case against the Defendants. They need to be punished severely for their contemptible mistreatment of a filmmaker who tried to honor the people of Hawaii and their valiant and courageous leader two hundred years ago.

224.    Filmmaker is exiting making the next films in Hawaii and the damages are stark and real – due mostly because of Defendant's fraud and deceit. This will be calculated in the damages against Defendants.

225.    Filmmaker also will depose crew members and others who Defendants devulged confidential information.

226.    Filmmakers request the court to expedite discovery and set a trial date in the most expeditious manner if possible.

## COUNT 3 – VIOLATION OF CIVIL RIGHTS

### (42 U.S.C. § 1983: FREE SPEECH AND DUE PROCESS)

227.   Plaintiff incorporates by reference all preceding paragraphs as if fully restated here.

228.   <u>The Defendant's repeated rejection of Filmmaker's rebate is an unconstitutional abridgment on its face, and as applied or threatened to be applied, of the plaintiff's affirmative rights to freedom of speech under the United States Constitution, First and Fourteenth Amendments.</u>

229.   The Hawaii Film Office requirements that it needs a copy of the screenplay and the film, on its face and as applied or threatened to be applied, is an unconstitutionally overbroad restriction on expressive activity. Nevertheless, Plaintiff-Filmmaker sent the Office a copy of his script.

230.   The Hawaii Film Office requirements and rejection of Filmmaker's rebate, on its face and as applied or threatened to be applied, is an unconstitutionally vague restriction on expressive activity.

231.   The Hawaii Film Office requirements, on its face and as applied or threatened to be applied, is a content-based and viewpoint-based restriction on speech.

232.   The Hawaii Film Office requirements and rejection of Filmmaker's rebate, on its face and as applied or threatened to be applied, does not serve a significant governmental interest.

233.   The Hawaii Film Office requirements and rejection of Filmmaker's rebate, on its face and as applied or threatened to be applied, does not leave open ample alternative channels of communication.

234.   The Hawaii Film Office requirements and rejection of Filmmaker's rebate, on its face and as applied or threatened to be applied, is neither narrowly tailored nor the least

restrictive means to accomplish any permissible governmental purpose sought to be served by the legislation. This is apparent in the way the Hawaii Film Office so brazenly, unfairly, and fraudulently rejected Filmmaker's complete package – complete with all receipts and cancelled checks to state workers, vendors, hotels, caterers, extras, etc – all because the Defendants didn't like Filmmaker and/or his message. This is unequivocal.

235.    The Hawaii Film Office rebate program fails to adequately advise, notify, or inform persons threatened with possible rejection of the rebate for violation of their requirements.

236.    The Hawaii Film Office rebate requirements are ripe for abuse, and an irrational and unreasonable statute, imposing unjustifiable restrictions on the exercise of protected constitutional rights.

237.    The Hawaii Film Office requirements, on its face and as applied or threatened to be applied, violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and similar guarantees in the Hawaii State Constitution by denying plaintiff free speech rights allowed to others in similar situations and other protections of state and federal law, namely Hollywood studios who have not run into any of the problems independent Christian filmmaker Tim Chey ran into with this Hawaii State agency.

238.    The First Amendment is to guarantee Filmmaker can make a film that will tell the story of a Hawaiian chiefess who found Christ without a state agency attempting to sabotage the filmmaker because of his faith. It's that simple.

**(42 U.S.C. SECTION 1983: EQUAL PROTECTION)**

239.    The Hawaii Film Office regulations, on its face and as applied or threatened to be applied, violates the Equal Protection Clause of the Fourteenth Amendment. <u>Specifically but not exclusively, the Office's regulations (admitted to by Defendant Dawson in an email to Filmmaker) creates varying classes of independent filmmakers and Hollywood studios and Defendant Dawson can 'select' who gets priority to get the rebate returned as she herself admitted in an email to Filmmaker.</u>

240.    These classifications have a direct bearing on the fundamental interest in free speech.

241.    <u>The City has no compelling interest justifying the creation of these classes – independent or Hollywood or even independent faith-based films - and cannot show that these classifications are necessary to serve any legitimate governmental interest.</u>

242.    The Hawaii Film Office's regulation singles out which film gets treatment first. So even if, arguendo, Defendant Dawson showed 'favortism' to Filmmaker because he's a sold-out Christian and gave Filmmaker his rebate check in 30 days, this is still a stark and complete violation of the Equal Protection Clause.

243.    Filmmaker is not asking for favoritism. He's asking to be treated equally with the Hollywood film studios cranking out violent and sex-crazed movies by the bucket-full. Anything less is a complete abridgement of the Equal Protection Clause.

244.    These classifications have a direct bearing on the fundamental interest in free speech. The City has no compelling interest justifying who gets priority and cannot show that these classifications are necessary to serve any legitimate governmental interest.

245.    As a direct and proximate result of the foregoing material breaches of wrongful conversion, Filmmaker has been damaged in an aggregate amount to be determined at

trial, in excess of the jurisdictional minimum of this court, believed to be no less than $135 million.

## COUNT 4 – INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE

246.    Plaintiff incorporates by reference all preceding paragraphs as if fully restated here.

**247.**    "The five elements for intentional interference with prospective economic advantage are: (1) [a]n economic relationship between the Filmmaker and some third party, with the probability of future economic benefit to the Filmmaker; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the Filmmaker proximately caused by the acts of the defendant."

**248.**    On or about April 2017, Filmmaker began pre-production of one of most ambitious movies on Hawaii history ever - on the lives of Chiefess Kapiolani, King Kamehameha, Captain Cook, and Queen Liliuokalani.

**249.**    The film made news around the world, including US News and World Report, NBC, ABC, and local Hawaiian media (Hawaii News Now, Star Advertiser, KHON, KITV, et al).

**250.**    As the Plaintiff/Filmmaker Tim Chey is a devout Christian, the first film he wanted to put into production was the compelling story of Chiefess Kapiolani who found Christ and went to the top of the volcano to proclaim her new-found faith in the Lord.

**251.**    Filmmaker enlisted a Native Hawaiian professor at the University of Hawaii who teaches Native Hawaiian history to help research and co-write the script. Yet a core group of people who oppose Christianity in Hawaii conspired against the Filmmaker.

1  Filmmaker has 'smoking-gun' evidence of this and will release this during discovery and

2  at the trial.

252.     Filmmaker is contemplating suing this group later in 2019 – he first wants to get

this case moving forward to a 2019/2020 trial.

253.     On or about March 2017, Filmmaker decided to film 'The Islands' after being

assured that the Defendant Hawaii Film Office would give a 20% rebate on the budget

that the Film Office gives to all filmmakers. This was extremely important to the

Filmmaker as many production companies base their entire decision for where to film

based on the movie tax credits of each state. This is common industry knowledge and

practice.

254.     Also, the 20% rebate is critically important for P&A (prints and advertising) for

the film's exposure and marketing funds.

255.     Had Filmmaker known that Defendants would even attempt not to reward the

20% rebate because they didn't like the content of the movie, the Filmmaker's beliefs, or

his personality per se, Filmmaker would never have even launched such a huculean effort

in making the film, including casting an Academy-Award winning actress, a legendary

actor, and a 98% Native Polynesian cast. Filmmaker would simply have made another

film in another state. Filmmaker has made 12 movies in 22 years. He did not need the

horrific grief imposed by Defendants collectively.

256.     It is very rare for any governmental agency to act as juvenile, vindictive, and

incompetent as the Hawaii Film Office. It's astonishing as Filmmaker has worked with

the Connecticut, Lousiana, Virginia, Fiji, California, Michigan, and North Carolina film

offices with absolutely no issues or problems. In fact, the Connecticut Film Office gave

Filmmaker his 30% tax rebate for 'Freedom' (Cuba Gooding, Jr., Sharon Leal, William

Sadler) within 30 days after the paperwork was turned in.

257.     From the start of the movie until post-production, Filmmaker made the 20%

rebate the number one priority as he realized how significant the rebate was. It was 20%

of the entire budget and this was to put bread on the table of a faith-based filmmaker.

258.     On or about April 2017, Filmmaker received a strange message from one of the employees of the Hawaii Film Office. She said she had 'concerns' about Filmmaker's movie and to call her. Filmmaker returned her call and assured her that one of his co-writers was a well-respected Native Hawaiian professor at the University of Hawaii who taught Native Hawaiian history.

259.     Nevertheless, this is a complete violation of Filmmaker's 1st Amendment rights for a government agency to inquire about the content of a movie – it's almost unheard of. Imagine a California agency calling a Hollywood studio and 'inquiring' about the content of the horror movie 'The Nun'. The outrage would be worldwide. This is no different.

260.     Having a Hawaii state agency calling to say there's a problem with Filmmaker's Christian movie reeks of 1st Amendment problems of free speech.

261.     The history of Chiefess Kapiolani's leadership brought Christianity to Hawaii. This is the issue of those who oppose it. Filmmaker gets it and totally understands the hatred as Jesus himself said "If they hated me, they will hate you." (John 15:18).

262.     Nevertheless, Hawaii is officially part of the United States and must adhere to federal laws or there will be absolute chaos. The rejection of the rebate to Filmmaker is the beginning of the end and shows the Defendants collectively breached the implied covenant of good faith starkly and maliciously.

263.     Again, the film is based on a true story and anything done on the governmental level to oppose Filmmaker is complete and total discrimination against his religion and unequivocably violates the Filmmaker's First Amendment rights to free speech.

264.     The events of the core group to oppose Filmmaker's telling of the history started the entire chain-of-events as Filmmaker would not back down from making the film.

265.     Filmmaker received death threats before and during shooting. His staff had to file police reports to the incompetent Honolulu police who did absolutely nothing despite even having the name of the alleged perpetrator.

266. Filmmaker alleges that possible elements or people in the Hawaii Film Office have also been part of a smear campaign against many historical Hawaiian films, including Filmmaker's movie.

267. In addition to death threats, Filmmaker was up against many other deep hurdles, including union threats and Hawaiian activists who threatened to shut down the production on numerous instances.

268. In over 60 emails and phone calls, Filmmaker worked diligently to make sure every single receipt, GET tax id of every single crew member and cast member was obtained.

269. Filmmaker fulfilled each and every requirement methodically and precisely because he knew the Defendant Hawaii Film Office might try something sneaky. Filmmaker even has proof that one email mistakenly forwarded to Filmmaker showed the Defendants were already conspiring to 'get' Filmmaker' (See Exhibit H).

270. This process of getting all the requirements for the Hawaii Film Office took over 13 weeks and Filmmaker calculates over 240 hours of man time.

271. Filmmaker is also a Harvard-educated attorney and bills at $550 an hour. So by just multiplying 240 x $550 would come to $192,000. This is how important the rebate back from the Hawaii Film Office was to the Filmmaker and the Filmmaker asks the Court to consider the $192,000 as additional damages aside from the punitive damages.

272. Again, the Hawaii Film Office has blatantly lied in their refusal to credit the Filmmaker with the 20% rebate. There is no reason, outside of their wanting to teach Filmmaker a lesson, to withhold the tax certificate. Filmmaker fulfilled every requirement.

273. Filmmaker tries to show the love of Jesus to everyone he can. However, should Defendants even broach any issues that demean or slander Filmmaker, Filmmaker will amend this lawsuit to include defamation and/or libel and slander. Filmmaker is very confident he would win any Anti-Slapp Motion as he has been more than diligent in the entire application process.

274.   The fact that Defendants did not alert Filmmaker that he was 'lacking' in further proof of receipts for more than 9 months is further proof of fraud and deceit that would later rise up again on much more serious levels.

275.   On or about September 2017, Filmmaker put in several calls to Defendant Brazier to make sure every 'T' was crossed and every 'I' was dotted. Filmmaker wanted to make sure there would be no problems with getting the 20% rebate back. This was critical as he would not have filmed in Hawaii.

276.   On or about September 2017, Defendant Brazier repeatedly told Filmmaker that he did not need to get the GET Tax Ids for established businesses in Hawaii as they were obviously paying tax to the Hawaii government.

277.   This proved to be yet another misrepresentation.

278.   On or about September 2018, almost a year later, Defendants Dawson and the Hawaii Film Office suddenly demanded that all the GET tax IDs should be listed. This is another brazen and fraudulent attempt to deny Filmmaker his just rebate. Filmmaker did, in fact, list every single GET Tax ID. Somehow, they lost the paperwork or it was maliciously destroyed.

279.   In Defendant's one page sheet they sent to Filmmaker - that possibly took less than an hour to do – not 9 months – they also said the GET Tax IDs were wrong when in fact they were correct. Further proof that they were desperately trying anything to not give the Filmmaker his rebate.

280.   The entire one-page sheet is filled with complete wrong assumptions, numbers, and math. It's like a third-grader put it together hoping this would pass and Filmmaker would go away.

281.   On or about October 2017 and three weeks before shooting, Defendant Brazier contacted the production's UPM and gave the UPM the actual budget figures. This is a text-book case of conflict of interest. The UPM knew Defendant Brazier and was never given authorization to have any confidential numbers or should receive them as this

person was only the UPM. The production ended up firing the UPM for gross

incompetence and was later sued by the UPM in small claims.

282.    Had Filmmaker known this conflict of interest and gross breach of privacy, he

would have immediately requested another contact to work with at the Hawaii Film

Office, because of the industry rule/code that key positions should not be filled by ANY

partnership team because again if one is fired, the other will quit or have to be fired as

well.

283.    Again, this is a textbook case of breaching an implied good covenant in dealings.

284.    Filmmaker believes and alleges that the UPM's firing has contributed to the

Hawaii Film Office defrauding Filmmaker out of his rightful 20% rebate as the UPM sent

a letter to the office violating the confidentiality provision of her signed contract. No

other true professional in the industry would do this.

285.    This unprofessional, sneaky, and juvenile high school conduct is another reason

why Filmmaker will never film in Hawaii again.

286.    On or about November 2017, Filmmaker, to make sure every single requirement

was met, personally emailed Defendant Brazier to have any Film Office employee or

government legislator come to the set (see EXHIBIT B). This requirement is buried in the

forms, but this email again proves how meticulous Filmmaker was in fulfilling every

single requirement including this obscure provision.

287.    On or about November 17, 2017, Filmmaker submitted the preliminary budget to

the Film Office (see EXHIBIT C). As the Honorable Court can see, the preliminary

requirements were met except for two items which were later fulfilled and never a subject

of dispute.

288.    At no time did the Hawaii Film Office ever contact the Filmmaker to alert him to

anything that was not completed or out of the ordinary. In fact, they were silent for

almost eight months.

289.    On or about November 20, 2017, Filmmaker again inquired about the $1,000

contribution that was required to be made to the University of Hawaii Foundation (see

EXHIBIT D). This again shows how astute and careful Filmmaker was to the requirements set forth by the Hawaii Film Office.[5]

290.     Filmmaker then donated $1,000 to the University of Hawaii Foundation in accordance to the requirements (Filmmaker and his wife give 90% of their wealth away to charity or to their faith-based endeavors).

291.     On or about December 2017, Filmmaker received the pre-qualification letter (See EXHIBIT E and F). At no point, did the Hawaii Film Office ever question or comment on any part of the film's production or requirements.

292.     Multiple calls from March 2017 to February 2018 to Defendant Brazier again confirmed Filmmaker was on track to receive his rebate.

293.     On or about December 11, 2017, the Hawaii Film Office submitted an email (See EXHIBIT G) which outline precisely the 7 remaining requirements left to get the tax certificate.

294.     Filmmaker fulfilled every single requirement and more so and will testify, under the penalty of perjury (that carries a jail sentence), that every single requirement was fulfilled with complete honesty and integrity.

295.     This will be proven with 'smoking-gun' evidence at trial and during the Motion for Summary Judgment.

296.     To reiterate the point again, had Filmmaker not been deceived by Defendant's action, Filmmaker would not have filmed any movie in Hawaii. Period.

297.     Nevertheless, it still gets worse.

298.     On or about December 11, 2017, Filmmaker sent an email simply re-confirming what constitutes a vendor by the Hawaii Film Office (see EXHIBIT H).

---

[5] The $1,000 requirement is yet another misprepresentation of the Hawaii Film Office's advertising and promotions as this falls beneath the 20% rebate back then, i.e., you have to pay an additional $1,000 to be considered for a rebate.

299.    In the most juvenile, condescending, and vicious response, Defendant Brazier replied to Defendant Dawson, "Should we use the definition of vendor in the dictionary???" She unwittingly copied herself in her reply to the Filmmaker.

300.    As it turns out, this requirement is the exact same thing the Hawaii Film Office fraudulently used in their desperate attempts to sabotage, smear, and hurt Filmmaker by denying the rebate. They questioned what constitutes a vendor. It's the 'Confederacy of Dunces' all over again.

301.    This also proves the immature lengths the Defendants, collectively, have gone to avoid giving the Filmmaker his earned rebate. It's run like a junior high school.

302.    Again, Filmmaker has worked with the film departments of Connecticut, Louisiana, Georgia, Virginia, North Carolina, California, et al and has never encountered such an immature, hostile, mean-spirited, incompetent, sneaky, slow, sensitive, and maniupulative conduct ever. Filmmaker has been in the business for over 22 years again and has made 12 movies.

303.    The Filmmaker again believes the Honorable U.S. District Court and jury will find sufficient evidence in the months, and possible years to come, of another corrupt Hawaiian government agency that needs Federal investigation.

304.    Filmmaker will depose all of the parties at the Hawaii Film Office and past UPMs and line producer of every single past film to prove there is widespread and gross incompetence at every level.

305.    Filmmaker also plans to file a whistleblower lawsuit against the Hawaii Film Office and the Hollywood studios for wasting the taxpayer's money. Filmmaker will file motions to compel the paperwork to see every single budget that the Film Office has given millions of dollars to the studios and yet denied a simple rebate to the Filmmaker.

306.    On or about December 2017, Filmmaker finished the final paperwork and contacted the Defendant Hawaii Film Office to begin the tax rebate final process and was told the tax certificate would be sent within 3 to 6 months. – which is also stated on the

1   Hawaii Film Office website and on their official forms. It is now October 2018 at the

2   time of the filing of this suit. This is tragic in every respect.

3   **307.**      Again, having the tax certificate was critical in both post-production money and

4   for the investors. The Defendants were fully aware of this.

5   **308.**      Despite numerous emails, Defendants repeatedly dragged their feet and returned

6   emails sometimes a month later.

7   **309.**      They then stated Filmmaker had to do other tasks that were never in the intital

8   conversations.

9   310.      Filmmaker shook his head in disbelief. Filmmaker immediately sensed something

10  was terribly wrong.

11  **311.**      Again, Defendants hid the relationships of those that created friction and their

12  motives of 'teaching the filmmaker a lesson' by delaying the tax certificate to now 9

13  months. <u>This a textbook fraud and deceit.</u>

14  **312.**      Again, Filmmaker would never have filmed a movie in Hawaii had he known of

15  this fraud and deceit, mispresentation, civil conspiracy and other conduct the Hawaii Film

16  Office would so brazenly do.

17  **313.**      Furthermore, they even admitted themselves that the office has come under

18  intense scrutiny by legislatures for previous blunders which will be part of the

19  whistleblower lawsuit. <u>This again is total fraud and deceit and a total conflict of interest.</u>

20  **314.**      <u>Defendants went beyond being crafty/sneaky to fraud and deceit as the Court will</u>

21  <u>see throughout this Complaint. These are the most dishonorable actions that Filmmaker</u>

22  <u>has ever worked with in 22 years.</u>  Here Filmmaker shot a movie that would honor a

23  Hawaiian Chiefess, pay good-paying jobs to Hawaiian/Polynesians, and the Hawaii Film

24  Office back-stabbed him by deceiving him and playing little juvenile high-school games

25  no other film office of any state would dare to do.

26  **315.**      If in fact, the Hollywood studios have not gone through this level of fraud, then

27  the Hawaii Film Office, complete with starry, wide eyes, have discriminated against the

28  Filmmaker either through his religious beliefs (a violation of the First Amendment) or

1    against him as an independent filmmaker (a violation of the Hawaii Whistleblower Act)

2    This is a text-book case of self-dealing.

3    316.    On or about August 2018, Filmmaker sent several emails to the Attorney

4    General's office and the Governor's office to attempt to understand why the Hawaii Film

5    Office was taking so long. The Hawaii Film Office refused to answer any emails.

6    317.    Something was truly wrong here.

7    318.    Finally, after legal threats, the Hawaii Film Office, in the most overt fraud of

8    perhaps any governmental agency in the state, then sent Filmmaker an astounding list of

9    complete lies and fabrications.

10   319.    Defendants said because Filmmaker has not proved any of his receipts, he is not

11   entitled to a 20% rebate. Filmmaker immediately knew he was duped.

12   320.    The Hawaii Film Office sent a list of requirements that are filled with complete

13   fraud and lies. It's almost jaw-dropping how each remaining requirement had already

14   been fulfilled.

15   321.    *The Hawaii Film Office sent a one-page sheet that looked like it took ten minutes*

16   *to do – not 9 months (see Exhibit A).* The Filmmaker will show this smacks of the

17   juvenile and utterly fraudulent way the Hawaii Film Office went to avoid paying the 20%

18   rebate.

19   322.    Among the several 'items' that Hawaii Film Office said the Filmmaker had to

20   prove was the actual shooting location of Kualoa Ranch (See Exhibit A). Filmmaker sent

21   the bill, the cancelled checks, and the Defendants still said Filmmaker could not prove

22   this expense. A simple phone call could verify this expenditure.

23   323.    The sheet again shows scores of names of crew that Filmmaker already gave the

24   Hawaii Film Office every single GET Tax ID that they required. Yet it ignores key

25   actor's salaries, key equipment rentals, hotels – it's an absolute fraudulent document.[6]

26

27   _____

28   [6] The one-sheet contains over 50 crew and cast that have already been
     accounted for. The only way to explain the red marks is the Hawaii Film

324.     Defendants Benita Brazier and Donne Dawson clearly acted outside the scope of their agency in wanting to pay back Filmmaker in retribution for several reasons Filmmaker will prove at trial.

325.     The State of Hawaii should not defend Ms. Brazier or Ms. Dawson.

326.     Filmmaker will call on several key witnesses in the cast, crew, and extras to prove the Film Office is in disarray. He expects the trial to go for at least ten weeks and asks the Honorable Court's patience as Filmmaker is bracing for extensive discovery (and possible Motions to Compel with sanctions) to take place during this litigation.

327.     This case is very important as there must be freedom of speech in Hawaii and that federal law still supercedes state law. Hawaii is part of America and most Hawaiians want that.

328.     Filmmaker will subpeona every crew member for depositions to testify to the events as true. And if Defendants lie during their sworn depositions, Filmmaker will file a criminal complaint with the D.A. for perjury and possible Federal intervention. Filmmaker will begin depositions within 30 days of the service of the Complaint to get a head start on all discovery.

329.     Filmmaker believes the damages to the movie are permanent and irrecoverable due to Defendant's actions.

330.     It is paramount that the Honorable Court grant Filmmaker broad discretion in ascertaining what is going on as Filmmaker expects to file multiple Motions to Compel as the Defendants have proven themselves deftly good at avoiding or ignoring questions pertaining to their conduct.

331.     Defendant's actions left the film in total chaos. The film went overbudget because of their actions and the Filmmaker had to pay the overbudget out of his own pocket.

Office is doing everything possible to sabotage and not pay Filmmaker. This is indisputable evidence. Filmmaker will submit all of the evidence during discovery and will file a Motion to seal the documents.

332.     <u>Again, Filmmaker testifies, under penalty of perjury, that he has never sued any governmental agency in his entire life.</u>

333.     Filmmaker will depose Defendants Benita Brazier, Donne Dawson in November. He will then depose other filmmakers who have shot movies in Hawaii.

334.     Filmmaker will file a Pre-Judgment Writ of Attachment on all of Defendant's personal and corporate assets and believes he has been damaged by no less than $135 million in actual and punitive damages and will spend the next 5 years outlying the case against the Defendants. They need to be punished severely for their contemptible mistreatment of a filmmaker who tried to honor the people of Hawaii and their valiant and courageous leader two hundred years ago.

335.     Filmmaker is exiting making the next films in Hawaii and the damages are stark and real – due mostly because of Defendant's fraud and deceit. This will be calculated in the damages against Defendants.

## COUNT 4 – <u>BREACH OF WRITTEN CONTRACT</u>

336.     Filmmaker repeats and realleges each and every allegation contained in paragraphs 1 through 334 above as if fully set forth herein.

337.     Filmmakers performed all obligations required by to be performed under the written, signed contract except for those obligations waived, excused, or prevented by defendants.

338.     On or about April 2017, Filmmaker began pre-production of one of most ambitious movies on Hawaii history ever - on the lives of Chiefess Kapiolani, King Kamehameha, Captain Cook, and Queen Liliuokalani.

339.     The film made news around the world, including US News and World Report, NBC, ABC, and local Hawaiian media (Hawaii News Now, Star Advertiser, KHON, KITV, et al).

340.   As the Plaintiff/Filmmaker Tim Chey is a devout Christian, the first film he wanted to put into production was the compelling story of Chiefess Kapiolani who found Christ and went to the top of the volcano to proclaim her new-found faith in the Lord.

341.   Filmmaker enlisted a Native Hawaiian professor at the University of Hawaii who teaches Native Hawaiian history to help research and co-write the script. Yet a core group of people who oppose Christianity in Hawaii conspired against the Filmmaker. Filmmaker has 'smoking-gun' evidence of this and will release this during discovery and at the trial.

342.   Filmmaker is contemplating suing this group later in 2019 – he first wants to get this case moving forward to a 2019/2020 trial.

343.   On or about March 2017, Filmmaker decided to film 'The Islands' after being assured that the Defendant Hawaii Film Office would give a 20% rebate on the budget that the Film Office gives to all filmmakers. This was extremely important to the Filmmaker as many production companies base their entire decision for where to film based on the movie tax credits of each state. This is common industry knowledge and practice.

344.   Also, the 20% rebate is critically important for P&A (prints and advertising) for the film's exposure and marketing funds.

345.   Had Filmmaker known that Defendants would even attempt not to reward the 20% rebate because they didn't like the content of the movie, the Filmmaker's beliefs, or his personality per se, Filmmaker would never have even launched such a huculean effort in making the film, including casting an Academy-Award winning actress, a legendary actor, and a 98% Native Polynesian cast. Filmmaker would simply have made another film in another state. Filmmaker has made 12 movies in 22 years. He did not need the horrific grief imposed by Defendants collectively.

346.   It is very rare for any governmental agency to act as juvenile, vindictive, and incompetent as the Hawaii Film Office. It's astonishing as Filmmaker has worked with the Connecticut, Lousiana, Virginia, Fiji, California, Michigan, and North Carolina film

<u>offices with absolutely no issues or problems</u>. In fact, the Connecticut Film Office gave Filmmaker his 30% tax rebate for 'Freedom' (Cuba Gooding, Jr., Sharon Leal, William Sadler) within 30 days after the paperwork was turned in.

347.    From the start of the movie until post-production, Filmmaker made the 20% rebate the number one priority as he realized how significant the rebate was. It was 20% of the entire budget and this was to put bread on the table of a faith-based filmmaker.

348.    On or about April 2017, Filmmaker received a strange message from one of the employees of the Hawaii Film Office. She said she had 'concerns' about Filmmaker's movie and to call her. Filmmaker returned her call and assured her that one of his co-writers was a well-respected Native Hawaiian professor at the University of Hawaii who taught Native Hawaiian history.

349.    Nevertheless, this is a complete violation of Filmmaker's 1st Amendment rights for a government agency to inquire about the content of a movie – it's almost unheard of. Imagine a California agency calling a Hollywood studio and 'inquiring' about the content of the horror movie 'The Nun'. The outrage would be worldwide. This is no different.

350.    Having a Hawaii state agency calling to say there's a problem with Filmmaker's Christian movie reeks of 1st Amendment problems of free speech.

351.    The history of Chiefess Kapiolani's leadership brought Christianity to Hawaii. This is the issue of those who oppose it. Filmmaker gets it and totally understands the hatred as Jesus himself said "If they hated me, they will hate you." (John 15:18).

352.    Nevertheless, Hawaii is officially part of the United States and must adhere to federal laws or there will be absolute chaos. <u>The rejection of the rebate to Filmmaker is the beginning of the end and shows the Defendants collectively breached the implied covenant of good faith starkly and maliciously.</u>

353.    Again, the film is based on a true story and anything done on the governmental level to oppose Filmmaker is complete and total discrimination against his religion and unequivocably violates the Filmmaker's First Amendment rights to free speech.

354.    The events of the core group to oppose Filmmaker's telling of the history started the entire chain-of-events as Filmmaker would not back down from making the film.

355.    Filmmaker received death threats before and during shooting. His staff had to file police reports to the incompetent Honolulu police who did absolutely nothing despite even having the name of the alleged perpetrator.

356.    Filmmaker alleges that possible elements or people in the Hawaii Film Office have also been part of a smear campaign against many historical Hawaiian films, including Filmmaker's movie.

357.    In addition to death threats, Filmmaker was up against many other deep hurdles, including union threats and Hawaiian activists who threatened to shut down the production on numerous instances.

358.    In over 60 emails and phone calls, Filmmaker worked diligently to make sure every single receipt, GET tax id of every single crew member and cast member was obtained.

359.    Filmmaker fulfilled each and every requirement methodically and precisely because he knew the Defendant Hawaii Film Office might try something sneaky. Filmmaker even has proof that one email mistakenly forwarded to Filmmaker showed the Defendants were already conspiring to 'get' Filmmaker' (See Exhibit H).

360.    This process of getting all the requirements for the Hawaii Film Office took over 13 weeks and Filmmaker calculates over 240 hours of man time.

361.    Filmmaker is also a Harvard-educated attorney and bills at $550 an hour. So by just multiplying 240 x $550 would come to $192,000. This is how important the rebate back from the Hawaii Film Office was to the Filmmaker and the Filmmaker asks the Court to consider the $192,000 as additional damages aside from the punitive damages.

362.    Again, the Hawaii Film Office has blatantly lied in their refusal to credit the Filmmaker with the 20% rebate. There is no reason, outside of their wanting to teach Filmmaker a lesson, to withhold the tax certificate. Filmmaker fulfilled every requirement.

363.    Filmmaker tries to show the love of Jesus to everyone he can. However, should Defendants even broach any issues that demean or slander Filmmaker, Filmmaker will amend this lawsuit to include defamation and/or libel and slander. Filmmaker is very confident he would win any Anti-Slapp Motion as he has been more than diligent in the entire application process.

364.    <u>The fact that Defendants did not alert Filmmaker that he was 'lacking' in further proof of receipts for more than 9 months is further proof of fraud and deceit that would later rise up again on much more serious levels.</u>

365.    On or about September 2017, Filmmaker put in several calls to Defendant Brazier to make sure every 'T' was crossed and every 'I' was dotted. Filmmaker wanted to make sure there would be no problems with getting the 20% rebate back. This was critical as he would not have filmed in Hawaii.

366.    On or about September 2017, Defendant Brazier repeatedly told Filmmaker that he did not need to get the GET Tax Ids for established businesses in Hawaii as they were obviously paying tax to the Hawaii government.

367.    This proved to be yet another misrepresentation.

368.    On or about September 2018, <u>almost a year later</u>, Defendants Dawson and the Hawaii Film Office suddenly demanded that all the GET tax IDs should be listed. <u>This is another brazen and fraudulent attempt to deny Filmmaker his just rebate</u>. Filmmaker did, in fact, list every single GET Tax ID. Somehow, they lost the paperwork or it was maliciously destroyed.

369.    In Defendant's one page sheet they sent to Filmmaker - that possibly took less than an hour to do – not 9 months – they also said the GET Tax IDs were wrong when in fact they were correct. Further proof that they were desperately trying anything to not give the Filmmaker his rebate.

370.    The entire one-page sheet is filled with complete wrong assumptions, numbers, and math. It's like a third-grader put it together hoping this would pass and Filmmaker would go away.

**371.** On or about October 2017 and three weeks before shooting, Defendant Brazier contacted the production's UPM and gave the UPM the actual budget figures. <u>This is a text-book case of conflict of interest</u>. The UPM knew Defendant Brazier and was never given authorization to have any confidential numbers or should receive them as this person was only the UPM. The production ended up firing the UPM for gross incompetence and was later sued by the UPM in small claims.

**372.** Had Filmmaker known this conflict of interest and gross breach of privacy, he would have immediately requested another contact to work with at the Hawaii Film Office, because of the industry rule/code that key positions should not be filled by ANY partnership team because again if one is fired, the other will quit or have to be fired as well.

**373.** <u>Again, this is a textbook case of breaching a written contract.</u>

**374.** Filmmaker believes and alleges that the UPM's firing has contributed to the Hawaii Film Office defrauding Filmmaker out of his rightful 20% rebate as the UPM sent a letter to the office violating the confidentiality provision of her signed contract. No other true professional in the industry would do this.

**375.** This unprofessional, sneaky, and juvenile high school conduct is another reason why Filmmaker will never film in Hawaii again.

**376.** On or about November 2017, Filmmaker, to make sure every single requirement was met, personally emailed Defendant Brazier to have any Film Office employee or government legislator come to the set (see EXHIBIT B). This requirement is buried in the forms, but this email again proves how meticulous Filmmaker was in fulfilling every single requirement including this obscure provision.

**377.** On or about November 17, 2017, Filmmaker submitted the preliminary budget to the Film Office (see EXHIBIT C). As the Honorable Court can see, the preliminary requirements were met except for two items which were later fulfilled and never a subject of dispute.

378.　　At no time did the Hawaii Film Office ever contact the Filmmaker to alert him to anything that was not completed or out of the ordinary. In fact, they were silent for almost eight months.

379.　　On or about November 20, 2017, Filmmaker again inquired about the $1,000 contribution that was required to be made to the University of Hawaii Foundation (see EXHIBIT D). This again shows how astute and careful Filmmaker was to the requirements set forth by the Hawaii Film Office.[7]

380.　　Filmmaker then donated $1,000 to the University of Hawaii Foundation in accordance to the requirements (Filmmaker and his wife give 90% of their wealth away to charity or to their faith-based endeavors).

381.　　On or about December 2017, Filmmaker received the pre-qualification letter (See EXHIBIT E and F). At no point, did the Hawaii Film Office ever question or comment on any part of the film's production or requirements.

382.　　Multiple calls from March 2017 to February 2018 to Defendant Brazier again confirmed Filmmaker was on track to receive his rebate.

383.　　On or about December 11, 2017, the Hawaii Film Office submitted an email (See EXHIBIT G) which outline precisely the 7 remaining requirements left to get the tax certificate.

384.　　Filmmaker fulfilled every single requirement and more so and will testify, under the penalty of perjury (that carries a jail sentence), that every single requirement was fulfilled with complete honesty and integrity.

385.　　This will be proven with 'smoking-gun' evidence at trial and during the Motion for Summary Judgment.

---

[7] The $1,000 requirement is yet another misprepresentation of the Hawaii Film Office's advertising and promotions as this falls beneath the 20% rebate back then, i.e., you have to pay an additional $1,000 to be considered for a rebate.

386. To reiterate the point again, <u>had Filmmaker not been deceived by Defendant's action, Filmmaker would not have filmed any movie in Hawaii</u>. Period.

387. <u>Nevertheless, it still gets worse.</u>

388. On or about December 11, 2017, Filmmaker sent an email simply re-confirming what constitutes a vendor by the Hawaii Film Office (see EXHIBIT H).

389. In the most juvenile, condescending, and vicious response, Defendant Brazier replied to Defendant Dawson, "Should we use the definition of vendor in the dictionary???" She unwittingly copied herself in her reply to the Filmmaker.

390. As it turns out, this requirement is the exact same thing the Hawaii Film Office fraudulently used in their desperate attempts to sabotage, smear, and hurt Filmmaker by denying the rebate. They questioned what constitutes a vendor. <u>It's the 'Confederacy of Dunces' all over again.</u>

391. This also proves the immature lengths the Defendants, collectively, have gone to avoid giving the Filmmaker his earned rebate. It's run like a junior high school.

392. <u>Again, Filmmaker has worked with the film departments of Connecticut, Louisiana, Georgia, Virginia, North Carolina, California, et al and has never encountered such an immature, hostile, mean-spirited, incompetent, sneaky, slow, sensitive, and maniupulative conduct ever. Filmmaker has been in the business for over 22 years again and has made 12 movies.</u>

393. The Filmmaker again believes the Honorable U.S. District Court and jury will find sufficient evidence in the months, and possible years to come, of another corrupt Hawaiian government agency that needs Federal investigation.

394. Filmmaker will depose all of the parties at the Hawaii Film Office and past UPMs and line producer of every single past film to prove there is widespread and gross incompetence at every level.

395. Filmmaker also plans to file a whistleblower lawsuit against the Hawaii Film Office and the Hollywood studios for wasting the taxpayer's money. Filmmaker will file

1    motions to compel the paperwork to see every single budget that the Film Office has

2    given millions of dollars to the studios and yet denied a simple rebate to the Filmmaker.

3    **396.**    On or about December 2017, Filmmaker finished the final paperwork and

4    contacted the Defendant Hawaii Film Office to begin the tax rebate final process and was

5    told the tax certificate would be sent within 3 to 6 months. – which is also stated on the

6    Hawaii Film Office website and on their official forms. It is now October 2018 at the

7    time of the filing of this suit. This is tragic in every respect.

8    **397.**    Again, having the tax certificate was critical in both post-production money and

9    for the investors. The Defendants were fully aware of this.

10    **398.**    Despite numerous emails, Defendants repeatedly dragged their feet and returned

11    emails sometimes a month later.

12    **399.**    They then stated Filmmaker had to do other tasks that were never in the intital

13    conversations.

14    400.    Filmmaker shook his head in disbelief. Filmmaker immediately sensed something

15    was terribly wrong.

16    **401.**    Again, Defendants hid the relationships of those that created friction and their

17    motives of 'teaching the filmmaker a lesson' by delaying the tax certificate to now 9

18    months. <u>This a textbook fraud and deceit and breach of contract.</u>

19    **402.**    Again, Filmmaker would never have filmed a movie in Hawaii had he known of

20    this fraud and deceit, mispresentation, civil conspiracy and other conduct the Hawaii Film

21    Office would so brazenly do.

22    **403.**    Furthermore, they even admitted themselves that the office has come under

23    intense scrutiny by legislatures for previous blunders which will be part of the

24    whistleblower lawsuit. <u>This again is total fraud and deceit and a total conflict of interest.</u>

25    **404.**    <u>Defendants went beyond being crafty/sneaky to fraud and deceit as the Court will</u>

26    <u>see throughout this Complaint. These are the most dishonorable actions that Filmmaker</u>

27    <u>has ever worked with in 22 years.</u>  Here Filmmaker shot a movie that would honor a

28    Hawaiian Chiefess, pay good-paying jobs to Hawaiian/Polynesians, and the Hawaii Film

Office back-stabbed him by deceiving him and playing little juvenile high-school games no other film office of any state would dare to do.

**405.**     If in fact, the Hollywood studios have not gone through this level of fraud, then the Hawaii Film Office, complete with starry, wide eyes, have discriminated against the Filmmaker either through his religious beliefs (a violation of the First Amendment) or against him as an independent filmmaker (a violation of the Hawaii Whistleblower Act) <u>This is a text-book case of self-dealing.</u>

406.     On or about August 2018, Filmmaker sent several emails to the Attorney General's office and the Governor's office to attempt to understand why the Hawaii Film Office was taking so long. The Hawaii Film Office refused to answer any emails.

407.     <u>Something was truly wrong here.</u>

408.     Finally, after legal threats, the Hawaii Film Office, in the most overt fraud of perhaps any governmental agency in the state, then sent Filmmaker an astounding list of complete lies and fabrications.

409.     Defendants said because Filmmaker has not proved any of his receipts, he is not entitled to a 20% rebate. <u>Filmmaker immediately knew he was duped.</u>

410.     The Hawaii Film Office sent a list of requirements that are filled with complete fraud and lies. It's almost jaw-dropping how each remaining requirement had already been fulfilled.

411.     <u>*The Hawaii Film Office sent a one-page sheet that looked like it took ten minutes to do – not 9 months (see Exhibit A)*</u>. The Filmmaker will show this smacks of the juvenile and utterly fraudulent way the Hawaii Film Office went to avoid paying the 20% rebate.

412.     Among the several 'items' that Hawaii Film Office said the Filmmaker had to prove was the actual shooting location of Kualoa Ranch (See Exhibit A). Filmmaker sent the bill, the cancelled checks, and the Defendants still said Filmmaker could not prove this expense. A simple phone call could verify this expenditure.

413. <u>The sheet again shows scores of names of crew that Filmmaker already gave the Hawaii Film Office every single GET Tax ID that they required. Yet it ignores key actor's salaries, key equipment rentals, hotels – it's an absolute fraudulent document.</u>[8]

414. Defendants Benita Brazier and Donne Dawson clearly acted outside the scope of their agency in wanting to pay back Filmmaker in retribution for several reasons Filmmaker will prove at trial.

415. The State of Hawaii should not defend Ms. Brazier or Ms. Dawson.

416. Filmmaker will call on several key witnesses in the cast, crew, and extras to prove the Film Office is in disarray. He expects the trial to go for at least ten weeks and asks the Honorable Court's patience as Filmmaker is bracing for extensive discovery (and possible Motions to Compel with sanctions) to take place during this litigation.

417. This case is very important as there must be freedom of speech in Hawaii and that federal law still supercedes state law. Hawaii is part of America and most Hawaiians want that.

418. Filmmaker will subpeona every crew member for depositions to testify to the events as true. And if Defendants lie during their sworn depositions, Filmmaker will file a criminal complaint with the D.A. for perjury and possible Federal intervention. Filmmaker will begin depositions within 30 days of the service of the Complaint to get a head start on all discovery.

419. Filmmaker believes the damages to the movie are permanent and irrecoverable due to Defendant's actions.

---

[8] The one-sheet contains over 50 crew and cast that have already been accounted for. The only way to explain the red marks is the Hawaii Film Office is doing everything possible to sabotage and not pay Filmmaker. This is indisputable evidence. Filmmaker will submit all of the evidence during discovery and will file a Motion to seal the documents.

420.     It is paramount that the Honorable Court grant Filmmaker broad discretion in ascertaining what is going on as Filmmaker expects to file multiple Motions to Compel as the Defendants have proven themselves deftly good at avoiding or ignoring questions pertaining to their conduct.

421.     Defendant's actions left the film in total chaos. The film went overbudget because of their actions and the Filmmaker had to pay the overbudget out of his own pocket.

422.     <u>Again, Filmmaker testifies, under penalty of perjury, that he has never sued any governmental agency in his entire life.</u>

423.     Filmmaker will depose Defendants Benita Brazier, Donne Dawson in November. He will then depose other filmmakers who have shot movies in Hawaii.

**424.**     Filmmaker will file a Pre-Judgment Writ of Attachment on all of Defendant's personal and corporate assets and believes he has been damaged by no less than $135 million in actual and punitive damages and will spend the next 5 years outlying the case against the Defendants. They need to be punished severely for their contemptible mistreatment of a filmmaker who tried to honor the people of Hawaii and their valiant and courageous leader two hundred years ago.

425.     Filmmaker is exiting making the next films in Hawaii and the damages are stark and real – due mostly because of Defendant's fraud and deceit. This will be calculated in the damages against Defendants.

426.     Filmmaker also will depose crew members and others who Defendants devulged confidential information.

427.     Filmmakers request the court to expedite discovery and set a trial date in the most expeditious manner if possible.

**428.**     <u>**As a direct and proximate result of the foregoing material breaches of the signed, written contract, Filmmakers have been damaged in an aggregate amount to be determined at trial, in excess of the jurisdictional minimum of this court, believed to be no less than $135 million.**</u>

## COUNT 5 – <u>INTENTIONAL MISREPRESENTATION</u>

429.     Filmmaker repeats and realleges each and every allegation contained in paragraphs 1 through 425 above as if fully set forth herein.

*430.*     To prevail on a cause of action of intentional misrepresentation, a plaintiff must show that there exists:  (1) A representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intention of misleading another party into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. Plaintiff is very confident that any reasonable jury will find all of the causes of action present in the ongoing facts and will find in favor of the Plaintiff.

**431.**     On or about March 2017, Filmmaker decided to film 'The Islands' after being assured that the Defendant Hawaii Film Office would give a 20% rebate on the budget that the Film Office gives to all filmmakers. <u>This was extremely important to the Filmmaker as many production companies base their entire decision for where to film based on the movie tax credits of each state. This is common industry knowledge and practice.</u>

**432.**     Also, the 20% rebate is critically important for P&A (prints and advertising) for the film's exposure and marketing funds.

**433.**     Had Filmmaker known that Defendants would even attempt not to reward the 20% rebate because they didn't like the content of the movie, the Filmmaker's beliefs, or his personality per se, Filmmaker would never have even launched such a huculean effort in making the film, including casting an Academy-Award winning actress, a legendary actor, and a 98% Native Polynesian cast. Filmmaker would simply have made another film in another state. Filmmaker has made 12 movies in 22 years. He did not need the horrific grief imposed by Defendants collectively.

**434.**     It is very rare for any governmental agency to act as juvenile, vindictive, and incompetent as the Hawaii Film Office. <u>It's astonishing as Filmmaker has worked with</u>

the Connecticut, Lousiana, Virginia, Fiji, California, Michigan, and North Carolina film offices with absolutely no issues or problems. In fact, the Connecticut Film Office gave Filmmaker his 30% tax rebate for 'Freedom' (Cuba Gooding, Jr., Sharon Leal, William Sadler) within 30 days after the paperwork was turned in.

435.    From the start of the movie until post-production, Filmmaker made the 20% rebate the number one priority as he realized how significant the rebate was. It was 20% of the entire budget and this was to put bread on the table of a faith-based filmmaker.

436.    On or about April 2017, Filmmaker received a strange message from one of the employees of the Hawaii Film Office. She said she had 'concerns' about Filmmaker's movie and to call her. Filmmaker returned her call and assured her that one of his co-writers was a well-respected Native Hawaiian professor at the University of Hawaii who taught Native Hawaiian history.

437.    Nevertheless, this is a complete violation of Filmmaker's 1st Amendment rights for a government agency to inquire about the content of a movie – it's almost unheard of. Imagine a California agency calling a Hollywood studio and 'inquiring' about the content of the horror movie 'The Nun'. The outrage would be worldwide. This is no different.

438.    Having a Hawaii state agency calling to say there's a problem with Filmmaker's Christian movie reeks of 1st Amendment problems of free speech.

439.    The history of Chiefess Kapiolani's leadership brought Christianity to Hawaii. This is the issue of those who oppose it. Filmmaker gets it and totally understands the hatred as Jesus himself said "If they hated me, they will hate you." (John 15:18).

440.    Nevertheless, Hawaii is officially part of the United States and must adhere to federal laws or there will be absolute chaos. The rejection of the rebate to Filmmaker is the beginning of the end and shows the Defendants collectively breached the implied covenant of good faith starkly and maliciously.

441.    Again, the film is based on a true story and anything done on the governmental level to oppose Filmmaker is complete and total discrimination against his religion and unequivocably violates the Filmmaker's First Amendment rights to free speech.

442.    The events of the core group to oppose Filmmaker's telling of the history started the entire chain-of-events as Filmmaker would not back down from making the film.

443.    Filmmaker received death threats before and during shooting. His staff had to file police reports to the incompetent Honolulu police who did absolutely nothing despite even having the name of the alleged perpetrator.

444.    Filmmaker alleges that possible elements or people in the Hawaii Film Office have also been part of a smear campaign against many historical Hawaiian films, including Filmmaker's movie.

445.    In addition to death threats, Filmmaker was up against many other deep hurdles, including union threats and Hawaiian activists who threatened to shut down the production on numerous instances.

446.    In over 60 emails and phone calls, Filmmaker worked diligently to make sure every single receipt, GET tax id of every single crew member and cast member was obtained.

447.    Filmmaker fulfilled each and every requirement methodically and precisely because he knew the Defendant Hawaii Film Office might try something sneaky. Filmmaker even has proof that one email mistakenly forwarded to Filmmaker showed the Defendants were already conspiring to 'get' Filmmaker' (See Exhibit H).

448.    This process of getting all the requirements for the Hawaii Film Office took over 13 weeks and Filmmaker calculates over 240 hours of man time.

449.    Filmmaker is also a Harvard-educated attorney and bills at $550 an hour. So by just multiplying 240 x $550 would come to $192,000. This is how important the rebate back from the Hawaii Film Office was to the Filmmaker and the Filmmaker asks the Court to consider the $192,000 as additional damages aside from the punitive damages.

450.    Again, the Hawaii Film Office has blatantly lied in their refusal to credit the Filmmaker with the 20% rebate. There is no reason, outside of their wanting to teach Filmmaker a lesson, to withhold the tax certificate. Filmmaker fulfilled every requirement.

**451.**     Filmmaker tries to show the love of Jesus to everyone he can. However, should Defendants even broach any issues that demean or slander Filmmaker, Filmmaker will amend this lawsuit to include defamation and/or libel and slander. Filmmaker is very confident he would win any Anti-Slapp Motion as he has been more than diligent in the entire application process.

**452.**     <u>The fact that Defendants did not alert Filmmaker that he was 'lacking' in further proof of receipts for more than 9 months is further proof of fraud and deceit that would later rise up again on much more serious levels.</u>

**453.**     On or about September 2017, Filmmaker put in several calls to Defendant Brazier to make sure every 'T' was crossed and every 'I' was dotted. Filmmaker wanted to make sure there would be no problems with getting the 20% rebate back. This was critical as he would not have filmed in Hawaii.

**454.**     On or about September 2017, Defendant Brazier repeatedly told Filmmaker that he did not need to get the GET Tax Ids for established businesses in Hawaii as they were obviously paying tax to the Hawaii government.

**455.**     This proved to be another intentional or negligent misrepresentation.

**456.**     On or about September 2018, <u>almost a year later</u>, Defendants Dawson and the Hawaii Film Office suddenly demanded that all the GET tax IDs should be listed. <u>This is another brazen and fraudulent attempt to deny Filmmaker his just rebate.</u> Filmmaker did, in fact, list every single GET Tax ID. Somehow, they lost the paperwork or it was maliciously destroyed.

**457.**     <u>Filmmaker has already counted over 45 instances of misrepresentation in the one-sheet the Defendants sent Filmmaker after 9 months. Filmmaker will more than prove this in the Court of Law. This cause of action of intentional misrepresentation is stark and provable.</u>

**458.**     In Defendant's one page sheet they sent to Filmmaker - that possibly took less than an hour to do – not 9 months – they also said the GET Tax IDs were wrong when in

1    fact they were correct. Further proof that they were desperately trying anything to not

2    give the Filmmaker his rebate.

3    **459.**      The entire one-page sheet is filled with complete wrong assumptions, numbers,

4    and math. It's like a third-grader put it together hoping this would pass and Filmmaker

5    would go away.

6    **460.**      On or about October 2017 and three weeks before shooting, Defendant Brazier

7    contacted the production's UPM and gave the UPM the actual budget figures. <u>This is a

8    text-book case of conflict of interest.</u> The UPM knew Defendant Brazier and was never

9    given authorization to have any confidential numbers or should receive them as this

10   person was only the UPM. The production ended up firing the UPM for gross

11   incompetence and was later sued by the UPM in small claims.

12   **461.**      Had Filmmaker known this conflict of interest and gross breach of privacy, he

13   would have immediately requested another contact to work with at the Hawaii Film

14   Office, because of the industry rule/code that key positions should not be filled by ANY

15   partnership team because again if one is fired, the other will quit or have to be fired as

16   well.

17   **462.**      <u>Again, this is a textbook case of breaching an implied good covenant in dealings.</u>

18   **463.**      Filmmaker believes and alleges that the UPM's firing has contributed to the

19   Hawaii Film Office defrauding Filmmaker out of his rightful 20% rebate as the UPM sent

20   a letter to the office violating the confidentiality provision of her signed contract. No

21   other true professional in the industry would do this.

22   **464.**      This unprofessional, sneaky, and juvenile high school conduct is another reason

23   why Filmmaker will never film in Hawaii again.

24   **465.**      On or about November 2017, Filmmaker, to make sure every single requirement

25   was met, personally emailed Defendant Brazier to have any Film Office employee or

26   government legislator come to the set (see EXHIBIT B). This requirement is buried in the

27   forms, but this email again proves how meticulous Filmmaker was in fulfilling every

28   single requirement including this obscure provision.

466. On or about November 17, 2017, Filmmaker submitted the preliminary budget to the Film Office (see EXHIBIT C). As the Honorable Court can see, the preliminary requirements were met except for two items which were later fulfilled and never a subject of dispute.

467. At no time did the Hawaii Film Office ever contact the Filmmaker to alert him to anything that was not completed or out of the ordinary. In fact, they were silent for almost eight months.

468. On or about November 20, 2017, Filmmaker again inquired about the $1,000 contribution that was required to be made to the University of Hawaii Foundation (see EXHIBIT D). This again shows how astute and careful Filmmaker was to the requirements set forth by the Hawaii Film Office.[9]

469. Filmmaker then donated $1,000 to the University of Hawaii Foundation in accordance to the requirements (Filmmaker and his wife give 90% of their wealth away to charity or to their faith-based endeavors).

470. On or about December 2017, Filmmaker received the pre-qualification letter (See EXHIBIT E and F). At no point, did the Hawaii Film Office ever question or comment on any part of the film's production or requirements.

471. Multiple calls from March 2017 to February 2018 to Defendant Brazier again confirmed Filmmaker was on track to receive his rebate.

472. On or about December 11, 2017, the Hawaii Film Office submitted an email (See EXHIBIT G) which outline precisely the 7 remaining requirements left to get the tax certificate.

---

[9] The $1,000 requirement is yet another misprepresentation of the Hawaii Film Office's advertising and promotions as this falls beneath the 20% rebate back then, i.e., you have to pay an additional $1,000 to be considered for a rebate.

473. <u>Filmmaker fulfilled every single requirement and more so and will testify, under the penalty of perjury (that carries a jail sentence), that every single requirement was fulfilled with complete honesty and integrity.</u>

474. This will be proven with 'smoking-gun' evidence at trial and during the Motion for Summary Judgment.

475. To reiterate the point again, <u>had Filmmaker not been deceived by Defendant's action, Filmmaker would not have filmed any movie in Hawaii.</u> Period.

476. <u>Nevertheless, it still gets worse.</u>

477. On or about December 11, 2017, Filmmaker sent an email simply re-confirming what constitutes a vendor by the Hawaii Film Office (see EXHIBIT H).

478. In the most juvenile, condescending, and vicious response, Defendant Brazier replied to Defendant Dawson, "Should we use the definition of vendor in the dictionary???" She unwittingly copied herself in her reply to the Filmmaker.

479. As it turns out, this requirement is the exact same thing the Hawaii Film Office fraudulently used in their desperate attempts to sabotage, smear, and hurt Filmmaker by denying the rebate. They questioned what constitutes a vendor. <u>It's the 'Confederacy of Dunces' all over again.</u>

480. This also proves the immature lengths the Defendants, collectively, have gone to avoid giving the Filmmaker his earned rebate. It's run like a junior high school.

481. <u>Again, Filmmaker has worked with the film departments of Connecticut, Louisiana, Georgia, Virginia, North Carolina, California, et al and has never encountered such an immature, hostile, mean-spirited, incompetent, sneaky, slow, sensitive, and maniupulative conduct ever. Filmmaker has been in the business for over 22 years again and has made 12 movies.</u>

482. The Filmmaker again believes the Honorable U.S. District Court and jury will find sufficient evidence in the months, and possible years to come, of another corrupt Hawaiian government agency that needs Federal investigation.

**483.**     Filmmaker will depose all of the parties at the Hawaii Film Office and past UPMs and line producer of every single past film to prove there is widespread and gross incompetence at every level.

**484.**     Filmmaker also plans to file a whistleblower lawsuit against the Hawaii Film Office and the Hollywood studios for wasting the taxpayer's money. Filmmaker will file motions to compel the paperwork to see every single budget that the Film Office has given millions of dollars to the studios and yet denied a simple rebate to the Filmmaker.

**485.**     On or about December 2017, Filmmaker finished the final paperwork and contacted the Defendant Hawaii Film Office to begin the tax rebate final process and was told the tax certificate would be sent within 3 to 6 months. – which is also stated on the Hawaii Film Office website and on their official forms. It is now October 2018 at the time of the filing of this suit. This is tragic in every respect.

**486.**     Again, having the tax certificate was critical in both post-production money and for the investors. The Defendants were fully aware of this.

**487.**     Despite numerous emails, Defendants repeatedly dragged their feet and returned emails sometimes a month later.

**488.**     They then stated Filmmaker had to do other tasks that were never in the intital conversations.

489.     Filmmaker shook his head in disbelief. Filmmaker immediately sensed something was terribly wrong.

**490.**     Again, Defendants hid the relationships of those that created friction and their motives of 'teaching the filmmaker a lesson' by delaying the tax certificate to now 9 months. This a textbook fraud and deceit.

**491.**     Again, Filmmaker would never have filmed a movie in Hawaii had he known of this fraud and deceit, mispresentation, civil conspiracy and other conduct the Hawaii Film Office would so brazenly do.

**492.**     Furthermore, they even admitted themselves that the office has come under intense scrutiny by legislatures for previous blunders which will be part of the whistleblower lawsuit. This again is total fraud and deceit and a total conflict of interest.

**493.**     Defendants went beyond being crafty/sneaky to fraud and deceit as the Court will see throughout this Complaint. These are the most dishonorable actions that Filmmaker has ever worked with in 22 years.  Here Filmmaker shot a movie that would honor a Hawaiian Chiefess, pay good-paying jobs to Hawaiian/Polynesians, and the Hawaii Film Office back-stabbed him by deceiving him and playing little juvenile high-school games no other film office of any state would dare to do.

**494.**     If in fact, the Hollywood studios have not gone through this level of fraud, then the Hawaii Film Office, complete with starry, wide eyes, have discriminated against the Filmmaker either through his religious beliefs (a violation of the First Amendment) or against him as an independent filmmaker (a violation of the Hawaii Whistleblower Act) This is a text-book case of self-dealing.

495.     On or about August 2018, Filmmaker sent several emails to the Attorney General's office and the Governor's office to attempt to understand why the Hawaii Film Office was taking so long. The Hawaii Film Office refused to answer any emails.

496.     Something was truly wrong here.

497.     Finally, after legal threats, the Hawaii Film Office, in the most overt fraud of perhaps any governmental agency in the state, then sent Filmmaker an astounding list of complete lies and fabrications.

498.     Defendants said because Filmmaker has not proved any of his receipts, he is not entitled to a 20% rebate. Filmmaker immediately knew he was duped.

499.     The Hawaii Film Office sent a list of requirements that are filled with complete fraud and lies. It's almost jaw-dropping how each remaining requirement had already been fulfilled.

500.     *The Hawaii Film Office sent a one-page sheet that looked like it took ten minutes to do – not 9 months (see Exhibit A).* The Filmmaker will show this smacks of the

1    juvenile and utterly fraudulent way the Hawaii Film Office went to avoid paying the 20%

2    rebate.

3    501.    It's also intentional misrepresentation as the Hawaii Film Office states every

4    filmmaker will receive their rebate back in 3-6 months. It's now been 10 months and no

5    end in sight.

6    502.    Among the several 'items' that Hawaii Film Office said the Filmmaker had to

7    prove was the actual shooting location of Kualoa Ranch (See Exhibit A). Filmmaker sent

8    the bill, the cancelled checks, and the Defendants still said Filmmaker could not prove

9    this expense. A simple phone call could verify this expenditure.

10    503.    The sheet again shows scores of names of crew that Filmmaker already gave the

11    Hawaii Film Office every single GET Tax ID that they required. Yet it ignores key

12    actor's salaries, key equipment rentals, hotels – it's an absolute fraudulent document.[10]

13    504.    Defendants Benita Brazier and Donne Dawson clearly acted outside the scope of

14    their agency in wanting to pay back Filmmaker in retribution for several reasons

15    Filmmaker will prove at trial.

16    505.    The State of Hawaii should not defend Ms. Brazier or Ms. Dawson.

17    506.    Filmmaker will call on several key witnesses in the cast, crew, and extras to prove

18    the Film Office is in disarray. He expects the trial to go for at least ten weeks and asks the

19    Honorable Court's patience as Filmmaker is bracing for extensive discovery (and

20    possible Motions to Compel with sanctions) to take place during this litigation.

---

[10] The one-sheet contains over 50 crew and cast that have already been
accounted for. The only way to explain the red marks is the Hawaii Film
Office is doing everything possible to sabotage and not pay Filmmaker. This
is indisputable evidence. Filmmaker will submit all of the evidence during
discovery and will file a Motion to seal the documents.

507.     This case is very important as there must be freedom of speech in Hawaii and that federal law still supercedes state law. Hawaii is part of America and most Hawaiians want that.

508.     Filmmaker will subpeona every crew member for depositions to testify to the events as true. And if Defendants lie during their sworn depositions, Filmmaker will file a criminal complaint with the D.A. for perjury and possible Federal intervention. Filmmaker will begin depositions within 30 days of the service of the Complaint to get a head start on all discovery.

509.     Filmmaker believes the damages to the movie are permanent and irrecoverable due to Defendant's actions.

510.     It is paramount that the Honorable Court grant Filmmaker broad discretion in ascertaining what is going on as Filmmaker expects to file multiple Motions to Compel as the Defendants have proven themselves deftly good at avoiding or ignoring questions pertaining to their conduct.

511.     Defendant's actions left the film in total chaos. The film went overbudget because of their actions and the Filmmaker had to pay the overbudget out of his own pocket.

512.     <u>Again, Filmmaker testifies, under penalty of perjury, that he has never sued any governmental agency in his entire life.</u>

513.     Filmmaker will depose Defendants Benita Brazier, Donne Dawson in November. He will then depose other filmmakers who have shot movies in Hawaii.

**514.**     Filmmaker will file a Pre-Judgment Writ of Attachment on all of Defendant's personal and corporate assets and believes he has been damaged by no less than $135 million in actual and punitive damages and will spend the next 5 years outlying the case against the Defendants. They need to be punished severely for their contemptible mistreatment of a filmmaker who tried to honor the people of Hawaii and their valiant and courageous leader two hundred years ago.

## COUNT 6 – NEGLIGENT MISREPRESENTATION

515.     Filmmaker repeats and realleges each and every allegation contained in paragraphs 1 through 515 above as if fully set forth herein.

*516.*     The courts have looked at four causes of action for negligent misrepresentation which are i) a representation is made by defendant to Plaintiff where defendant has a pecuniary interest; ii) defendant supplies false information; iii) defendant did not exercise reasonable care; iv) Plaintiff suffered consequences/damages

**517.**     Filmmaker fulfilled each and every requirement methodically and precisely because he knew the Defendant Hawaii Film Office might try something sneaky. Filmmaker even has proof that one email mistakenly forwarded  to Filmmaker showed the Defendants were already conspiring to 'get' Filmmaker' (See Exhibit H).

**518.**     This process of getting all the requirements for the Hawaii Film Office took over 13 weeks and Filmmaker calculates over 240 hours of man time.

**519.**     Filmmaker is also a Harvard-educated attorney and bills at $550 an hour. So by just multiplying 240 x $550 would come to $192,000. This is how important the rebate back from the Hawaii Film Office was to the Filmmaker and the Filmmaker asks the Court to consider the $192,000 as additional damages aside from the punitive damages.

**520.**     Again, the Hawaii Film Office has blatantly lied in their refusal to credit the Filmmaker with the 20% rebate. There is no reason, outside of their wanting to teach Filmmaker a lesson, to withhold the tax certificate. Filmmaker fulfilled every requirement. This is more than just negligent misprepresentation – this is civil conspiracy.

**521.**     Filmmaker tries to show the love of Jesus to everyone he can. Should Defendants even broach any issues that demean or slander Filmmaker, Filmmaker will amend this lawsuit to include defamation and/or libel and slander. Filmmaker is very confident he would win any Anti-Slapp Motion as he has been more than diligent in the entire application process.

522.   <u>The fact that Defendants did not alert Filmmaker that he was 'lacking' in further proof of receipts for more than 9 months is further proof of fraud and deceit that would later rise up again on much more serious levels.</u>

523.   On or about September 2017, Filmmaker put in several calls to Defendant Brazier to make sure every 'T' was crossed and every 'I' was dotted. Filmmaker wanted to make sure there would be no problems with getting the 20% rebate back. This was critical as he would not have filmed in Hawaii.

524.   On or about September 2017, Defendant Brazier repeatedly told Filmmaker that he did not need to get the GET Tax Ids for established businesses in Hawaii as they were obviously paying tax to the Hawaii government.

525.   This proved to be yet another misrepresentation.

526.   On or about September 2018, <u>almost a year later</u>, Defendants Dawson and the Hawaii Film Office suddenly demanded that all the GET tax IDs should be listed. <u>This is another brazen and fraudulent attempt to deny Filmmaker his just rebate</u>. Filmmaker did, in fact, list every single GET Tax ID. Somehow, they lost the paperwork or it was malicously destroyed.

527.   In Defendant's one page sheet they sent to Filmmaker - that possibly took less than an hour to do – not 9 months – they also said the GET Tax IDs were wrong when in fact they were correct. Further proof that they were desperately trying anything to not give the Filmmaker his rebate.

528.   The entire one-page sheet is filled with complete wrong assumptions, numbers, and math. It's like a third-grader put it together hoping this would pass and Filmmaker would go away.

529.   On or about October 2017 and three weeks before shooting, Defendant Brazier contacted the production's UPM and gave the UPM the actual budget figures. <u>This is a text-book case of conflict of interest</u>. The UPM knew Defendant Brazier and was never given authorization to have any confidential numbers or should receive them as this

person was only the UPM. The production ended up firing the UPM for gross
incompetence and was later sued by the UPM in small claims.

530.     Had Filmmaker known this conflict of interest and gross breach of privacy, he
would have immediately requested another contact to work with at the Hawaii Film
Office, because of the industry rule/code that key positions should not be filled by ANY
partnership team because again if one is fired, the other will quit or have to be fired as
well.

531.     On or about November 2017, Filmmaker, to make sure every single requirement
was met, personally emailed Defendant Brazier to have any Film Office employee or
government legislator come to the set (see EXHIBIT B). This requirement is buried in the
forms, but this email again proves how meticulous Filmmaker was in fulfilling every
single requirement including this obscure provision.

532.     On or about November 17, 2017, Filmmaker submitted the preliminary budget to
the Film Office (see EXHIBIT C). As the Honorable Court can see, the preliminary
requirements were met except for two items which were later fulfilled and never a subject
of dispute.

533.     At no time did the Hawaii Film Office ever contact the Filmmaker to alert him to
anything that was not completed or out of the ordinary. In fact, they were silent for
almost eight months.

534.     On or about November 20, 2017, Filmmaker again inquired about the $1,000
contribution that was required to be made to the University of Hawaii Foundation (see
EXHIBIT D). This again shows how astute and careful Filmmaker was to the
requirements set forth by the Hawaii Film Office.[11]

---

[11] The $1,000 requirement is yet another misprepresentation of the Hawaii Film
Office's advertising and promotions as this falls beneath the 20% rebate back
then, i.e., you have to pay an additional $1,000 to be considered for a
rebate.

535. Filmmaker then donated $1,000 to the University of Hawaii Foundation in accordance to the requirements (Filmmaker and his wife give 90% of their wealth away to charity or to their faith-based endeavors).

536. On or about December 2017, Filmmaker received the pre-qualification letter (See EXHIBIT E and F). At no point, did the Hawaii Film Office ever question or comment on any part of the film's production or requirements.

537. Multiple calls from March 2017 to February 2018 to Defendant Brazier again confirmed Filmmaker was on track to receive his rebate.

538. On or about December 11, 2017, the Hawaii Film Office submitted an email (See EXHIBIT G) which outline precisely the 7 remaining requirements left to get the tax certificate.

539. Filmmaker fulfilled every single requirement and more so and will testify, under the penalty of perjury (that carries a jail sentence), that every single requirement was fulfilled with complete honesty and integrity.

540. This will be proven with 'smoking-gun' evidence at trial and during the Motion for Summary Judgment.

541. To reiterate the point again, had Filmmaker not been deceived by Defendant's action, Filmmaker would not have filmed any movie in Hawaii. Period.

542. On or about December 11, 2017, Filmmaker sent an email simply re-confirming what constitutes a vendor by the Hawaii Film Office (see EXHIBIT H).

543. In the most juvenile, condescending, and vicious response, Defendant Brazier replied to Defendant Dawson, "Should we use the definition of vendor in the dictionary???" She unwittingly copied herself in her reply to the Filmmaker.

544. As it turns out, this requirement is the exact same thing the Hawaii Film Office fraudulently used in their desperate attempts to sabotage, smear, and hurt Filmmaker by denying the rebate. They questioned what constitutes a vendor. It's the 'Confederacy of Dunces' all over again.

545.    This also proves the immature lengths the Defendants, collectively, have gone to avoid giving the Filmmaker his earned rebate. It's run like a junior high school.

546.    Again, Filmmaker has worked with the film departments of Connecticut, Louisiana, Georgia, Virginia, North Carolina, California, et al and has never encountered such an immature, hostile, mean-spirited, incompetent, sneaky, slow, sensitive, and maniupulative conduct ever. Filmmaker has been in the business for over 22 years again and has made 12 movies.

547.    The Filmmaker again believes the Honorable U.S. District Court and jury will find sufficient evidence in the months, and possible years to come, of another corrupt Hawaiian government agency that needs Federal investigation.

548.    Filmmaker will depose all of the parties at the Hawaii Film Office and past UPMs and line producer of every single past film to prove there is widespread and gross incompetence at every level.

549.    Filmmaker also plans to file a whistleblower lawsuit against the Hawaii Film Office and the Hollywood studios for wasting the taxpayer's money. Filmmaker will file motions to compel the paperwork to see every single budget that the Film Office has given millions of dollars to the studios and yet denied a simple rebate to the Filmmaker.

550.    On or about December 2017, Filmmaker finished the final paperwork and contacted the Defendant Hawaii Film Office to begin the tax rebate final process and was told the tax certificate would be sent within 3 to 6 months. – which is also stated on the Hawaii Film Office website and on their official forms. It is now October 2018 at the time of the filing of this suit. This is tragic in every respect.

551.    Again, having the tax certificate was critical in both post-production money and for the investors. The Defendants were fully aware of this.

552.    Despite numerous emails, Defendants repeatedly dragged their feet and returned emails sometimes a month later.

553.    They then stated Filmmaker had to do other tasks that were never in the intital conversations.

554. Filmmaker shook his head in disbelief. Filmmaker immediately sensed something was terribly wrong.

**555.** Again, Defendants hid the relationships of those that created friction and their motives of 'teaching the filmmaker a lesson' by delaying the tax certificate to now 9 months. This a textbook case of fraud and deceit.

**556.** Again, Filmmaker would never have filmed a movie in Hawaii had he known of this fraud and deceit, mispresentation, civil conspiracy and other conduct the Hawaii Film Office would so brazenly do.

**557.** Furthermore, they even admitted themselves that the office has come under intense scrutiny by legislatures for previous blunders which will be part of the whistleblower lawsuit. This again is total fraud and deceit and a total conflict of interest.

**558.** Defendants went beyond being crafty/sneaky to fraud and deceit as the Court will see throughout this Complaint. These are the most dishonorable actions that Filmmaker has ever worked with in 22 years. Here Filmmaker shot a movie that would honor a Hawaiian Chiefess, pay good-paying jobs to Hawaiian/Polynesians, and the Hawaii Film Office back-stabbed him by deceiving him and playing little juvenile high-school games no other film office of any state would dare to do.

**559.** If in fact, the Hollywood studios have not gone through this level of fraud, then the Hawaii Film Office, complete with starry, wide eyes, have discriminated against the Filmmaker either through his religious beliefs (a violation of the First Amendment) or against him as an independent filmmaker (a violation of the Hawaii Whistleblower Act) This is a text-book case of self-dealing.

560. On or about August 2018, Filmmaker sent several emails to the Attorney General's office and the Governor's office to attempt to understand why the Hawaii Film Office was taking so long. The Hawaii Film Office refused to answer any emails.

561. Something was truly wrong here.

562.     Finally, after legal threats, the Hawaii Film Office, in the most overt fraud of perhaps any governmental agency in the state, then sent Filmmaker an astounding list of complete lies and fabrications.

563.     Defendants said because Filmmaker has not proved any of his receipts, he is not entitled to a 20% rebate. Filmmaker immediately knew he was duped.

564.     The Hawaii Film Office sent a list of requirements that are filled with complete fraud and lies. It's almost jaw-dropping how each remaining requirement had already been fulfilled.

565.     *The Hawaii Film Office sent a one-page sheet that looked like it took ten minutes to do – not 9 months (see Exhibit A)*. The Filmmaker will show this smacks of the juvenile and utterly fraudulent way the Hawaii Film Office went to avoid paying the 20% rebate.

566.     Among the several 'items' that Hawaii Film Office said the Filmmaker had to prove was the actual shooting location of Kualoa Ranch (See Exhibit A). Filmmaker sent the bill, the cancelled checks, and the Defendants still said Filmmaker could not prove this expense. A simple phone call could verify this expenditure. But again, they said any established business didn't require a GET tax id.

567.     The sheet again shows scores of names of crew that Filmmaker already gave the Hawaii Film Office every single GET Tax ID that they required. Yet it ignores key actor's salaries, key equipment rentals, hotels – it's an absolute fraudulent document.[12]

---

[12] The one-sheet contains over 50 crew and cast that have already been accounted for. The only way to explain the red marks is the Hawaii Film Office is doing everything possible to sabotage and not pay Filmmaker. This is indisputable evidence. Filmmaker will submit all of the evidence during discovery and will file a Motion to seal the documents.

568.    Defendants Benita Brazier and Donne Dawson clearly acted outside the scope of their agency in wanting to pay back Filmmaker in retribution for several reasons Filmmaker will prove at trial.

569.    The State of Hawaii should not defend Ms. Brazier or Ms. Dawson.

570.    Filmmaker will call on several key witnesses in the cast, crew, and extras to prove the Film Office is in disarray. He expects the trial to go for at least ten weeks and asks the Honorable Court's patience as Filmmaker is bracing for extensive discovery (and possible Motions to Compel with sanctions) to take place during this litigation.

571.    This case is very important as there must be freedom of speech in Hawaii and that federal law still supercedes state law. Hawaii is part of America and most Hawaiians want that.

572.    Filmmaker will subpeona every crew member for depositions to testify to the events as true. And if Defendants lie during their sworn depositions, Filmmaker will file a criminal complaint with the D.A. for perjury and possible Federal intervention. Filmmaker will begin depositions within 30 days of the service of the Complaint to get a head start on all discovery.

573.    Filmmaker believes the damages to the movie are permanent and irrecoverable due to Defendant's actions.

574.    It is paramount that the Honorable Court grant Filmmaker broad discretion in ascertaining what is going on as Filmmaker expects to file multiple Motions to Compel as the Defendants have proven themselves deftly good at avoiding or ignoring questions pertaining to their conduct.

575.    Defendant's actions left the film in total chaos. The film went overbudget because of their actions and the Filmmaker had to pay the overbudget out of his own pocket.

576.    Again, Filmmaker testifies, under penalty of perjury, that he has never sued any governmental agency in his entire life and testifies all of these facts are true.

577.   <u>The penalty of perjury in Court is a federal jail sentence and Filmmaker will pursue anyone who lies in Court</u>. This is the U.S. District Court run by world-class judges who will not tolerate lying to a Federal judge.

578.   Filmmaker will depose Defendants Benita Brazier, Donne Dawson in November under oath. He will then depose other filmmakers who have shot movies in Hawaii.

**579.**   Filmmaker will file a Pre-Judgment Writ of Attachment on all of Defendant's personal and corporate assets and believes he has been damaged by no less than $135 million in actual and punitive damages and will spend the next 5 years outlying the case against the Defendants. They need to be punished severely for their contemptible mistreatment of a filmmaker who tried to honor the people of Hawaii and their valiant and courageous leader two hundred years ago.

580.   Filmmakers request the court to expedite discovery and set a trial date in the most expeditious manner if possible.

# COUNT 7 – PROMISSORY FRAUD

581.   Filmmaker repeats and realleges each and every allegation contained in paragraphs 1 through 581 above as if fully set forth herein.

**582.**   The fraudulent inducements and false representations by Defendants to Filmmaker described with particularity in this entire Complaint were communicated to Filmmaker through the writer and director both orally and written as set forth therein. The promises contained in the signed Hawaii Production Reports were communicated to Filmmaker by Defendants as well as by and through other individuals affiliated with them orally and in writing. Both said the Defendants would work diligently to fulfill their end of the bargain of issuing a rebate. It's up to the jury to decide this ultimate question.

**583.**   Filmmaker is informed, and believes and, based thereon alleges, that at the time Defendants made the above promises, inducements, and representations to Filmmaker to induce Filmmaker to enter into the Written Agreement, they were false in that defendants

used these promises, inducements and representations to Filmmaker to make either a salary for themselves or continue the Hawaii Film Office existence.

584.    Filmmaker asks the Court to impose the strictest of puntive damages, but in no event, less than $25 million in damages for promissory fraud.

585.    Filmmaker is further informed and believes and, based thereon alleges, that such promises, inducements and representations by Defendants were made with the intent to induce Filmmaker to enter into the Hawaii Film Rebate program and to render performance thereunder.

586.    In strict and absolute reliance upon such false promises, inducements, and representations by Defendants, Filmmaker was induced into filming in Hawaii.

587.    At the time Filmmaker took such actions, it was ignorant of the falsity of defendant's promises, inducements and representations and, in the exercise of reasonable diligence, could not have discovered its intentions.

588.    Had Filmmaker known the truth and known of Defendants's intentions, he would not have filmed a movie in Hawaii. Filmmaker has 'smoking gun' evidence in the form of emails sent back and forth between Defendant's employees and Filmmaker that should serve as evidence of true intent.

589.    Filmmaker's intention is very clear: He wanted to make a faith-based film to honor the people of Hawaii. The breaches are crystal-clear, and thus the court should affirm a Motion for Summary Judgment in favor of the Filmmaker.

590.    As a direct and proximate result of the above-described acts of Defendants, Filmmaker has been damaged in an amount to be determined at trial, in excess of the jurisdictional minimum of this court, and believed to be no less than $25 million.

591.    Defendants's conduct was (a) contemptible conduct which was carried on with a willful and conscious disregard for the rights of the Filmmaker, his career, and for the general public who were deprived of seeing this magnificent film because Defendants had another agenda and refused to put Filmmaker's film before their own vested interests; (b) conduct that subjected Filmmaker to unjust hardship in conscious disregard

of its rights; and (c) intentional misrepresentation, deceit or concealment of material facts known to Defendants with the intention of thereby depriving Filmmaker of its property (and timeliness) and legal rights and otherwise causing injury. Said conduct constitutes malice, oppression, and fraud within the meaning of promissory fraud.

592.     Therefore, Filmmaker is entitled to recover exemplary and punitive damages against Defendants, in addition to actual damages, for the sake of example and by way of punishing Defendants.

## COUNT 8 – BREACH OF IMPLIED CONTRACT

593.     Filmmaker repeats and realleges each and every allegation contained in paragraphs 1 through 593 above as if fully set forth herein.

594.     In the event that the rebate contract is rescinded or terminated with respect to Defendants's obligations, then Filmmaker allege that Defendants is in breach of its oral agreements and implied agreements as well as entitled to puntive damages.

595.     On or about April 2017, Filmmaker began pre-production of one of most ambitious movies on Hawaii history ever - on the lives of Chiefess Kapiolani, King Kamehameha, Captain Cook, and Queen Liliuokalani.

596.     The film made news around the world, including US News and World Report, NBC, ABC, and local Hawaiian media (Hawaii News Now, Star Advertiser, KHON, KITV, et al).

597.     As the Plaintiff/Filmmaker Tim Chey is a devout Christian, the first film he wanted to put into production was the compelling story of Chiefess Kapiolani who found Christ and went to the top of the volcano to proclaim her new-found faith in the Lord.

598.     Filmmaker enlisted a Native Hawaiian professor at the University of Hawaii who teaches Native Hawaiian history to help research and co-write the script. Yet a core group of people who oppose Christianity in Hawaii conspired against the Filmmaker.

Filmmaker has 'smoking-gun' evidence of this and will release this during discovery and at the trial.

599.     Filmmaker is contemplating suing this group later in 2019 – he first wants to get this case moving forward to a 2019/2020 trial.

600.     On or about March 2017, Filmmaker decided to film 'The Islands' after being assured that the Defendant Hawaii Film Office would give a 20% rebate on the budget that the Film Office gives to all filmmakers. This was extremely important to the Filmmaker as many production companies base their entire decision for where to film based on the movie tax credits of each state. This is common industry knowledge and practice.

601.     Also, the 20% rebate is critically important for P&A (prints and advertising) for the film's exposure and marketing funds.

602.     Had Filmmaker known that Defendants would even attempt not to reward the 20% rebate because they didn't like the content of the movie, the Filmmaker's beliefs, or his personality per se, Filmmaker would never have even launched such a huculean effort in making the film, including casting an Academy-Award winning actress, a legendary actor, and a 98% Native Polynesian cast. Filmmaker would simply have made another film in another state. Filmmaker has made 12 movies in 22 years. He did not need the horrific grief imposed by Defendants collectively.

603.     It is very rare for any governmental agency to act as juvenile, vindictive, and incompetent as the Hawaii Film Office. It's astonishing as Filmmaker has worked with the Connecticut, Lousiana, Virginia, Fiji, California, Michigan, and North Carolina film offices with absolutely no issues or problems. In fact, the Connecticut Film Office gave Filmmaker his 30% tax rebate for 'Freedom' (Cuba Gooding, Jr., Sharon Leal, William Sadler) within 30 days after the paperwork was turned in.

604.     From the start of the movie until post-production, Filmmaker made the 20% rebate the number one priority as he realized how significant the rebate was. It was 20% of the entire budget and this was to put bread on the table of a faith-based filmmaker.

**605.**   On or about April 2017, Filmmaker received a strange message from one of the employees of the Hawaii Film Office. She said she had 'concerns' about Filmmaker's movie and to call her. Filmmaker returned her call and assured her that one of his co-writers was a well-respected Native Hawaiian professor at the University of Hawaii who taught Native Hawaiian history.

**606.**   Nevertheless, this is a complete violation of Filmmaker's 1st Amendment rights for a government agency to inquire about the content of a movie – it's almost unheard of. Imagine a California agency calling a Hollywood studio and 'inquiring' about the content of the horror movie 'The Nun'. The outrage would be worldwide. This is no different.

**607.**   Having a Hawaii state agency calling to say there's a problem with Filmmaker's Christian movie reeks of 1st Amendment problems of free speech.

**608.**   The history of Chiefess Kapiolani's leadership brought Christianity to Hawaii. This is the issue of those who oppose it. Filmmaker gets it and totally understands the hatred as Jesus himself said "If they hated me, they will hate you." (John 15:18).

**609.**   Nevertheless, Hawaii is officially part of the United States and must adhere to federal laws or there will be absolute chaos. The rejection of the rebate to Filmmaker is the beginning of the end and shows the Defendants collectively breached the implied covenant of good faith starkly and maliciously.

**610.**   Again, the film is based on a true story and anything done on the governmental level to oppose Filmmaker is complete and total discrimination against his religion and unequivocably violates the Filmmaker's First Amendment rights to free speech.

**611.**   The events of the core group to oppose Filmmaker's telling of the history started the entire chain-of-events as Filmmaker would not back down from making the film.

**612.**   Filmmaker received death threats before and during shooting. His staff had to file police reports to the incompetent Honolulu police who did absolutely nothing despite even having the name of the alleged perpetrator.

**613.**   Filmmaker alleges that possible elements or people in the Hawaii Film Office have also been part of a smear campaign against many historical Hawaiian films, including Filmmaker's movie.

**614.**   In addition to death threats, Filmmaker was up against many other deep hurdles, including union threats and Hawaiian activists who threatened to shut down the production on numerous instances.

**615.**   In over 60 emails and phone calls, Filmmaker worked diligently to make sure every single receipt, GET tax id of every single crew member and cast member was obtained.

**616.**   Filmmaker fulfilled each and every requirement methodically and precisely because he knew the Defendant Hawaii Film Office might try something sneaky. Filmmaker even has proof that one email mistakenly forwarded to Filmmaker showed the Defendants were already conspiring to 'get' Filmmaker' (See Exhibit H).

**617.**   This process of getting all the requirements for the Hawaii Film Office took over 13 weeks and Filmmaker calculates over 240 hours of man time.

**618.**   Filmmaker is also a Harvard-educated attorney and bills at $550 an hour. So by just multiplying 240 x $550 would come to $192,000. This is how important the rebate back from the Hawaii Film Office was to the Filmmaker and the Filmmaker asks the Court to consider the $192,000 as additional damages aside from the punitive damages.

**619.**   Again, the Hawaii Film Office has blatantly lied in their refusal to credit the Filmmaker with the 20% rebate. There is no reason, outside of their wanting to teach Filmmaker a lesson, to withhold the tax certificate. Filmmaker fulfilled every requirement.

**620.**   Filmmaker tries to show the love of Jesus to everyone he can. However, should Defendants even broach any issues that demean or slander Filmmaker, Filmmaker will amend this lawsuit to include defamation and/or libel and slander. Filmmaker is very confident he would win any Anti-Slapp Motion as he has been more than diligent in the entire application process.

**621.** <u>The fact that Defendants did not alert Filmmaker that he was 'lacking' in further proof of receipts for more than 9 months is further proof of fraud and deceit that would later rise up again on much more serious levels.</u>

**622.** On or about September 2017, Filmmaker put in several calls to Defendant Brazier to make sure every 'T' was crossed and every 'I' was dotted. Filmmaker wanted to make sure there would be no problems with getting the 20% rebate back. This was critical as he would not have filmed in Hawaii.

**623.** On or about September 2017, Defendant Brazier repeatedly told Filmmaker that he did not need to get the GET Tax Ids for established businesses in Hawaii as they were obviously paying tax to the Hawaii government.

**624.** This proved to be yet another misrepresentation.

**625.** On or about September 2018, <u>almost a year later</u>, Defendants Dawson and the Hawaii Film Office suddenly demanded that all the GET tax IDs should be listed. <u>This is another brazen and fraudulent attempt to deny Filmmaker his just rebate</u>. Filmmaker did, in fact, list every single GET Tax ID. Somehow, they lost the paperwork or it was maliciously destroyed.

**626.** In Defendant's one page sheet they sent to Filmmaker - that possibly took less than an hour to do – not 9 months – they also said the GET Tax IDs were wrong when in fact they were correct. Further proof that they were desperately trying anything to not give the Filmmaker his rebate.

**627.** The entire one-page sheet is filled with complete wrong assumptions, numbers, and math. It's like a third-grader put it together hoping this would pass and Filmmaker would go away.

**628.** On or about October 2017 and three weeks before shooting, Defendant Brazier contacted the production's UPM and gave the UPM the actual budget figures. <u>This is a text-book case of conflict of interest</u>. The UPM knew Defendant Brazier and was never given authorization to have any confidential numbers or should receive them as this

1   person was only the UPM. The production ended up firing the UPM for gross

2   incompetence and was later sued by the UPM in small claims.

3   **629.**     Had Filmmaker known this conflict of interest and gross breach of privacy, he

4   would have immediately requested another contact to work with at the Hawaii Film

5   Office, because of the industry rule/code that key positions should not be filled by ANY

6   partnership team because again if one is fired, the other will quit or have to be fired as

7   well.

8   **630.**     Again, this is a textbook case of breaching an implied good covenant in dealings.

9   **631.**     Filmmaker believes and alleges that the UPM's firing has contributed to the

10   Hawaii Film Office defrauding Filmmaker out of his rightful 20% rebate as the UPM sent

11   a letter to the office violating the confidentiality provision of her signed contract. No

12   other true professional in the industry would do this.

13   **632.**     This unprofessional, sneaky, and juvenile high school conduct is another reason

14   why Filmmaker will never film in Hawaii again.

15   **633.**     On or about November 2017, Filmmaker, to make sure every single requirement

16   was met, personally emailed Defendant Brazier to have any Film Office employee or

17   government legislator come to the set (see EXHIBIT B). This requirement is buried in the

18   forms, but this email again proves how meticulous Filmmaker was in fulfilling every

19   single requirement including this obscure provision.

20   **634.**     On or about November 17, 2017, Filmmaker submitted the preliminary budget to

21   the Film Office (see EXHIBIT C). As the Honorable Court can see, the preliminary

22   requirements were met except for two items which were later fulfilled and never a subject

23   of dispute.

24   **635.**     At no time did the Hawaii Film Office ever contact the Filmmaker to alert him to

25   anything that was not completed or out of the ordinary. In fact, they were silent for

26   almost eight months.

27   **636.**     On or about November 20, 2017, Filmmaker again inquired about the $1,000

28   contribution that was required to be made to the University of Hawaii Foundation (see

1    EXHIBIT D). This again shows how astute and careful Filmmaker was to the

2    requirements set forth by the Hawaii Film Office.[13]

3    **637.**    Filmmaker then donated $1,000 to the University of Hawaii Foundation in

4    accordance to the requirements (Filmmaker and his wife give 90% of their wealth away

5    to charity or to their faith-based endeavors).

6    **638.**    On or about December 2017, Filmmaker received the pre-qualification letter (See

7    EXHIBIT E and F). At no point, did the Hawaii Film Office ever question or comment on

8    any part of the film's production or requirements.

9    **639.**    <u>Multiple calls from March 2017 to February 2018 to Defendant Brazier again</u>

10   <u>confirmed Filmmaker was on track to receive his rebate.</u>

11   **640.**    On or about December 11, 2017, the Hawaii Film Office submitted an email (See

12   EXHIBIT G) which outline precisely the 7 remaining requirements left to get the tax

13   certificate.

14   **641.**    <u>Filmmaker fulfilled every single requirement and more so and will testify, under</u>

15   <u>the penalty of perjury (that carries a jail sentence), that every single requirement was</u>

16   <u>fulfilled with complete honesty and integrity.</u>

17   **642.**    This will be proven with 'smoking-gun' evidence at trial and during the Motion

18   for Summary Judgment.

19   **643.**    To reiterate the point again, <u>had Filmmaker not been deceived by Defendant's</u>

20   <u>action, Filmmaker would not have filmed any movie in Hawaii.</u> Period.

21   **644.**    <u>Nevertheless, it still gets worse.</u>

22   **645.**    On or about December 11, 2017, Filmmaker sent an email simply re-confirming

23   what constitutes a vendor by the Hawaii Film Office (see EXHIBIT H).

24   _____

25   [13] The $1,000 requirement is yet another misprepresentation of the Hawaii Film

26   Office's advertising and promotions as this falls beneath the 20% rebate back

27   then, i.e., you have to pay an additional $1,000 to be considered for a

28   rebate.

646.    In the most juvenile, condescending, and vicious response, Defendant Brazier replied to Defendant Dawson, "Should we use the definition of vendor in the dictionary???" She unwittingly copied herself in her reply to the Filmmaker.

647.    As it turns out, this requirement is the exact same thing the Hawaii Film Office fraudulently used in their desperate attempts to sabotage, smear, and hurt Filmmaker by denying the rebate. They questioned what constitutes a vendor. It's the 'Confederacy of Dunces' all over again.

648.    This also proves the immature lengths the Defendants, collectively, have gone to avoid giving the Filmmaker his earned rebate. It's run like a junior high school.

649.    Again, Filmmaker has worked with the film departments of Connecticut, Louisiana, Georgia, Virginia, North Carolina, California, et al and has never encountered such an immature, hostile, mean-spirited, incompetent, sneaky, slow, sensitive, and maniupulative conduct ever. Filmmaker has been in the business for over 22 years again and has made 12 movies.

650.    The Filmmaker again believes the Honorable U.S. District Court and jury will find sufficient evidence in the months, and possible years to come, of another corrupt Hawaiian government agency that needs Federal investigation.

651.    Filmmaker will depose all of the parties at the Hawaii Film Office and past UPMs and line producer of every single past film to prove there is widespread and gross incompetence at every level.

652.    Filmmaker also plans to file a whistleblower lawsuit against the Hawaii Film Office and the Hollywood studios for wasting the taxpayer's money. Filmmaker will file motions to compel the paperwork to see every single budget that the Film Office has given millions of dollars to the studios and yet denied a simple rebate to the Filmmaker.

653.    On or about December 2017, Filmmaker finished the final paperwork and contacted the Defendant Hawaii Film Office to begin the tax rebate final process and was told the tax certificate would be sent within 3 to 6 months. – which is also stated on the

1   Hawaii Film Office website and on their official forms. It is now October 2018 at the

2   time of the filing of this suit. This is tragic in every respect.

654.   Again, having the tax certificate was critical in both post-production money and

for the investors. The Defendants were fully aware of this.

655.   Despite numerous emails, Defendants repeatedly dragged their feet and returned

emails sometimes a month later.

656.   They then stated Filmmaker had to do other tasks that were never in the intital

conversations.

657.   Filmmaker shook his head in disbelief. Filmmaker immediately sensed something

was terribly wrong.

658.   Again, Defendants hid the relationships of those that created friction and their

motives of 'teaching the filmmaker a lesson' by delaying the tax certificate to now 9

months. This a textbook fraud and deceit.

659.   Again, Filmmaker would never have filmed a movie in Hawaii had he known of

this fraud and deceit, mispresentation, civil conspiracy and other conduct the Hawaii Film

Office would so brazenly do.

660.   Furthermore, they even admitted themselves that the office has come under

intense scrutiny by legislatures for previous blunders which will be part of the

whistleblower lawsuit. This again is total fraud and deceit and a total conflict of interest.

661.   Defendants went beyond being crafty/sneaky to fraud and deceit as the Court will

see throughout this Complaint. These are the most dishonorable actions that Filmmaker

has ever worked with in 22 years.  Here Filmmaker shot a movie that would honor a

Hawaiian Chiefess, pay good-paying jobs to Hawaiian/Polynesians, and the Hawaii Film

Office back-stabbed him by deceiving him and playing little juvenile high-school games

no other film office of any state would dare to do.

662.   If in fact, the Hollywood studios have not gone through this level of fraud, then

the Hawaii Film Office, complete with starry, wide eyes, have discriminated against the

Filmmaker either through his religious beliefs (a violation of the First Amendment) or

1   against him as an independent filmmaker (a violation of the Hawaii Whistleblower Act)

2   This is a text-book case of self-dealing.

3   663.   On or about August 2018, Filmmaker sent several emails to the Attorney

4   General's office and the Governor's office to attempt to understand why the Hawaii Film

5   Office was taking so long. The Hawaii Film Office refused to answer any emails.

6   664.   Something was truly wrong here.

7   665.   Finally, after legal threats, the Hawaii Film Office, in the most overt fraud of

8   perhaps any governmental agency in the state, then sent Filmmaker an astounding list of

9   complete lies and fabrications.

10   666.   Defendants said because Filmmaker has not proved any of his receipts, he is not

11   entitled to a 20% rebate. Filmmaker immediately knew he was duped.

12   667.   The Hawaii Film Office sent a list of requirements that are filled with complete

13   fraud and lies. It's almost jaw-dropping how each remaining requirement had already

14   been fulfilled.

15   668.   *The Hawaii Film Office sent a one-page sheet that looked like it took ten minutes*

16   *to do – not 9 months (see Exhibit A)*. The Filmmaker will show this smacks of the

17   juvenile and utterly fraudulent way the Hawaii Film Office went to avoid paying the 20%

18   rebate.

19   669.   Among the several 'items' that Hawaii Film Office said the Filmmaker had to

20   prove was the actual shooting location of Kualoa Ranch (See Exhibit A). Filmmaker sent

21   the bill, the cancelled checks, and the Defendants still said Filmmaker could not prove

22   this expense. A simple phone call could verify this expenditure.

23   670.   The sheet again shows scores of names of crew that Filmmaker already gave the

24   Hawaii Film Office every single GET Tax ID that they required. Yet it ignores key

25   actor's salaries, key equipment rentals, hotels – it's an absolute fraudulent document.[14]

26

27   _____

[14] The one-sheet contains over 50 crew and cast that have already been

28   accounted for. The only way to explain the red marks is the Hawaii Film

671.     Defendants Benita Brazier and Donne Dawson clearly acted outside the scope of their agency in wanting to pay back Filmmaker in retribution for several reasons Filmmaker will prove at trial.

672.     The State of Hawaii should not defend Ms. Brazier or Ms. Dawson.

673.     Filmmaker will call on several key witnesses in the cast, crew, and extras to prove the Film Office is in disarray. He expects the trial to go for at least ten weeks and asks the Honorable Court's patience as Filmmaker is bracing for extensive discovery (and possible Motions to Compel with sanctions) to take place during this litigation.

674.     This case is very important as there must be freedom of speech in Hawaii and that federal law still supercedes state law. Hawaii is part of America and most Hawaiians want that.

675.     Filmmaker will subpeona every crew member for depositions to testify to the events as true. And if Defendants lie during their sworn depositions, Filmmaker will file a criminal complaint with the D.A. for perjury and possible Federal intervention. Filmmaker will begin depositions within 30 days of the service of the Complaint to get a head start on all discovery.

676.     Filmmaker believes the damages to the movie are permanent and irrecoverable due to Defendant's actions.

677.     It is paramount that the Honorable Court grant Filmmaker broad discretion in ascertaining what is going on as Filmmaker expects to file multiple Motions to Compel as the Defendants have proven themselves deftly good at avoiding or ignoring questions pertaining to their conduct.

678.     Defendant's actions left the film in total chaos. The film went overbudget because of their actions and the Filmmaker had to pay the overbudget out of his own pocket.

---

Office is doing everything possible to sabotage and not pay Filmmaker. This is indisputable evidence. Filmmaker will submit all of the evidence during discovery and will file a Motion to seal the documents.

679.     <u>Again, Filmmaker testifies, under penalty of perjury, that he has never sued any governmental agency in his entire life.</u>

680.     Filmmaker will depose Defendants Benita Brazier, Donne Dawson in November. He will then depose other filmmakers who have shot movies in Hawaii.

**681.**     Filmmaker will file a Pre-Judgment Writ of Attachment on all of Defendant's personal and corporate assets and believes he has been damaged by no less than $135 million in actual and punitive damages and will spend the next 5 years outlying the case against the Defendants. They need to be punished severely for their contemptible mistreatment of a filmmaker who tried to honor the people of Hawaii and their valiant and courageous leader two hundred years ago.

682.     Filmmaker is exiting making the next films in Hawaii and the damages are stark and real – due mostly because of Defendant's fraud and deceit. This will be calculated in the damages against Defendants.

# <u>COUNT 9 – QUANTUM MERUIT</u>

683.     Filmmaker repeats and realleges each and every allegation contained in paragraphs 1 through 683 above as if fully set forth herein.

684.     Filmmaker performed services, labor, and hard work, including fulfilling all Defendant's requirements, including hiring over 183 people and using all the Hawaii vendors in making this very important film.

685.     Defendants have failed and refuse to pay Filmmaker for the value of his services Filmmaker performed for the Defendants by letting the State enjoy free publicity in having Academy-Award winning actors come to Hawaii and spending money on the crew, hotels, food, construction, venues, catering, etc. Filmmaker is entitled to his full value of services bestowed on Defendants in an amount to be determined at trial but believed to be no less than $1.5 million which is very conservative in the film industry for a well-known, prominent writer/director.

# COUNT 10 – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

*686.*     Filmmaker repeats and realleges each and every allegation contained in paragraphs 1 through 686 above as if fully set forth herein.

687.     A cause of action for negligent infliction of emotional distress consists of: (1) a duty of care owed by the defendant to the Filmmaker, (2) breach of that duty by the defendant resulting in severe emotional suffering and (3) actual and proximate causation of severe emotional distress.

**688.**     On or about April 2017, Filmmaker began pre-production of one of most ambitious movies on Hawaii history ever - on the lives of Chiefess Kapiolani, King Kamehameha, Captain Cook, and Queen Liliuokalani.

**689.**     The film made news around the world, including US News and World Report, NBC, ABC, and local Hawaiian media (Hawaii News Now, Star Advertiser, KHON, KITV, et al).

**690.**     As the Plaintiff/Filmmaker Tim Chey is a devout Christian, the first film he wanted to put into production was the compelling story of Chiefess Kapiolani who found Christ and went to the top of the volcano to proclaim her new-found faith in the Lord.

**691.**     Filmmaker enlisted a Native Hawaiian professor at the University of Hawaii who teaches Native Hawaiian history to help research and co-write the script. Yet a core group of people who oppose Christianity in Hawaii conspired against the Filmmaker. Filmmaker has 'smoking-gun' evidence of this and will release this during discovery and at the trial.

**692.**     Filmmaker is contemplating suing this group later in 2019 – he first wants to get this case moving forward to a 2019/2020 trial.

**693.**     On or about March 2017, Filmmaker decided to film 'The Islands' after being assured that the Defendant Hawaii Film Office would give a 20% rebate on the budget

that the Film Office gives to all filmmakers. <u>This was extremely important to the</u> <u>Filmmaker as many production companies base their entire decision for where to film</u> <u>based on the movie tax credits of each state. This is common industry knowledge and</u> <u>practice.</u>

694.    Also, the 20% rebate is critically important for P&A (prints and advertising) for the film's exposure and marketing funds.

695.    Had Filmmaker known that Defendants would even attempt not to reward the 20% rebate because they didn't like the content of the movie, the Filmmaker's beliefs, or his personality per se, Filmmaker would never have even launched such a huculean effort in making the film, including casting an Academy-Award winning actress, a legendary actor, and a 98% Native Polynesian cast. Filmmaker would simply have made another film in another state. Filmmaker has made 12 movies in 22 years. He did not need the horrific grief imposed by Defendants collectively.

696.    It is very rare for any governmental agency to act as juvenile, vindictive, and incompetent as the Hawaii Film Office. <u>It's astonishing as Filmmaker has worked with</u> <u>the Connecticut, Lousiana, Virginia, Fiji, California, Michigan, and North Carolina film</u> <u>offices with absolutely no issues or problems.</u> In fact, the Connecticut Film Office gave Filmmaker his 30% tax rebate for 'Freedom' (Cuba Gooding, Jr., Sharon Leal, William Sadler) within 30 days after the paperwork was turned in.

697.    From the start of the movie until post-production, Filmmaker made the 20% rebate the number one priority as he realized how significant the rebate was. It was 20% of the entire budget and this was to put bread on the table of a faith-based filmmaker.

698.    On or about April 2017, Filmmaker received a strange message from one of the employees of the Hawaii Film Office. She said she had 'concerns' about Filmmaker's movie and to call her. Filmmaker returned her call and assured her that one of his co-writers was a well-respected Native Hawaiian professor at the University of Hawaii who taught Native Hawaiian history.

**699.** Nevertheless, this is a complete violation of Filmmaker's 1st Amendment rights for a government agency to inquire about the content of a movie – it's almost unheard of. Imagine a California agency calling a Hollywood studio and 'inquiring' about the content of the horror movie 'The Nun'. The outrage would be worldwide. This is no different.

**700.** Having a Hawaii state agency calling to say there's a problem with Filmmaker's Christian movie reeks of 1st Amendment problems of free speech.

**701.** The history of Chiefess Kapiolani's leadership brought Christianity to Hawaii. This is the issue of those who oppose it. Filmmaker gets it and totally understands the hatred as Jesus himself said "If they hated me, they will hate you." (John 15:18).

**702.** Nevertheless, Hawaii is officially part of the United States and must adhere to federal laws or there will be absolute chaos. The rejection of the rebate to Filmmaker is the beginning of the end and shows the Defendants collectively breached the implied covenant of good faith starkly and maliciously.

**703.** Again, the film is based on a true story and anything done on the governmental level to oppose Filmmaker is complete and total discrimination against his religion and unequivocably violates the Filmmaker's First Amendment rights to free speech.

**704.** The events of the core group to oppose Filmmaker's telling of the history started the entire chain-of-events as Filmmaker would not back down from making the film.

**705.** Filmmaker received death threats before and during shooting. His staff had to file police reports to the incompetent Honolulu police who did absolutely nothing despite even having the name of the alleged perpetrator.

**706.** Filmmaker alleges that possible elements or people in the Hawaii Film Office have also been part of a smear campaign against many historical Hawaiian films, including Filmmaker's movie.

**707.** In addition to death threats, Filmmaker was up against many other deep hurdles, including union threats and Hawaiian activists who threatened to shut down the production on numerous instances.

**708.**     In over 60 emails and phone calls, Filmmaker worked diligently to make sure every single receipt, GET tax id of every single crew member and cast member was obtained.

**709.**     Filmmaker fulfilled each and every requirement methodically and precisely because he knew the Defendant Hawaii Film Office might try something sneaky. Filmmaker even has proof that one email mistakenly forwarded to Filmmaker showed the Defendants were already conspiring to 'get' Filmmaker' (See Exhibit H).

**710.**     This process of getting all the requirements for the Hawaii Film Office took over 13 weeks and Filmmaker calculates over 240 hours of man time.

**711.**     Filmmaker is also a Harvard-educated attorney and bills at $550 an hour. So by just multiplying 240 x $550 would come to $192,000. This is how important the rebate back from the Hawaii Film Office was to the Filmmaker and the Filmmaker asks the Court to consider the $192,000 as additional damages aside from the punitive damages.

**712.**     Again, the Hawaii Film Office has blatantly lied in their refusal to credit the Filmmaker with the 20% rebate. There is no reason, outside of their wanting to teach Filmmaker a lesson, to withhold the tax certificate. Filmmaker fulfilled every requirement.

**713.**     Filmmaker tries to show the love of Jesus to everyone he can. However, should Defendants even broach any issues that demean or slander Filmmaker, Filmmaker will amend this lawsuit to include defamation and/or libel and slander. Filmmaker is very confident he would win any Anti-Slapp Motion as he has been more than diligent in the entire application process.

**714.**     The fact that Defendants did not alert Filmmaker that he was 'lacking' in further proof of receipts for more than 9 months is further proof of fraud and deceit that would later rise up again on much more serious levels.

**715.**     On or about September 2017, Filmmaker put in several calls to Defendant Brazier to make sure every 'T' was crossed and every 'I' was dotted. Filmmaker wanted to make

1   sure there would be no problems with getting the 20% rebate back. This was critical as he

2   would not have filmed in Hawaii.

3   **716.**    On or about September 2017, Defendant Brazier repeatedly told Filmmaker that

4   he did not need to get the GET Tax Ids for established businesses in Hawaii as they were

5   obviously paying tax to the Hawaii government.

6   **717.**    This proved to be yet another misrepresentation.

7   **718.**    On or about September 2018, <u>almost a year later</u>, Defendants Dawson and the

8   Hawaii Film Office suddenly demanded that all the GET tax IDs should be listed. <u>This is</u>

9   <u>another brazen and fraudulent attempt to deny Filmmaker his just rebate</u>. Filmmaker did,

10   in fact, list every single GET Tax ID. Somehow, they lost the paperwork or it was

11   malicously destroyed.

12   **719.**    In Defendant's one page sheet they sent to Filmmaker - that possibly took less

13   than an hour to do – not 9 months – they also said the GET Tax IDs were wrong when in

14   fact they were correct. Further proof that they were desperately trying anything to not

15   give the Filmmaker his rebate.

16   **720.**    The entire one-page sheet is filled with complete wrong assumptions, numbers,

17   and math. It's like a third-grader put it together hoping this would pass and Filmmaker

18   would go away.

19   **721.**    On or about October 2017 and three weeks before shooting, Defendant Brazier

20   contacted the production's UPM and gave the UPM the actual budget figures. <u>This is a</u>

21   <u>text-book case of conflict of interest</u>. The UPM knew Defendant Brazier and was never

22   given authorization to have any confidential numbers or should receive them as this

23   person was only the UPM. The production ended up firing the UPM for gross

24   incompetence and was later sued by the UPM in small claims.

25   **722.**    Had Filmmaker known this conflict of interest and gross breach of privacy, he

26   would have immediately requested another contact to work with at the Hawaii Film

27   Office, because of the industry rule/code that key positions should not be filled by ANY

28

partnership team because again if one is fired, the other will quit or have to be fired as well.

723.    Again, this is a textbook case of breaching an implied good covenant in dealings.

724.    Filmmaker believes and alleges that the UPM's firing has contributed to the Hawaii Film Office defrauding Filmmaker out of his rightful 20% rebate as the UPM sent a letter to the office violating the confidentiality provision of her signed contract. No other true professional in the industry would do this.

725.    This unprofessional, sneaky, and juvenile high school conduct is another reason why Filmmaker will never film in Hawaii again.

726.    On or about November 2017, Filmmaker, to make sure every single requirement was met, personally emailed Defendant Brazier to have any Film Office employee or government legislator come to the set (see EXHIBIT B). This requirement is buried in the forms, but this email again proves how meticulous Filmmaker was in fulfilling every single requirement including this obscure provision.

727.    On or about November 17, 2017, Filmmaker submitted the preliminary budget to the Film Office (see EXHIBIT C). As the Honorable Court can see, the preliminary requirements were met except for two items which were later fulfilled and never a subject of dispute.

728.    At no time did the Hawaii Film Office ever contact the Filmmaker to alert him to anything that was not completed or out of the ordinary. In fact, they were silent for almost eight months.

729.    On or about November 20, 2017, Filmmaker again inquired about the $1,000 contribution that was required to be made to the University of Hawaii Foundation (see EXHIBIT D). This again shows how astute and careful Filmmaker was to the requirements set forth by the Hawaii Film Office.[15]

---

[15] The $1,000 requirement is yet another misprepresentation of the Hawaii Film Office's advertising and promotions as this falls beneath the 20% rebate back

730.   Filmmaker then donated $1,000 to the University of Hawaii Foundation in accordance to the requirements (Filmmaker and his wife give 90% of their wealth away to charity or to their faith-based endeavors).

731.   On or about December 2017, Filmmaker received the pre-qualification letter (See EXHIBIT E and F). At no point, did the Hawaii Film Office ever question or comment on any part of the film's production or requirements.

732.   <u>Multiple calls from March 2017 to February 2018 to Defendant Brazier again confirmed Filmmaker was on track to receive his rebate.</u>

733.   On or about December 11, 2017, the Hawaii Film Office submitted an email (See EXHIBIT G) which outline precisely the 7 remaining requirements left to get the tax certificate.

734.   <u>Filmmaker fulfilled every single requirement and more so and will testify, under the penalty of perjury (that carries a jail sentence), that every single requirement was fulfilled with complete honesty and integrity.</u>

735.   This will be proven with 'smoking-gun' evidence at trial and during the Motion for Summary Judgment.

736.   To reiterate the point again, <u>had Filmmaker not been deceived by Defendant's action, Filmmaker would not have filmed any movie in Hawaii</u>. Period.

737.   <u>Nevertheless, it still gets worse.</u>

738.   On or about December 11, 2017, Filmmaker sent an email simply re-confirming what constitutes a vendor by the Hawaii Film Office (see EXHIBIT H).

739.   In the most juvenile, condescending, and vicious response, Defendant Brazier replied to Defendant Dawson, "Should we use the definition of vendor in the dictionary???" She unwittingly copied herself in her reply to the Filmmaker.

---

then, i.e., you have to pay an additional $1,000 to be considered for a rebate.

**740.**     As it turns out, this requirement is the exact same thing the Hawaii Film Office fraudulently used in their desperate attempts to sabotage, smear, and hurt Filmmaker by denying the rebate. They questioned what constitutes a vendor. <u>It's the 'Confederacy of Dunces' all over again.</u>

**741.**     This also proves the immature lengths the Defendants, collectively, have gone to avoid giving the Filmmaker his earned rebate. It's run like a junior high school.

**742.**     <u>Again, Filmmaker has worked with the film departments of Connecticut, Louisiana, Georgia, Virginia, North Carolina, California, et al and has never encountered such an immature, hostile, mean-spirited, incompetent, sneaky, slow, sensitive, and maniupulative conduct ever. Filmmaker has been in the business for over 22 years again and has made 12 movies.</u>

**743.**     The Filmmaker again believes the Honorable U.S. District Court and jury will find sufficient evidence in the months, and possible years to come, of another corrupt Hawaiian government agency that needs Federal investigation.

**744.**     Filmmaker will depose all of the parties at the Hawaii Film Office and past UPMs and line producer of every single past film to prove there is widespread and gross incompetence at every level.

**745.**     Filmmaker also plans to file a whistleblower lawsuit against the Hawaii Film Office and the Hollywood studios for wasting the taxpayer's money. Filmmaker will file motions to compel the paperwork to see every single budget that the Film Office has given millions of dollars to the studios and yet denied a simple rebate to the Filmmaker.

**746.**     On or about December 2017, Filmmaker finished the final paperwork and contacted the Defendant Hawaii Film Office to begin the tax rebate final process and was told the tax certificate would be sent within 3 to 6 months. – which is also stated on the Hawaii Film Office website and on their official forms. It is now October 2018 at the time of the filing of this suit. This is tragic in every respect.

**747.**     Again, having the tax certificate was critical in both post-production money and for the investors. The Defendants were fully aware of this.

**748.**   Despite numerous emails, Defendants repeatedly dragged their feet and returned emails sometimes a month later.

**749.**   They then stated Filmmaker had to do other tasks that were never in the intital conversations.

750.   Filmmaker shook his head in disbelief. Filmmaker immediately sensed something was terribly wrong.

**751.**   Again, Defendants hid the relationships of those that created friction and their motives of 'teaching the filmmaker a lesson' by delaying the tax certificate to now 9 months. This a textbook negligent infliction of emotional distress.

**752.**   Filmmaker has sought counseling with pastors and has to take medicine because of the effects of what Defendants have done to him.

**753.**   These Defendants will also answer to a real God someday: "Do not wrong someone in Christ. God will punish men for all such sins." 1 Thess 4:6

**754.**   Again, Filmmaker would never have filmed a movie in Hawaii had he known of this fraud and deceit, mispresentation, civil conspiracy and other conduct the Hawaii Film Office would so brazenly do.

**755.**   Furthermore, they even admitted themselves that the office has come under intense scrutiny by legislatures for previous blunders which will be part of the whistleblower lawsuit. This again is total fraud and deceit and a total conflict of interest.

**756.**   Defendants went beyond being crafty/sneaky to fraud and deceit as the Court will see throughout this Complaint. These are the most dishonorable actions that Filmmaker has ever worked with in 22 years.  Here Filmmaker shot a movie that would honor a Hawaiian Chiefess, pay good-paying jobs to Hawaiian/Polynesians, and the Hawaii Film Office back-stabbed him by deceiving him and playing little juvenile high-school games no other film office of any state would dare to do.

**757.**   If in fact, the Hollywood studios have not gone through this level of fraud, then the Hawaii Film Office, complete with starry, wide eyes, have discriminated against the Filmmaker either through his religious beliefs (a violation of the First Amendment) or

against him as an independent filmmaker (a violation of the Hawaii Whistleblower Act) This is a text-book case of self-dealing.

758.    On or about August 2018, Filmmaker sent several emails to the Attorney General's office and the Governor's office to attempt to understand why the Hawaii Film Office was taking so long. The Hawaii Film Office refused to answer any emails.

759.    Something was truly wrong here.

760.    Finally, after legal threats, the Hawaii Film Office, in the most overt fraud of perhaps any governmental agency in the state, then sent Filmmaker an astounding list of complete lies and fabrications.

761.    Defendants said because Filmmaker has not proved any of his receipts, he is not entitled to a 20% rebate. Filmmaker immediately knew he was duped.

762.    The Hawaii Film Office sent a list of requirements that are filled with complete fraud and lies. It's almost jaw-dropping how each remaining requirement had already been fulfilled.

763.    *The Hawaii Film Office sent a one-page sheet that looked like it took ten minutes to do – not 9 months (see Exhibit A).* The Filmmaker will show this smacks of the juvenile and utterly fraudulent way the Hawaii Film Office went to avoid paying the 20% rebate.

764.    Among the several 'items' that Hawaii Film Office said the Filmmaker had to prove was the actual shooting location of Kualoa Ranch (See Exhibit A). Filmmaker sent the bill, the cancelled checks, and the Defendants still said Filmmaker could not prove this expense. A simple phone call could verify this expenditure.

765.    The sheet again shows scores of names of crew that Filmmaker already gave the Hawaii Film Office every single GET Tax ID that they required. Yet it ignores key actor's salaries, key equipment rentals, hotels – it's an absolute fraudulent document.[16]

---

[16] The one-sheet contains over 50 crew and cast that have already been accounted for. The only way to explain the red marks is the Hawaii Film

766.    Defendants Benita Brazier and Donne Dawson clearly acted outside the scope of their agency in wanting to pay back Filmmaker in retribution for several reasons Filmmaker will prove at trial.

767.    The State of Hawaii should not defend Ms. Brazier or Ms. Dawson.

768.    Filmmaker will call on several key witnesses in the cast, crew, and extras to prove the Film Office is in disarray. He expects the trial to go for at least ten weeks and asks the Honorable Court's patience as Filmmaker is bracing for extensive discovery (and possible Motions to Compel with sanctions) to take place during this litigation.

769.    This case is very important as there must be freedom of speech in Hawaii and that federal law still supercedes state law. Hawaii is part of America and most Hawaiians want that.

770.    Filmmaker will subpeona every crew member for depositions to testify to the events as true. And if Defendants lie during their sworn depositions, Filmmaker will file a criminal complaint with the D.A. for perjury and possible Federal intervention. Filmmaker will begin depositions within 30 days of the service of the Complaint to get a head start on all discovery.

771.    Filmmaker believes the damages to the movie are permanent and irrecoverable due to Defendant's actions.

772.    It is paramount that the Honorable Court grant Filmmaker broad discretion in ascertaining what is going on as Filmmaker expects to file multiple Motions to Compel as the Defendants have proven themselves deftly good at avoiding or ignoring questions pertaining to their conduct.

773.    Defendant's actions left the film in total chaos. The film went overbudget because of their actions and the Filmmaker had to pay the overbudget out of his own pocket.

Office is doing everything possible to sabotage and not pay Filmmaker. This is indisputable evidence. Filmmaker will submit all of the evidence during discovery and will file a Motion to seal the documents.

774.   <u>Again, Filmmaker testifies, under penalty of perjury, that he has never sued any governmental agency in his entire life.</u>

775.   Filmmaker will depose Defendants Benita Brazier, Donne Dawson in November. He will then depose other filmmakers who have shot movies in Hawaii.

**776.**   Filmmaker will file a Pre-Judgment Writ of Attachment on all of Defendant's personal and corporate assets and believes he has been damaged by no less than $135 million in actual and punitive damages and will spend the next 5 years outlying the case against the Defendants. They need to be punished severely for their contemptible mistreatment of a filmmaker who tried to honor the people of Hawaii and their valiant and courageous leader two hundred years ago.

777.   Filmmaker is exiting making the next films in Hawaii and the damages are stark and real – due mostly because of Defendant's fraud and deceit. This will be calculated in the damages against Defendants.

778.   Filmmaker also will depose crew members and others who Defendants devulged confidential information.

779.   Filmmakers request the court to expedite discovery and set a trial date in the most expeditious manner if possible.

# COUNT 11 – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

*780.*   Filmmaker repeats and realleges each and every allegation contained in paragraphs 1 through 780 above as if fully set forth herein.

781.   The tort of intentional infliction of emotional distress has four elements: (1) the defendant must act intentionally or recklessly; (2) the defendant's conduct must be extreme and outrageous; and (3) the conduct must be the cause (4) of severe emotional distress

782.   From the start of the movie until post-production, Filmmaker made the 20% rebate the number one priority as he realized how significant the rebate was. It was 20% of the entire budget and this was to put bread on the table of a faith-based filmmaker.

783.   On or about April 2017, Filmmaker received a strange message from one of the employees of the Hawaii Film Office. She said she had 'concerns' about Filmmaker's movie and to call her. Filmmaker returned her call and assured her that one of his co-writers was a well-respected Native Hawaiian professor at the University of Hawaii who taught Native Hawaiian history.

784.   Nevertheless, this is a complete violation of Filmmaker's 1st Amendment rights for a government agency to inquire about the content of a movie – it's almost unheard of. Imagine a California agency calling a Hollywood studio and 'inquiring' about the content of the horror movie 'The Nun'. The outrage would be worldwide. This is no different.

785.   Having a Hawaii state agency calling to say there's a problem with Filmmaker's Christian movie reeks of 1st Amendment problems of free speech.

786.   The history of Chiefess Kapiolani's leadership brought Christianity to Hawaii. This is the issue of those who oppose it. Filmmaker gets it and totally understands the hatred as Jesus himself said "If they hated me, they will hate you." (John 15:18).

787.   Nevertheless, Hawaii is officially part of the United States and must adhere to federal laws or there will be absolute chaos. The rejection of the rebate to Filmmaker is the beginning of the end and shows the Defendants collectively breached the implied covenant of good faith starkly and maliciously.

788.   Again, the film is based on a true story and anything done on the governmental level to oppose Filmmaker is complete and total discrimination against his religion and unequivocably violates the Filmmaker's First Amendment rights to free speech.

789.   The events of the core group to oppose Filmmaker's telling of the history started the entire chain-of-events as Filmmaker would not back down from making the film.

790.   Filmmaker received death threats before and during shooting. His staff had to file police reports to the incompetent Honolulu police who did absolutely nothing despite even having the name of the alleged perpetrator.

791.   Filmmaker alleges that possible elements or people in the Hawaii Film Office have also been part of a smear campaign against many historical Hawaiian films, including Filmmaker's movie.

792.   In addition to death threats, Filmmaker was up against many other deep hurdles, including union threats and Hawaiian activists who threatened to shut down the production on numerous instances.

793.   In over 60 emails and phone calls, Filmmaker worked diligently to make sure every single receipt, GET tax id of every single crew member and cast member was obtained.

794.   Filmmaker fulfilled each and every requirement methodically and precisely because he knew the Defendant Hawaii Film Office might try something sneaky. Filmmaker even has proof that one email mistakenly forwarded to Filmmaker showed the Defendants were already conspiring to 'get' Filmmaker' (See Exhibit H).

795.   This process of getting all the requirements for the Hawaii Film Office took over 13 weeks and Filmmaker calculates over 240 hours of man time.

796.   Filmmaker is also a Harvard-educated attorney and bills at $550 an hour. So by just multiplying 240 x $550 would come to $192,000. This is how important the rebate back from the Hawaii Film Office was to the Filmmaker and the Filmmaker asks the Court to consider the $192,000 as additional damages aside from the punitive damages.

797.   Again, the Hawaii Film Office has blatantly lied in their refusal to credit the Filmmaker with the 20% rebate. There is no reason, outside of their wanting to teach Filmmaker a lesson, to withhold the tax certificate. Filmmaker fulfilled every requirement.

798.   Filmmaker tries to show the love of Jesus to everyone he can. However, should Defendants even broach any issues that demean or slander Filmmaker, Filmmaker will

amend this lawsuit to include defamation and/or libel and slander. Filmmaker is very confident he would win any Anti-Slapp Motion as he has been more than diligent in the entire application process.

799.    The fact that Defendants did not alert Filmmaker that he was 'lacking' in further proof of receipts for more than 9 months is further proof of fraud and deceit that would later rise up again on much more serious levels.

800.    On or about September 2017, Filmmaker put in several calls to Defendant Brazier to make sure every 'T' was crossed and every 'I' was dotted. Filmmaker wanted to make sure there would be no problems with getting the 20% rebate back. This was critical as he would not have filmed in Hawaii.

801.    On or about September 2017, Defendant Brazier repeatedly told Filmmaker that he did not need to get the GET Tax Ids for established businesses in Hawaii as they were obviously paying tax to the Hawaii government.

802.    This proved to be yet another misrepresentation.

803.    On or about September 2018, almost a year later, Defendants Dawson and the Hawaii Film Office suddenly demanded that all the GET tax IDs should be listed. This is another brazen and fraudulent attempt to deny Filmmaker his just rebate. Filmmaker did, in fact, list every single GET Tax ID. Somehow, they lost the paperwork or it was malicously destroyed.

804.    In Defendant's one page sheet they sent to Filmmaker - that possibly took less than an hour to do – not 9 months – they also said the GET Tax IDs were wrong when in fact they were correct. Further proof that they were desperately trying anything to not give the Filmmaker his rebate.

805.    The entire one-page sheet is filled with complete wrong assumptions, numbers, and math. It's like a third-grader put it together hoping this would pass and Filmmaker would go away.

806.    On or about October 2017 and three weeks before shooting, Defendant Brazier contacted the production's UPM and gave the UPM the actual budget figures. This is a

1    text-book case of conflict of interest. The UPM knew Defendant Brazier and was never

2    given authorization to have any confidential numbers or should receive them as this

3    person was only the UPM. The production ended up firing the UPM for gross

4    incompetence and was later sued by the UPM in small claims.

5    807.    Had Filmmaker known this conflict of interest and gross breach of privacy, he

6    would have immediately requested another contact to work with at the Hawaii Film

7    Office, because of the industry rule/code that key positions should not be filled by ANY

8    partnership team because again if one is fired, the other will quit or have to be fired as

9    well.

10   808.    Again, this is a textbook case of breaching an implied good covenant in dealings.

11   809.    Filmmaker believes and alleges that the UPM's firing has contributed to the

12   Hawaii Film Office defrauding Filmmaker out of his rightful 20% rebate as the UPM sent

13   a letter to the office violating the confidentiality provision of her signed contract. No

14   other true professional in the industry would do this.

15   810.    This unprofessional, sneaky, and juvenile high school conduct is another reason

16   why Filmmaker will never film in Hawaii again.

17   811.    On or about November 2017, Filmmaker, to make sure every single requirement

18   was met, personally emailed Defendant Brazier to have any Film Office employee or

19   government legislator come to the set (see EXHIBIT B). This requirement is buried in the

20   forms, but this email again proves how meticulous Filmmaker was in fulfilling every

21   single requirement including this obscure provision.

22   812.    On or about November 17, 2017, Filmmaker submitted the preliminary budget to

23   the Film Office (see EXHIBIT C). As the Honorable Court can see, the preliminary

24   requirements were met except for two items which were later fulfilled and never a subject

25   of dispute.

26   813.    At no time did the Hawaii Film Office ever contact the Filmmaker to alert him to

27   anything that was not completed or out of the ordinary. In fact, they were silent for

28   almost eight months.

814.　　On or about November 20, 2017, Filmmaker again inquired about the $1,000 contribution that was required to be made to the University of Hawaii Foundation (see EXHIBIT D). This again shows how astute and careful Filmmaker was to the requirements set forth by the Hawaii Film Office.[17]

815.　　Filmmaker then donated $1,000 to the University of Hawaii Foundation in accordance to the requirements (Filmmaker and his wife give 90% of their wealth away to charity or to their faith-based endeavors).

816.　　On or about December 2017, Filmmaker received the pre-qualification letter (See EXHIBIT E and F). At no point, did the Hawaii Film Office ever question or comment on any part of the film's production or requirements.

817.　　Multiple calls from March 2017 to February 2018 to Defendant Brazier again confirmed Filmmaker was on track to receive his rebate.

818.　　On or about December 11, 2017, the Hawaii Film Office submitted an email (See EXHIBIT G) which outline precisely the 7 remaining requirements left to get the tax certificate.

819.　　Filmmaker fulfilled every single requirement and more so and will testify, under the penalty of perjury (that carries a jail sentence), that every single requirement was fulfilled with complete honesty and integrity.

820.　　This will be proven with 'smoking-gun' evidence at trial and during the Motion for Summary Judgment.

821.　　To reiterate the point again, had Filmmaker not been deceived by Defendant's action, Filmmaker would not have filmed any movie in Hawaii. Period.

822.　　Nevertheless, it still gets worse.

---

[17] The $1,000 requirement is yet another misprepresentation of the Hawaii Film Office's advertising and promotions as this falls beneath the 20% rebate back then, i.e., you have to pay an additional $1,000 to be considered for a rebate.

823.     On or about December 11, 2017, Filmmaker sent an email simply re-confirming what constitutes a vendor by the Hawaii Film Office (see EXHIBIT H).

824.     In the most juvenile, condescending, and vicious response, Defendant Brazier replied to Defendant Dawson, "Should we use the definition of vendor in the dictionary???" She unwittingly copied herself in her reply to the Filmmaker.

825.     As it turns out, this requirement is the exact same thing the Hawaii Film Office fraudulently used in their desperate attempts to sabotage, smear, and hurt Filmmaker by denying the rebate. They questioned what constitutes a vendor. It's the 'Confederacy of Dunces' all over again.

826.     This also proves the immature lengths the Defendants, collectively, have gone to avoid giving the Filmmaker his earned rebate. It's run like a junior high school.

827.     Again, Filmmaker has worked with the film departments of Connecticut, Louisiana, Georgia, Virginia, North Carolina, California, et al and has never encountered such an immature, hostile, mean-spirited, incompetent, sneaky, slow, sensitive, and maniupulative conduct ever. Filmmaker has been in the business for over 22 years again and has made 12 movies.

828.     The Filmmaker again believes the Honorable U.S. District Court and jury will find sufficient evidence in the months, and possible years to come, of another corrupt Hawaiian government agency that needs Federal investigation.

829.     .   Filmmaker will depose all of the parties at the Hawaii Film Office and past UPMs and line producer of every single past film to prove there is widespread and gross incompetence at every level.

830.     Filmmaker also plans to file a whistleblower lawsuit against the Hawaii Film Office and the Hollywood studios for wasting the taxpayer's money. Filmmaker will file motions to compel the paperwork to see every single budget that the Film Office has given millions of dollars to the studios and yet denied a simple rebate to the Filmmaker.

831.     On or about December 2017, Filmmaker finished the final paperwork and contacted the Defendant Hawaii Film Office to begin the tax rebate final process and was

told the tax certificate would be sent within 3 to 6 months. – which is also stated on the Hawaii Film Office website and on their official forms. It is now October 2018 at the time of the filing of this suit. This is tragic in every respect.

832.    Again, having the tax certificate was critical in both post-production money and for the investors. The Defendants were fully aware of this.

833.    Despite numerous emails, Defendants repeatedly dragged their feet and returned emails sometimes a month later.

834.    They then stated Filmmaker had to do other tasks that were never in the intital conversations.

835.    Filmmaker shook his head in disbelief. Filmmaker immediately sensed something was terribly wrong.

836.    Again, Defendants hid the relationships of those that created friction and their motives of 'teaching the filmmaker a lesson' by delaying the tax certificate to now 9 months. This a textbook fraud and deceit.

837.    Again, Filmmaker would never have filmed a movie in Hawaii had he known of this fraud and deceit, mispresentation, civil conspiracy and other conduct the Hawaii Film Office would so brazenly do.

838.    Furthermore, they even admitted themselves that the office has come under intense scrutiny by legislatures for previous blunders which will be part of the whistleblower lawsuit. This again is total fraud and deceit and a total conflict of interest.

839.    Defendants went beyond being crafty/sneaky to fraud and deceit as the Court will see throughout this Complaint. These are the most dishonorable actions that Filmmaker has ever worked with in 22 years. Here Filmmaker shot a movie that would honor a Hawaiian Chiefess, pay good-paying jobs to Hawaiian/Polynesians, and the Hawaii Film Office back-stabbed him by deceiving him and playing little juvenile high-school games no other film office of any state would dare to do.

840.    If in fact, the Hollywood studios have not gone through this level of fraud, then the Hawaii Film Office, complete with starry, wide eyes, have discriminated against the

1    Filmmaker either through his religious beliefs (a violation of the First Amendment) or

2    against him as an independent filmmaker (a violation of the Hawaii Whistleblower Act)

3    This is a text-book case of self-dealing.

4    841.    On or about August 2018, Filmmaker sent several emails to the Attorney

5    General's office and the Governor's office to attempt to understand why the Hawaii Film

6    Office was taking so long. The Hawaii Film Office refused to answer any emails.

7    842.    Something was truly wrong here.

8    843.    Finally, after legal threats, the Hawaii Film Office, in the most overt fraud of

9    perhaps any governmental agency in the state, then sent Filmmaker an astounding list of

10    complete lies and fabrications.

11    844.    Defendants said because Filmmaker has not proved any of his receipts, he is not

12    entitled to a 20% rebate. Filmmaker immediately knew he was duped.

13    845.    The Hawaii Film Office sent a list of requirements that are filled with complete

14    fraud and lies. It's almost jaw-dropping how each remaining requirement had already

15    been fulfilled.

16    846.    *The Hawaii Film Office sent a one-page sheet that looked like it took ten minutes*

17    *to do – not 9 months (see Exhibit A)*. The Filmmaker will show this smacks of the

18    juvenile and utterly fraudulent way the Hawaii Film Office went to avoid paying the 20%

19    rebate.

20    847.    Among the several 'items' that Hawaii Film Office said the Filmmaker had to

21    prove was the actual shooting location of Kualoa Ranch (See Exhibit A). Filmmaker sent

22    the bill, the cancelled checks, and the Defendants still said Filmmaker could not prove

23    this expense. A simple phone call could verify this expenditure.

848. <u>The sheet again shows scores of names of crew that Filmmaker already gave the Hawaii Film Office every single GET Tax ID that they required. Yet it ignores key actor's salaries, key equipment rentals, hotels – it's an absolute fraudulent document.</u>[18]

849. Defendants Benita Brazier and Donne Dawson clearly acted outside the scope of their agency in wanting to pay back Filmmaker in retribution for several reasons Filmmaker will prove at trial.

850. The State of Hawaii should not defend Ms. Brazier or Ms. Dawson.

851. Filmmaker will call on several key witnesses in the cast, crew, and extras to prove the Film Office is in disarray. He expects the trial to go for at least ten weeks and asks the Honorable Court's patience as Filmmaker is bracing for extensive discovery (and possible Motions to Compel with sanctions) to take place during this litigation.

852. This case is very important as there must be freedom of speech in Hawaii and that federal law still supercedes state law. Hawaii is part of America and most Hawaiians want that.

853. Filmmaker will subpeona every crew member for depositions to testify to the events as true. And if Defendants lie during their sworn depositions, Filmmaker will file a criminal complaint with the D.A. for perjury and possible Federal intervention. Filmmaker will begin depositions within 30 days of the service of the Complaint to get a head start on all discovery.

854. Filmmaker believes the damages to the movie are permanent and irrecoverable due to Defendant's actions.

---

[18] The one-sheet contains over 50 crew and cast that have already been accounted for. The only way to explain the red marks is the Hawaii Film Office is doing everything possible to sabotage and not pay Filmmaker. This is indisputable evidence. Filmmaker will submit all of the evidence during discovery and will file a Motion to seal the documents.

855.     It is paramount that the Honorable Court grant Filmmaker broad discretion in ascertaining what is going on as Filmmaker expects to file multiple Motions to Compel as the Defendants have proven themselves deftly good at avoiding or ignoring questions pertaining to their conduct.

856.     **As a direct and proximate result of the foregoing material breaches of the signed, written contract, Filmmakers have been damaged in an aggregate amount to be determined at trial, in excess of the jurisdictional minimum of this court, believed to be $135 million.**

# COUNT 12 – CIVIL CONSIPIRACY

857.     Filmmaker repeats and realleges each and every allegation contained in paragraphs 1 through 857 above as if fully set forth herein.

858.     A conspiracy claim consists of (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of common purpose; and (3) actual legal damage.

859.     This is a textbook case of Civil Consiracy done at the governmental level.

860.     From the start of the movie until post-production, Filmmaker made the 20% rebate the number one priority as he realized how significant the rebate was. It was 20% of the entire budget and this was to put bread on the table of a faith-based filmmaker.

861.     The events of the core group to oppose Filmmaker's telling of the history started the entire chain-of-events as Filmmaker would not back down from making the film.

862.     Filmmaker received death threats before and during shooting. His staff had to file police reports to the Honolulu police who did absolutely nothing despite even having the name of the alleged perpetrator.

863.     Filmmaker alleges that possible elements or people in the Hawaii Film Office have also been part of a smear campaign against many historical Hawaiian films, including Filmmaker's movie.

864.     In addition to death threats, Filmmaker was up against many other deep hurdles, including union threats and Hawaiian activists who threatened to shut down the production on numerous instances.

865.     In over 60 emails and phone calls, Filmmaker worked diligently to make sure every single receipt, GET tax id of every single crew member and cast member was obtained.

866.     Filmmaker fulfilled each and every requirement methodically and precisely because he knew the Defendant Hawaii Film Office might try something sneaky. Filmmaker even has proof that one email mistakenly forwarded  to Filmmaker showed the Defendants were already conspiring to 'get' Filmmaker' (See Exhibit H).

867.     This process of getting all the requirements for the Hawaii Film Office took over 13 weeks and Filmmaker calculates over 240 hours of man time.

868.     Filmmaker is also a Harvard-educated attorney and bills at $550 an hour. So by just multiplying 240 x $550 would come to $192,000. This is how important the rebate back from the Hawaii Film Office was to the Filmmaker and the Filmmaker asks the Court to consider the $192,000 as additional damages aside from the punitive damages.

869.     Again, the Hawaii Film Office has blatantly lied in their refusal to credit the Filmmaker with the 20% rebate. There is no reason, outside of their wanting to teach Filmmaker a lesson, to withhold the tax certificate. Filmmaker fulfilled every requirement.

870.     Filmmaker will prove, beyond reasonable doubt, that the causes of action of civil conspiracy were present in this case.

871.     The fact that Defendants did not alert Filmmaker that he was 'lacking' in further proof of receipts for more than 9 months is further proof of civil conspiracy that would later rise up again on much more serious levels.

872.     This was a small simple film that should not have taken 9 months to do. But Filmmaker has 'smoking gun' evidence that the Defendants do not take the film projects in by order but by their own wishes. And the fact that the Hawaii Film Office's own website states all filmmakers will get their tax certificate within 3-6 months.

873.     On or about September 2017, Filmmaker put in several calls to Defendant Brazier to make sure every 'T' was crossed and every 'I' was dotted. Filmmaker wanted to make sure there would be no problems with getting the 20% rebate back. This was critical as he would not have filmed in Hawaii.

874.     On or about September 2017, Defendant Brazier repeatedly told Filmmaker that he did not need to get the GET Tax Ids for established businesses in Hawaii as they were obviously paying tax to the Hawaii government.

875.     This proved to be yet another negligent or intentional misrepresentation.

876.     On or about September 2018, almost a year later, Defendants Dawson and the Hawaii Film Office suddenly demanded that all the GET tax IDs should be listed. This is another brazen and fraudulent attempt to deny Filmmaker his just rebate. Filmmaker did, in fact, list every single GET Tax ID. Somehow, they lost the paperwork or it was maliciously destroyed.

877.     In Defendant's one page sheet they sent to Filmmaker - that possibly took less than an hour to do – not 9 months – they also said the GET Tax IDs were wrong when in fact they were correct. Further proof that they were desperately trying anything to not give the Filmmaker his rebate.

878.     The entire one-page sheet is filled with complete wrong assumptions, numbers, and math. It's like a third-grader put it together hoping this would pass and Filmmaker would go away.

879.     On or about October 2017 and three weeks before shooting, Defendant Brazier contacted the production's UPM and gave the UPM the actual budget figures. This is a text-book case of conflict of interest. The UPM knew Defendant Brazier and was never given authorization to have any confidential numbers or should receive them as this

1    person was only the UPM. The production ended up firing the UPM for gross

2    incompetence and was later sued by the UPM in small claims.

3    **880.**    Had Filmmaker known this conflict of interest and gross breach of privacy, he

4    would have immediately requested another contact to work with at the Hawaii Film

5    Office, because of the industry rule/code that key positions should not be filled by ANY

6    partnership team because again if one is fired, the other will quit or have to be fired as

7    well.

8    **881.**    Again, this is a textbook case of breaching an implied good covenant in dealings.

9    **882.**    Filmmaker believes and alleges that the UPM's firing has contributed to the

10   Hawaii Film Office defrauding Filmmaker out of his rightful 20% rebate as the UPM sent

11   a letter to the office violating the confidentiality provision of her signed contract. No

12   other true professional in the industry would do this.

13   **883.**    This unprofessional, sneaky, and juvenile high school conduct is another reason

14   why Filmmaker will never film in Hawaii again.

15   **884.**    On or about November 2017, Filmmaker, to make sure every single requirement

16   was met, personally emailed Defendant Brazier to have any Film Office employee or

17   government legislator come to the set (see EXHIBIT B). This requirement is buried in the

18   forms, but this email again proves how meticulous Filmmaker was in fulfilling every

19   single requirement including this obscure provision.

20   **885.**    On or about November 17, 2017, Filmmaker submitted the preliminary budget to

21   the Film Office (see EXHIBIT C). As the Honorable Court can see, the preliminary

22   requirements were met except for two items which were later fulfilled and never a subject

23   of dispute.

24   **886.**    At no time did the Hawaii Film Office ever contact the Filmmaker to alert him to

25   anything that was not completed or out of the ordinary. In fact, they were silent for

26   almost eight months.

27   **887.**    On or about November 20, 2017, Filmmaker again inquired about the $1,000

28   contribution that was required to be made to the University of Hawaii Foundation (see

EXHIBIT D). This again shows how astute and careful Filmmaker was to the requirements set forth by the Hawaii Film Office.[19]

**888.**     Filmmaker then donated $1,000 to the University of Hawaii Foundation in accordance to the requirements (Filmmaker and his wife give 90% of their wealth away to charity or to their faith-based endeavors).

**889.**     On or about December 2017, Filmmaker received the pre-qualification letter (See EXHIBIT E and F). At no point, did the Hawaii Film Office ever question or comment on any part of the film's production or requirements.

**890.**     Multiple calls from March 2017 to February 2018 to Defendant Brazier again confirmed Filmmaker was on track to receive his rebate.

**891.**     On or about December 11, 2017, the Hawaii Film Office submitted an email (See EXHIBIT G) which outline precisely the 7 remaining requirements left to get the tax certificate.

**892.**     Filmmaker fulfilled every single requirement and more so and will testify, under the penalty of perjury (that carries a jail sentence), that every single requirement was fulfilled with complete honesty and integrity.

**893.**     This will be proven with 'smoking-gun' evidence at trial and during the Motion for Summary Judgment.

**894.**     To reiterate the point again, had Filmmaker not been deceived by Defendant's action, Filmmaker would not have filmed any movie in Hawaii. Period.

**895.**     Nevertheless, it still gets worse.

**896.**     On or about December 11, 2017, Filmmaker sent an email simply re-confirming what constitutes a vendor by the Hawaii Film Office (see EXHIBIT H).

---

[19] The $1,000 requirement is yet another misprepresentation of the Hawaii Film Office's advertising and promotions as this falls beneath the 20% rebate back then, i.e., you have to pay an additional $1,000 to be considered for a rebate.

897.   In the most juvenile, condescending, and vicious response, Defendant Brazier replied to Defendant Dawson, "Should we use the definition of vendor in the dictionary???" She unwittingly copied herself in her reply to the Filmmaker.

898.   As it turns out, this requirement is the exact same thing the Hawaii Film Office fraudulently used in their desperate attempts to sabotage, smear, and hurt Filmmaker by denying the rebate. They questioned what constitutes a vendor. It's the 'Confederacy of Dunces' all over again.

899.   This also proves the immature lengths the Defendants, collectively, have gone to avoid giving the Filmmaker his earned rebate. It's run like a junior high school.

900.   Again, Filmmaker has worked with the film departments of Connecticut, Louisiana, Georgia, Virginia, North Carolina, California, et al and has never encountered such an immature, hostile, mean-spirited, incompetent, sneaky, slow, sensitive, and maniupulative conduct ever. Filmmaker has been in the business for over 22 years again and has made 12 movies.

901.   The Filmmaker again believes the Honorable U.S. District Court and jury will find sufficient evidence in the months, and possible years to come, of another corrupt Hawaiian government agency that needs Federal investigation.

902.   Filmmaker will depose all of the parties at the Hawaii Film Office and past UPMs and line producer of every single past film to prove there is widespread and gross incompetence at every level.

903.   Filmmaker also plans to file a whistleblower lawsuit against the Hawaii Film Office and the Hollywood studios for wasting the taxpayer's money. Filmmaker will file motions to compel the paperwork to see every single budget that the Film Office has given millions of dollars to the studios and yet denied a simple rebate to the Filmmaker.

904.   On or about December 2017, Filmmaker finished the final paperwork and contacted the Defendant Hawaii Film Office to begin the tax rebate final process and was told the tax certificate would be sent within 3 to 6 months. – which is also stated on the

Hawaii Film Office website and on their official forms. It is now October 2018 at the time of the filing of this suit. This is tragic in every respect.

905.    Again, having the tax certificate was critical in both post-production money and for the investors. The Defendants were fully aware of this.

906.    Despite numerous emails, Defendants repeatedly dragged their feet and returned emails sometimes a month later.

907.    They then stated Filmmaker had to do other tasks that were never in the intital conversations.

908.    Filmmaker shook his head in disbelief. Filmmaker immediately sensed something was terribly wrong.

909.    Again, Defendants hid the relationships of those that created friction and their motives of 'teaching the filmmaker a lesson' by delaying the tax certificate to now 9 months. This a textbook fraud and deceit.

910.    Again, Filmmaker would never have filmed a movie in Hawaii had he known of this fraud and deceit, mispresentation, civil conspiracy and other conduct the Hawaii Film Office would so brazenly do.

911.    Furthermore, they even admitted themselves that the office has come under intense scrutiny by legislatures for previous blunders which will be part of the whistleblower lawsuit. This again is total fraud and deceit and a total conflict of interest.

912.    Defendants went beyond being crafty/sneaky to fraud and deceit as the Court will see throughout this Complaint. These are the most dishonorable actions that Filmmaker has ever worked with in 22 years. Here Filmmaker shot a movie that would honor a Hawaiian Chiefess, pay good-paying jobs to Hawaiian/Polynesians, and the Hawaii Film Office back-stabbed him by deceiving him and playing little juvenile high-school games no other film office of any state would dare to do.

913.    If in fact, the Hollywood studios have not gone through this level of fraud, then the Hawaii Film Office, complete with starry, wide eyes, have discriminated against the Filmmaker either through his religious beliefs (a violation of the First Amendment) or

1    against him as an independent filmmaker (a violation of the Hawaii Whistleblower Act)

2    This is a text-book case of self-dealing.

3    914.      On or about August 2018, Filmmaker sent several emails to the Attorney

4    General's office and the Governor's office to attempt to understand why the Hawaii Film

5    Office was taking so long. The Hawaii Film Office refused to answer any emails.

6    915.      Something was truly wrong here.

7    916.      Finally, after legal threats, the Hawaii Film Office, in the most overt fraud of

8    perhaps any governmental agency in the state, then sent Filmmaker an astounding list of

9    complete lies and fabrications.

10    917.      Defendants said because Filmmaker has not proved any of his receipts, he is not

11    entitled to a 20% rebate. Filmmaker immediately knew he was duped.

12    918.      The Hawaii Film Office sent a list of requirements that are filled with complete

13    fraud and lies. It's almost jaw-dropping how each remaining requirement had already

14    been fulfilled.

15    919.      *The Hawaii Film Office sent a one-page sheet that looked like it took ten minutes*

16    *to do – not 9 months (see Exhibit A).* The Filmmaker will show this smacks of the

17    juvenile and utterly fraudulent way the Hawaii Film Office went to avoid paying the 20%

18    rebate.

19    920.      Among the several 'items' that Hawaii Film Office said the Filmmaker had to

20    prove was the actual shooting location of Kualoa Ranch (See Exhibit A). Filmmaker sent

21    the bill, the cancelled checks, and the Defendants still said Filmmaker could not prove

22    this expense. A simple phone call could verify this expenditure.

23    921.      The sheet again shows scores of names of crew that Filmmaker already gave the

24    Hawaii Film Office every single GET Tax ID that they required. Yet it ignores key

25    actor's salaries, key equipment rentals, hotels – it's an absolute fraudulent document.[20]

26

27

28

---

[20] The one-sheet contains over 50 crew and cast that have already been accounted for. The only way to explain the red marks is the Hawaii Film

922.     Defendants Benita Brazier and Donne Dawson clearly acted outside the scope of their agency in wanting to pay back Filmmaker in retribution for several reasons Filmmaker will prove at trial.

923.     The State of Hawaii should not defend Ms. Brazier or Ms. Dawson.

924.     Filmmaker will call on several key witnesses in the cast, crew, and extras to prove the Film Office is in disarray. He expects the trial to go for at least ten weeks and asks the Honorable Court's patience as Filmmaker is bracing for extensive discovery (and possible Motions to Compel with sanctions) to take place during this litigation.

925.     This case is very important as there must be freedom of speech in Hawaii and that federal law still supercedes state law. Hawaii is part of America and most Hawaiians want that.

926.     Filmmaker will subpeona every crew member for depositions to testify to the events as true. And if Defendants lie during their sworn depositions, Filmmaker will file a criminal complaint with the D.A. for perjury and possible Federal intervention. Filmmaker will begin depositions within 30 days of the service of the Complaint to get a head start on all discovery.

927.     Filmmaker believes the damages to the movie are permanent and irrecoverable due to Defendant's actions.

928.     It is paramount that the Honorable Court grant Filmmaker broad discretion in ascertaining what is going on as Filmmaker expects to file multiple Motions to Compel as the Defendants have proven themselves deftly good at avoiding or ignoring questions pertaining to their conduct.

929.     Defendant's actions left the film in total chaos. The film went overbudget because of their actions and the Filmmaker had to pay the overbudget out of his own pocket.

Office is doing everything possible to sabotage and not pay Filmmaker. This is indisputable evidence. Filmmaker will submit all of the evidence during discovery and will file a Motion to seal the documents.

930.    Again, Filmmaker testifies, under penalty of perjury, that he has never sued any governmental agency in his entire life.

931.    Filmmaker will depose Defendants Benita Brazier, Donne Dawson in November. He will then depose other filmmakers who have shot movies in Hawaii.

**932.**    Filmmaker will file a Pre-Judgment Writ of Attachment on all of Defendant's personal and corporate assets and believes he has been damaged by no less than $135 million in actual and punitive damages and will spend the next 5 years outlying the case against the Defendants. They need to be punished severely for their contemptible mistreatment of a filmmaker who tried to honor the people of Hawaii and their valiant and courageous leader two hundred years ago.

933.    Filmmaker is exiting making the next films in Hawaii and the damages are stark and real – due mostly because of Defendant's fraud and deceit. This will be calculated in the damages against Defendants.

934.    Filmmaker also will depose crew members and others who Defendants devulged confidential information.

935.    Filmmakers request the court to expedite discovery and set a trial date in the most expeditious manner if possible.

# <u>COUNT 13 – UNFAIR COMPETITION</u>

936.    Filmmaker repeats and realleges each and every allegation contained in paragraphs 1 through 936 above as if fully set forth herein.

937.    The Lanham Act (commonly known as Section 43(a)) provides as follows:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation,

connection, or association of such person with another person, or as to the origin,

sponsorship, or approval of his or her goods, services, or commercial activities by

another person, or in commercial advertising or promotion, misrepresents the

nature, characteristics, qualities, or geographic origin of his or her or another

person's goods, services, or commercial activities, shall be liable in a civil action

by any person who believes that he or she is or is likely to be damaged by such

act. 41 U.S.C. § 1125(a)(1).

938.    On or about March 2017, Filmmaker decided to film 'The Islands' after being

assured that the Defendant Hawaii Film Office would give a 20% rebate on the budget

that the Film Office gives to all filmmakers. This was extremely important to the

Filmmaker as many production companies base their entire decision for where to film

based on the movie tax credits of each state. This is common industry knowledge and

practice.

939.    Also, the 20% rebate is critically important for P&A (prints and advertising) for

the film's exposure and marketing funds.

940.    Had Filmmaker known that Defendants would even attempt not to reward the

20% rebate because they didn't like the content of the movie, the Filmmaker's beliefs, or

his personality per se, Filmmaker would never have even launched such a huculean effort

in making the film, including casting an Academy-Award winning actress, a legendary

actor, and a 98% Native Polynesian cast. Filmmaker would simply have made another

film in another state. Filmmaker has made 12 movies in 22 years. He did not need the

horrific grief imposed by Defendants collectively.

941.    It is very rare for any governmental agency to act as juvenile, vindictive, and

incompetent as the Hawaii Film Office. It's astonishing as Filmmaker has worked with

the Connecticut, Lousiana, Virginia, Fiji, California, Michigan, and North Carolina film

offices with absolutely no issues or problems. In fact, the Connecticut Film Office gave

1   Filmmaker his 30% tax rebate for 'Freedom' (Cuba Gooding, Jr., Sharon Leal, William

2   Sadler) within 30 days after the paperwork was turned in.

3   **942.**       But Filmmaker again reminds the Court that the state agencies of Hawaii were

4   given a D+ for integrity and Hawaii is considered the most corrupt government of any

5   state in the U.S. This has to improve now or the $13 billion rail program will never be

6   finished in our lifetime. This is not a slight on the hard-working Hawaii government

7   employees, but to the small vocal minorities who pride themselves on laziness and

8   ineptness as a way of life.

9   **943.**       Defendants starkly violated the Lanham Act in the advertisements and dealings

10   with Filmmaker.

11   **944.**       On or about November 17, 2017, Filmmaker submitted the preliminary budget to

12   the Film Office (see EXHIBIT C). As the Honorable Court can see, the preliminary

13   requirements were met except for two items which were later fulfilled and never a subject

14   of dispute.

15   **945.**       At no time did the Hawaii Film Office ever contact the Filmmaker to alert him to

16   anything that was not completed or out of the ordinary. In fact, they were silent for

17   almost eight months.

18   **946.**       On or about November 20, 2017, Filmmaker again inquired about the $1,000

19   contribution that was required to be made to the University of Hawaii Foundation (see

20   EXHIBIT D). This again shows how astute and careful Filmmaker was to the

21   requirements set forth by the Hawaii Film Office.[21]

22

23

24

25   [21] The $1,000 requirement is yet another misprepresentation of the Hawaii Film

26   Office's advertising and promotions as this falls beneath the 20% rebate back

27   then, i.e., you have to pay an additional $1,000 to be considered for a

28   rebate.

**947.** Filmmaker then donated $1,000 to the University of Hawaii Foundation in accordance to the requirements (Filmmaker and his wife give 90% of their wealth away to charity or to their faith-based endeavors).

**948.** On or about December 2017, Filmmaker received the pre-qualification letter (See EXHIBIT E and F). At no point, did the Hawaii Film Office ever question or comment on any part of the film's production or requirements.

**949.** Multiple calls from March 2017 to February 2018 to Defendant Brazier again confirmed Filmmaker was on track to receive his rebate.

**950.** On or about December 11, 2017, the Hawaii Film Office submitted an email (See EXHIBIT G) which outline precisely the 7 remaining requirements left to get the tax certificate.

**951.** Filmmaker fulfilled every single requirement and more so and will testify, under the penalty of perjury (that carries a jail sentence), that every single requirement was fulfilled with complete honesty and integrity.

**952.** This will be proven with 'smoking-gun' evidence at trial and during the Motion for Summary Judgment.

**953.** To reiterate the point again, had Filmmaker not been deceived by Defendant's action, Filmmaker would not have filmed any movie in Hawaii. Period.

**954.** Nevertheless, it gets worse.

**955.** On or about December 11, 2017, Filmmaker sent an email simply re-confirming what constitutes a vendor by the Hawaii Film Office (see EXHIBIT H).

**956.** In the most juvenile, condescending, and vicious response, Defendant Brazier replied to Defendant Dawson, "Should we use the definition of vendor in the dictionary???" She unwittingly copied herself in her reply to the Filmmaker.

**957.** As it turns out, this requirement is the exact same thing the Hawaii Film Office fraudulently used in their desperate attempts to sabotage, smear, and hurt Filmmaker by denying the rebate. They questioned what constitutes a vendor. It's the 'Confederacy of Dunces' all over again.

958.   This also proves the immature lengths the Defendants, collectively, have gone to avoid giving the Filmmaker his earned rebate. It's run like a junior high school.

959.   Again, Filmmaker has worked with the film departments of Connecticut, Louisiana, Georgia, Virginia, North Carolina, California, et al and has never encountered such an immature, hostile, mean-spirited, incompetent, sneaky, slow, sensitive, and maniupulative conduct ever. Filmmaker has been in the business for over 22 years again and has made 12 movies.

960.   The Filmmaker again believes the Honorable U.S. District Court and jury will find sufficient evidence in the months, and possible years to come, of another corrupt Hawaiian government agency that needs Federal investigation.

961.   Filmmaker will depose all of the parties at the Hawaii Film Office and past UPMs and line producer of every single past film to prove there is widespread and gross incompetence at every level.

962.   Filmmaker also plans to file a whistleblower lawsuit against the Hawaii Film Office and the Hollywood studios for wasting the taxpayer's money. Filmmaker will file motions to compel the paperwork to see every single budget that the Film Office has given millions of dollars to the studios and yet denied a simple rebate to the Filmmaker.

963.   On or about December 2017, Filmmaker finished the final paperwork and contacted the Defendant Hawaii Film Office to begin the tax rebate final process and was told the tax certificate would be sent within 3 to 6 months. – which is also stated on the Hawaii Film Office website and on their official forms. It is now October 2018 at the time of the filing of this suit. This is tragic in every respect.

964.   Again, having the tax certificate was critical in both post-production money and for the investors. The Defendants were fully aware of this.

965.   Despite numerous emails, Defendants repeatedly dragged their feet and returned emails sometimes a month later.

966.   They then stated Filmmaker had to do other tasks that were never in the intital conversations.

967.     Filmmaker shook his head in disbelief. Filmmaker immediately sensed something was terribly wrong.

968.     Again, Defendants hid the relationships of those that created friction and their motives of 'teaching the filmmaker a lesson' by delaying the tax certificate to now 9 months. This a textbook case of fraud and deceit.

969.     Again, Filmmaker would never have filmed a movie in Hawaii had he known of this fraud and deceit, misprestation, civil conspiracy and other conduct the Hawaii Film Office would so brazenly do.

970.     Furthermore, they even admitted themselves that the office has come under intense scrutiny by legislatures for previous blunders which will be part of the whistleblower lawsuit. This again is total fraud and deceit and a total conflict of interest.

971.     Defendants went beyond being crafty/sneaky to fraud and deceit as the Court will see throughout this Complaint. These are the most dishonorable actions that Filmmaker has ever worked with in 22 years.  Here Filmmaker shot a movie that would honor a Hawaiian Chiefess, pay good-paying jobs to Hawaiian/Polynesians, and the Hawaii Film Office back-stabbed him by deceiving him and playing little juvenile high-school games no other film office of any state would dare to do.

972.     If in fact, the Hollywood studios have not gone through this level of fraud, then the Hawaii Film Office, complete with starry, wide eyes, have discriminated against the Filmmaker either through his religious beliefs (a violation of the First Amendment) or against him as an independent filmmaker (a violation of the Hawaii Whistleblower Act) This is a text-book case of self-dealing.

973.     On or about August 2018, Filmmaker sent several emails to the Attorney General's office and the Governor's office to attempt to understand why the Hawaii Film Office was taking so long. The Hawaii Film Office refused to answer any emails.

974.     Something was truly wrong here.

975.    Finally, after legal threats, the Hawaii Film Office, in the most overt fraud of perhaps any governmental agency in the state, then sent Filmmaker an astounding list of complete lies and fabrications.

976.    Defendants said because Filmmaker has not proved any of his receipts, he is not entitled to a 20% rebate. _Filmmaker immediately knew he was duped._

977.    _The Defendant's conduct must be extreme and outrageous and caused enormous infliction of emotional distress and caused Filmmaker to seek counseling with Pastors._

978.    _This is a text book case of Intentional Infliction of Emotional Distress (IIED)._

979.    The Hawaii Film Office sent a list of requirements that are filled with complete fraud and lies. It's almost jaw-dropping how each remaining requirement had already been fulfilled.

980.    _The Hawaii Film Office sent a one-page sheet that looked like it took ten minutes to do – not 9 months (see Exhibit A)_. The Filmmaker will show this smacks of the juvenile and utterly fraudulent way the Hawaii Film Office went to avoid paying the 20% rebate.

981.    Among the several 'items' that Hawaii Film Office said the Filmmaker had to prove was the actual shooting location of Kualoa Ranch (See Exhibit A). Filmmaker sent the bill, the cancelled checks, and the Defendants still said Filmmaker could not prove this expense. A simple phone call could verify this expenditure.

982.    _The sheet again shows scores of names of crew that Filmmaker already gave the Hawaii Film Office every single GET Tax ID that they required. Yet it ignores key actor's salaries, key equipment rentals, hotels – it's an absolute fraudulent document._[22]

---

[22] The one-sheet contains over 50 crew and cast that have already been accounted for. The only way to explain the red marks is the Hawaii Film Office is doing everything possible to sabotage and not pay Filmmaker. This is indisputable evidence. Filmmaker will submit all of the evidence during discovery and will file a Motion to seal the documents.

983.    Defendants Benita Brazier and Donne Dawson clearly acted outside the scope of
their agency in wanting to pay back Filmmaker in retribution for several reasons
Filmmaker will prove at trial.

984.    The State of Hawaii should not defend Ms. Brazier or Ms. Dawson.

985.    Filmmaker will call on several key witnesses in the cast, crew, and extras to prove
the Film Office is in disarray. He expects the trial to go for at least ten weeks and asks the
Honorable Court's patience as Filmmaker is bracing for extensive discovery (and
possible Motions to Compel with sanctions) to take place during this litigation.

986.    This case is very important as there must be freedom of speech in Hawaii and that
federal law still supercedes state law. Hawaii is part of America and most Hawaiians
want that.

987.    Filmmaker will subpeona every crew member for depositions to testify to the
events as true. And if Defendants lie during their sworn depositions, Filmmaker will file a
criminal complaint with the D.A. for perjury and possible Federal intervention.
Filmmaker will begin depositions within 30 days of the service of the Complaint to get a
head start on all discovery.

988.    Filmmaker believes the damages to the movie are permanent and irrecoverable
due to Defendant's actions.

989.    It is paramount that the Honorable Court grant Filmmaker broad discretion in
ascertaining what is going on as Filmmaker expects to file multiple Motions to Compel as
the Defendants have proven themselves deftly good at avoiding or ignoring questions
pertaining to their conduct.

990.    Defendant's actions left the film in total chaos. The film went overbudget because
of their actions and the Filmmaker had to pay the overbudget out of his own pocket.

991.    Again, Filmmaker testifies, under penalty of perjury, that he has never sued any
governmental agency in his entire life.

992.    Filmmaker will depose Defendants Benita Brazier, Donne Dawson in November.
He will then depose other filmmakers who have shot movies in Hawaii.

**993.**      Filmmaker will file a Pre-Judgment Writ of Attachment on all of Defendant's personal and corporate assets and believes he has been damaged by no less than $135 million in actual and punitive damages and will spend the next 5 years outlying the case against the Defendants. They need to be punished severely for their contemptible mistreatment of a filmmaker who tried to honor the people of Hawaii and their valiant and courageous leader two hundred years ago.

994.      Filmmaker is exiting making the next films in Hawaii and the damages are stark and real – due mostly because of Defendant's fraud and deceit. This will be calculated in the damages against Defendants.

995.      Filmmakers request the court to expedite discovery and set a trial date in the most expeditious manner if possible.

996.      The bare facts – taken alone – prove without doubt – that Defendants, collectively and individually, violated the Lanham Act by advertising their services and duping Filmmaker for their own gain.

997.      <u>As a direct and proximate result of the foregoing material breaches of the signed, written contract, Filmmakers have been damaged in an aggregate amount to be determined at trial, in excess of the jurisdictional minimum of this court.</u>

# <u>COUNT 14 –PROMISSORY ESTOPPEL</u>

998.      Filmmaker repeats and realleges each and every allegation contained in paragraphs 1 through 998 above as if fully set forth herein.

999.      The facts set forth above, and in particular in paragraphs 1-998 demonstrate that Filmmaker relied to its detriment upon Defendants's promises.

1000.      Accordingly, Defendants are estopped from denying the agreements with respect to the movie and Filmmaker is entitled to damages for its reliance in an amount to be determined at trial, in excess of the jurisdictional minimum of this Court, and believed to be no less than $135,000,000.

# COUNT 15 – BREACH OF ACCOUNTING

1001.    Filmmaker repeats and realleges each and every allegation contained in paragraphs 1 through 1001 above as if fully set forth herein.

1002.    Defendants clearly breached all accounting methods in not even doing simple mathematics. They failed to add up all the expenditures and tried to lay the blame on Filmmaker and have him triple-check to show they were in error.

1003.    Filmmaker has 'smoking-gun' evidence of this in the one-sheet the Hawaii Film Office submitted to Filmmaker in their rejection of his due rebate.

1004.    Again, this goes to the heart of who the Defendants are and the complete disrespect they've shown the Filmmaker by submitting the one-sheet filled with total errors and fabrications.

1005.    This is in complete breach of contract and breach of accounting.

1006.    Filmmaker may also seek assistance with the Attorney General to investigate any crimes that have also been committed against Filmmakers and other artists.

1007.    Again, Filmmaker is not the only one who Defendants have mistreated and possibly scammed. He will call upon other producers who have worked with Defendants. But regardless, there are enough provable facts for this case to go to trial in 2019/2020.

1008.    Defendants completely refused to provide any further explanation to where Filmmaker's complete package went despite Filmmaker asking, "What on earth is going on?"

1009.    As a direct and proximate result of the foregoing material breaches of the signed, written contract regarding accounting, Filmmakers have been damaged in an aggregate amount to be determined at trial, in excess of the jurisdictional minimum of this court, believed to be no less than $135 million.

# COUNT 16 – DECLARATORY RELIEF

1010.    Filmmaker repeats and realleges each and every allegation contained in paragraphs 1 through 1010 above as if fully set forth herein.

1011.    An actual and justiciable controversy has arisen between Filmmaker and Defendants. Filmmaker, for his respective interests as set forth above, contends:

1012.    By the conduct of defendants alleged hereinabove, defendants materially breached the signed Hawaii Production Report to obtain his rebate.

1013.    By the conduct of Defendants alleged hereinabove, Defendants have materially breached other duties imposed by contract and/or law with respect to Filmmaker;

1014.    Filmmaker is informed and believe that Defendants are defaming him via third parties.

1015.    Filmmaker is informed and believes that Defendants denies the foregoing contentions.

1016.    Filmmaker desires a judicial determination of their rights, duties, and remedies with respect to the foregoing matters. A judicial declaration is necessary and appropriate so the parties may proceed in accordance with their rights and obligations as determined by the court.

# COUNT 17 – UNJUST ENRICHMENT

1017.    Filmmaker repeats and realleges each and every allegation contained in paragraphs 1 through 1017 above as if fully set forth herein.

1018.    As a result of Defendants's conduct alleged hereinabove, defendants have been unjustly enriched at the expense of the filmmakers, in their respective interests as set forth above.

1019.    Filmmakers do not yet know the full amount by which defendants, Defendants, and Does 1-10 have been so enriched, but are informed and thereon allege that said sum exceeds $135 million.

# COUNT 18 – PRELIMINARY AND PERMANENT INJUNCTION

1020.     Filmmaker repeats and realleges each and every allegation contained in paragraphs 1 through 1020 above as if fully set forth herein.

1021.     Due to defendant's wrongful conduct, breaches of contracts, breaches of obligations, fraud and deceit, Filmmaker is informed and believes that Defendants will continue to violate the provisions of the rebate program because of their ignorance of the law and because of their uneducated beliefs the law does not apply to them. Unless such conduct is enjoined and restrained by an order of the Court, Filmmaker and other filmmakers of possible faith or filmmakers who want to do Hawaiian historical films will continue to suffer great and irreparable injury.

1022.     Filmmakers lack an adequate remedy at law for the injuries that would be suffered as a result of Defendants's flagrant breach of the rebate requirements and because pecuniary damages are insufficient to wholly compensate Filmmaker for their injuries and because it is difficult to ascertain the amount of damages required to afford adequate relief.

1023.     Filmmaker thus requests that this Court grant a preliminary injunction and permanent injunction enjoining the Hawaii Film Office and these Defendants, and each of them, and their agents, servants, and employees, and all such persons acting under, in concert with, or for defendants to cease any and all operations until the FBI, Hawaii Attorney General, this Honorable U.S. District Court, and the State Legislature clear the Defendants and the Hawaii Film Office of any wrongdoing.

# COUNT 19 – WRIT OF ATTACHMENT

1024.     Filmmaker repeats and realleges each and every allegation contained in

paragraphs 1 through 1024 above as if fully set forth herein.

1025.    Filmmaker will be seeking a Writ of Attachment against Defendants property, Defendant's bank accounts, Defendant's post-production business, houses, cars, boats, and any and all personal assets that allows the Filmmaker within a lawsuit to seek a "prejudgment writ of attachment" by which it can freeze certain assets of a debtor/defendant.

1026.    Certain criteria must be met by the creditor for it to succeed in obtaining a prejudgment writ of attachment as set forth:

   - The underlying claim by the Filmmaker must be based upon a contract ;

   - The Filmmaker must show the "probable validity" of the claim against the defendant; and

   - The defendants must be a business;

Filmmaker is informed and believes that the prejudgment writ of attachment is valid in this case. All of the elements and requriements proved by a preponderance of the evidence, and will seek an immediate writ by this Court after the suit commences.

   211. Filmmaker seeks a Writ of Attachment on Defendant's personal houses, bank accounts, and individual property until this dispute is resolved. This includes freezing any assets and future assets until the final outcome and/or Filmmaker prevails.

## **DAMAGES**

WHEREFORE, Filmmakers prays for judgment in their favor as follows:

1.  **For Compensatory damages according to proof but exceeding the jurisdictional limit of this court;**

2.  **For punitive and exemplary damages in an amount sufficient to punish and make an example of defendant's wrongful conduct;**

3.  **For Demand for a Full and Unconditional Jury Trial by 2019;**

4.  **For declaration of the parties' rights and obligations as alleged hereinabove;**

5. For restitution of all amounts by which defendants have been unjustly enriched as the result of their wrongful conduct;

6. For the reasonable value of Filmmaker's services;

7. For general damages which, to the extent possible, will put Filmmaker in the position it would have been in had defendants not breached the contracts, all according to proof at trial, but in excess of the jurisdictional minimum of this Court.

8. For attorney expenses, fees, and costs of suit incurred herein, including all attorney's fees, including attorney's fee at $550/hour.

9. For interest at the maximum legal rate;

10. For prejudgment or other award at the maximum rate permitted by law;

11. For an Injunction requiring the Hawaii Film Office to cease any and all operations until the FBI, Hawaii Attorney General, this Honorable U.S. District Court, and the State Legislature clear the Defendants and the Hawaii Film Office of any wrongdoing

DATED: October 3, 2018

BY _____

Timothy Allen Chey, Esq (In Pro Per)
Attorney at Law
California State Bar No. 172096